RECEIVED MO

3/8/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

RANPAL REDDY. on behalf of THE UNITED STATES OF AMERICA,

        Plaintiff,

v.

ACCENTURE PLC and ACCENTURE LLP.

        Defendants.

**1:21-cv-01338**

Civil Action No. _____

**FILED *IN CAMERA* & UNDER SEAL**
PURSUANT TO 31 U.S.C. § 3730(b)(2)

**JUDGE PALLMEYER
MAGISTRATE JUDGE CUMMINGS**

Trial by jury demanded.

---

### COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

---

Pursuant to the *qui tam* provisions of the False Claims Act. 31 U.S.C. §§ 3729-3733, Plaintiff-Relator Ranpal Reddy brings this *qui tam* Complaint on behalf of the United States of America against Defendants Accenture PLC and Accenture LLP (collectively, "Accenture") and alleges as follows:

### NATURE OF THE ACTION

1.    This action concerns Accenture's egregious and widespread fraud against the United States in applying for and securing work visas. Accenture engages in visa fraud so that it can import and employ cheap labor (primarily from India) in the U.S. and avoid having to employ higher-priced Americans.

2.    Accenture's fraudulent scheme involves both H-1B visas and L-1 visas. With respect to each type of visa. Accenture submits to the government fraudulent applications and supporting documents each falsified specifically to meet the requirements of the visa type

Accenture is seeking. For example, in its visa applications and supporting documents, Accenture falsely represents that: (a) jobs exist that visa recipients will assume and perform in the U.S.; (b) visa recipients will perform specific tasks, have managerial responsibilities, or have subject matter expertise; and (c) visa recipients will be paid a required salary in accordance with U.S. law. In addition, Accenture applies for cheaper visas (L-1s) for positions and work for which more expensive visa applications are required (H-1Bs), which enables Accenture to defraud the government out of its rightful application fees and also to avoid the legislative cap on the number of the more expensive visas the government awards annually.

3.      Accenture's scheme has allowed it to grow and maintain a robust "visa-ready" or "visa enabled" workforce in India comprised of employees who have been issued visas by the United States government without yet having any work in the country. These employees are available to fill open U.S. jobs on a moment's notice, and at a meager wage, so that Accenture can minimize employing Americans. This practice has allowed Accenture to reduce its own costs by employing cheap labor from India in the U.S. rather than having to pay higher American salaries.

4.      Each such "visa-ready" or "visa enabled" employee represents a violation of law and several acts of fraud by Accenture against the United States government.

5.      Accenture's scheme has deprived the government of its interest in work visas, substantial visa application fees, and significant tax revenue in violation of 31 U.S.C. § 3729(a)(1)(A), 31 U.S.C. § 3729(a)(1)(B), and 31 U.S.C. § 3729(a)(1)(G). Relator seeks to recover all damages, civil penalties, and other remedies available under the False Claims Act from Accenture.

## PARTIES

6.    The Plaintiff in this action is the United States, by and through *Qui Tam* Relator Ranpal Reddy. Mr. Reddy is a former Associate Director of Accenture who worked for the company from January 2005 to June 2020. He is a resident of Texas and a U.S. citizen.

7.    Defendant Accenture PLC is a multinational professional services company that provides consulting, technology, strategy, digital, and operations services to clients located worldwide. Accenture PLC is incorporated in Dublin, Ireland and is a Fortune Global 500 company. Accenture PLC maintains approximately 48 offices in the United States and employs about 51,800 employees locally.

8.    Defendant Accenture LLP is an Illinois limited liability partnership and wholly-owned subsidiary of Accenture PLC. It was founded in 1989. Accenture LLP provides business services similar to Accenture PLC, including management consulting, technology, and outsourcing services to clients located across the United States.

## JURISDICTION AND VENUE

9.    This action arises under the False Claims Act, 31 U.S.C. § 3729, *et seq.*

10.    Subject Matter Jurisdiction. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

11.    Personal Jurisdiction. This Court has personal jurisdiction over Accenture because it engages in continuous systematic business contacts within the State of Illinois (including in Chicago), and it regularly provides information technology and consulting services in this District. Moreover, the allegations set forth in this Complaint arise, in part, and relate to Accenture's conduct in this District (as its fraudulent conduct takes place nationwide). Accenture also

maintains a substantial physical presence in this State, including the operation of four offices and an Innovation Hub in Chicago.

12.     Venue. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Accenture conducts business within this District, and committed acts giving rise to this action within this District, in violation of 31 U.S.C. § 3729. Additionally, Accenture engages in continuous and systematic business contacts within this District, and maintains a substantial physical presence in this District, including the operation of four offices and an Innovation Hub in Chicago.

## FACTUAL ALLEGATIONS

### A.     Accenture's Business Model

13.     Accenture is a multinational professional services company that provides business consulting, information technology, and outsourcing services to clients located in the U.S. and worldwide. Accenture made $43.2 billion in revenue in fiscal year 2019, and derives about 46% of its revenue from the United States.

14.     American corporations rely on Accenture to provide technology services in lieu of maintaining in-house IT personnel. Accenture's work for corporate clients is project-based, meaning a client will contract with Accenture to perform specific tasks or projects. Approximately 56% of Accenture's total revenue is derived from its technology business.

15.     Accenture competes for business based on price. By minimizing its own costs for providing technological services, Accenture is able to offer lower prices to clients and still earn a substantial profit. Employee pay is Accenture's primary cost in offering its services to U.S.-based clients. If Accenture can employ people who are willing to work for less, it can better compete for corporate clients and reap larger profits.

4

16. India is a poor country with low salaries. In the technology industry, Indians earn much less than Americans. Thus, in order to reduce its costs of providing technology services in America, Accenture has adopted a business model in which it mostly employs Indian citizens in the United States for whom it has secured a visa, as these employees are paid a fraction of what American technology workers demand.

17. Approximately 20,000 individuals work for Accenture Technology (one of Accenture's main businesses), roughly 30% of whom are visa workers from India. Accenture also employs a substantial number of visa holders in another of its businesses – Accenture Consulting.

18. To work in the United States, Indian citizens require work visas issued by the federal government. Accenture applies for and secures two types of visas for its foreign workforce: H-1B visas and L-1 visas.

19. H-1B visas. H-1B visas are intended to bring foreign workers to the United States to perform services in specialty occupations when there are insufficient workers in the U.S. to perform a specific job. *See* 8 C.F.R. § 214.2(h)(1)(ii)(B); 8 C.F.R. § 214(i)(1). As part of each H-1B visa application, the petitioner must establish that an actual job at a specific location is available for the person for whom the company seeks the visa. *See* 20 C.F.R. § 655.730(c)(4) (discussing required content of Labor Condition Applications that accompany visa petitions). H-1B visa petitions cannot be filed for speculative or future work. *See* PM-602-0157 at 4, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Feb. 22, 2018), https://bit.ly/2JoOxLn ("When a beneficiary will be placed at one or more third-party worksites, the petitioner must demonstrate that it has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition.").

20.     In applying for an H-1B visa, Accenture must submit a Labor Condition Application ("LCA") in which it attests that: (a) the job for which a visa is sought actually exists, and (b) that Accenture will pay the visa holder a "prevailing wage" (*i.e.*, at least as much as Accenture pays American workers for the same work in the same geography). *See id.*; 20 C.F.R. § 655.731(a).

21.     In addition to LCAs, the federal government will review other evidence submitted with the visa application to demonstrate that a job actually exists for the intended visa recipient, and that a valid employer-employee relationship exists between the visa petitioner and the visa beneficiary. Such evidence includes letters setting forth job duties, qualifications, salary, supervisor, etc. of the H-1B worker. *See* Memorandum HQ70/6.2.8 AD 10-24 at 8, 16, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Jan. 8, 2010) (Ex. 1). Accenture submits such letters to the federal government, which are signed by purported managers of the visa beneficiaries, and refers to them as "right to control" letters.

22.     The United States government issues only 65,000 H-1B visas each year. (An additional 20,000 H-1B visas are reserved for individuals with graduate degrees from American universities.) The government awards H-1B visas through a lottery process, which is extremely competitive. Companies can begin applying for H-1B visas on April 1 of a calendar year, and the government closes the application process once the H-1B cap is met. The cap is generally met within the first five business days. For example, in 2019, the H-1B filing period opened on April 1, and the United States Citizenship and Immigration Services ("USCIS") announced on April 5 that it had received sufficient H-1B visa petitions to reach the 65,000 cap. In total, 190,098 H-1B visa petitions were received by USCIS during the 2019 filing period, and 65,000 H-1B visas were then awarded through a lottery.

23. H-1B visas are awarded by the government in October. Thus, it takes six months from the date on which an H-1B visa application is submitted to the government for its approval. The delay obtaining an H-1B visa need can far exceed this six month application-to-approval time frame considering that USCIS only accepts H-1B applications for a short window in April of each year. Thus, H-1B needs that arises in May (or later) of a given year will have to wait roughly 1.5 years (until two Octobers hence) even to have a chance for an H-1B visa through the lottery process.

24. H-1B visa holders may work in the United States for a maximum initial stay of three years, followed by another three year extension, and then on a year-to-year basis for those visa holders seeking permanent U.S. residency. H-1B visa petitions are submitted under penalty of perjury and cost around $2,460 per application.[1]

25. L-1 visas. L-1 visas are intended for a substantially narrower range of work and workers than H-1B visas. There are two types of L-1 visas: L-1A and L-1B visas. L-1A visas are only available for management-level employees – *i.e.*, those that principally supervise and control the work of other personnel, including the hiring, firing, and/or promotion of subordinate employees, or "if no other employee is directly supervised, [he or she must] function at a senior level within the organization hierarchy or with respect to the function managed." *See* 8 C.F.R. § 214.2(l)(1)(ii)(B). L-1B visas, on the other hand, are reserved for subject matter experts – *i.e.*, employees with "an advanced level of knowledge or expertise in the organization's processes or procedures." *See* 8 C.F.R. § 214.2(l)(1)(ii)(D). The L-1B petitioner "has . . . [the] burden of demonstrating by a preponderance of the evidence that the beneficiary's knowledge or expertise

---

[1] *See* H and L Filing Fees for Form I-129, Petition for a Nonimmigrant Worker, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (last accessed Feb. 18, 2021), *available at* https://bit.ly/3qp3qhg (listing $460 filing fee, $1,500 American Competitiveness and Workforce Improvement Act fee, and $500 Fraud Prevention and Detection fee).

is special or advanced, [] that the beneficiary's position requires such knowledge[, and] . . . that qualities of [the company's] own processes or products require this employee to have knowledge beyond what is common in the industry." File No. [REDACTED] at 8-9, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Oct. 14, 2014), https://bit.ly/3p19MCl.

26.     As with H-1B visas, an L-1 visa applicant is required to provide detailed documentation in support of the application. And as with its H-1B applications, Accenture supports L-1 visa applications with right to control letters describing jobs that L-1 visa recipients will fill when working for Accenture in the U.S.

27.     Given the limited scope of work for which an L-1 visa can be awarded, the government has no cap on the number of L-1 visas it issues each year. L-1 visas also do not have a prevailing wage requirement like H-1B visas. L-1 visa holders may work in the United Sates for a maximum initial stay of three years, which may be extended once (for L-1B visas) or twice (for L-1A visas) in increments of two years. L-1 petitions are also submitted under penalty of perjury, and cost around \$960 per application (\$1,500 less than a fresh H-1B visa application).[2]

**B.     Relator Ranpal Reddy.**

28.     Relator Ranpal Reddy began working for Accenture in January 2005 as a Program Manager (a career level or "CL" 7 role).

29.     In 2007, Mr. Reddy was promoted to Global Careers Program ("GCP") Lead / Business Operations Lead. For almost twelve years, Mr. Reddy led Accenture's North America Global Careers Program, which facilitated the transfer of Accenture's visa-dependent employees to the U.S. for work.

---

[2] *See* H and L Filing Fees for Form I-129, Petition for a Nonimmigrant Worker, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (last accessed Feb. 18, 2021), *available at* https://bit.ly/3qp3qhg (listing \$460 filing fee and \$500 Fraud Prevention and Detection fee).

30.     In his GCP Lead role, Mr. Reddy acted as a liaison between Human Resources,

Employee Relations, People Mobility (Immigration), and Legal, and helped to design, implement,

and improve GCP policies, processes, and initiatives. Mr. Reddy developed first-hand knowledge

of Accenture's immigration practices through his work with the People Mobility and Legal teams,

and is knowledgeable about U.S. immigration law and compliance. In this position, he witnessed

Accenture's fraudulent visa scheme first-hand.

## C.     **Accenture's Fraudulent Scheme.**

31.     Accenture's business model is predicated on being able to use cheap foreign labor

to staff client needs in the United States. Its ability to source labor with U.S. visas is core to its

business, and Accenture publicly admits that its company's Global Business Model, growth, and

profitability depend on its ability to secure H-1B, L-1, and other work visas for its foreign

workforce to work in the U.S., and that this has held true for the past ten years:[3]

> [O]ur profitability depends on our ability to effectively source and staff people . . .
> to perform services for our clients, including our ability to transition employees to
> new assignments on a timely basis. If we are unable to effectively deploy our
> employees globally on a timely basis to fulfill the needs of our clients, our
> profitability could suffer. . . .  The costs associated with recruiting and training
> employees are significant. An important element of our global business model is
> the deployment of our employees around the world, which allows us to move talent
> as needed. Therefore, if we are not able to deploy the talent we need because of
> increased regulation of immigration or work visas, including limitations placed on
> the number of visas granted, limitations on the type of work performed or location
> in which the work can be performed, and new or higher minimum salary
> requirements, it could be more difficult to staff our employees on client
> engagements and could increase our costs.

---

[3] Accenture Form 10-K at 24 (Aug. 31, 2010) ("The mobility of our employees also contributes to the
effective operation of our global business model, and increased regulation of immigration or work visas
could make this more difficult."); Accenture Form 10-K at 10 (Aug. 31, 2015) ("[I]f we are not able to
deploy the talent we need because of increased regulation of immigration or work visas, including
limitations placed on the number of visas granted, limitations on the type of work performed or location in
which the work can be performed, and new or higher minimum salary requirements, it could be more
difficult to staff our employees on client engagements and could increase our costs.").

Accenture 2019 Annual Report at 9-10.[4]

32.      The United States visa system, though, is not designed to enable large-scale reliance on visa workers, much less visa workers who will accept a fraction of the pay demanded by Americans. For starters, only H-1B visas are generally available for the type of work Accenture needs to service clients in the U.S. – *i.e.*, nuts-and-bolts, day-to-day IT project work for which clients pay Accenture. But H-1B visas are in limited supply, are difficult to secure given the competitive lottery process by which they are awarded, and have prevailing wage requirements that far exceed what Accenture pays its foreign employees for whom it seeks visas.

33.      In addition, it takes a long time to secure visas – not just H-1B visas (which take between 6 months and 1.5 years to receive after a visa need first arises), but also L-1 visas. Accenture thus has to take the time to prepare paperwork, collect documentary evidence (such as right to control letters), and wait for government review of the paperwork before learning the fate of individual visa applications. And visa approval is always uncertain. Sometimes the government will ask for additional supporting documentation (referred to as Requests for Evidence or "RFEs") before making a visa decision, and the government could always deny a visa application. And H-1B visa applications, of course, must go through the competitive lottery process, such that Accenture can only expect to receive a fraction of the H-1B visas for which it applies.

34.      In servicing clients in the U.S., Accenture does not have the luxury of time or uncertainty because as soon as it secures a client's business, Accenture must have staff available to fulfill the client's service needs. Otherwise, Accenture risks losing the business altogether.

35.      Given these pressures, Accenture has elected to engage in a vast visa fraud scheme to create a cheap foreign workforce to whom visas have been issued by the U.S. government when

---

[4]*Available at* https://accntu.re/3cI49FV.

the purported jobs or work against which the visas were issued do not in fact exist. As a result of this scheme, Accenture's visa holders are free to travel to the U.S. to perform future work when it becomes available, relieving Accenture of the burden of having to hire or staff its client's project with more expensive Americans.

36.     Accenture refers internally to foreign workers who have been issued a visa without any work available in the U.S. as being "visa-ready" or "visa enabled" – *i.e.*, available to travel to the U.S. on a moment's notice to perform work when it becomes available in the future. *See* Email from W. Patterson to M. Biviji, *et al.* (Feb. 12, 2019) (Ex. 2) (discussing "'Supply Led' report with upcoming available visa enabled people" and Accenture's plan to "streamline GCP staffing in certain locations for certain skills . . . aimed at improving GCP uptake into value-adding roles"); List of Visa Approved But Not Traveled (Ex. 3) (listing 552 visa holders with approved petitions who have not yet traveled as of July or August 2019). The three-year H-1B visa validity period is tolled while these workers remain in India as their visas have not yet been stamped. This allows "visa-ready" workers to travel to the U.S. well after the employment start date listed on their visa petition.

37.     Accenture's scheme involves three types of fraud: (i) falsification of jobs and work for which visas are sought; (ii) applying for L-1 visas for work for which an H-1B visa is required (thereby reducing the amount paid to the federal government in visa application filing fees); and (iii) failing to pay H-1B visa recipients required salaries (thereby saving on employee costs and reducing federal taxes paid).

### i. *Falsification of Jobs and Work for Both H-1B and L-1 Visas Applications*

38.     Accenture falsifies jobs (and work) for which visas are sought. Fake jobs and job duties are identified in visa applications, including in Labor Condition Applications for H1-B visas

and right to control letters submitted in support of both H1-B visas and L-1 visas.

39.     Accenture falsifies jobs and work to support its visa applications in two ways.

40.     First, Accenture uses fraudulent Labor Condition Applications ("LCAs") to secure H-1B visas in excess of its actual staffing needs, allowing it to build an inventory of "visa-ready" or "visa enabled" employees offshore available to fill U.S. positions.

41.     In order to file for and secure the maximum number of H-1B visas from the government each year, Accenture routinely posts and certifies with the Department of Labor LCAs for positions in the U.S. that do not exist. In addition, when there is a present staffing need at a client site, Accenture exaggerates the number open positions on its LCA filings, thereby filing LCAs for more positions than needed. These false certifications allow Accenture to create a surplus of certified LCAs so that Accenture maintains an inventory of cheaper labor available to perform future work for U.S. clients. *See* Chart of Accenture's US Visa Usage (Ex 4) (noting "[t]here are significantly more LCA slots than H-1B visa holders onshore" and that in the first quarter of fiscal year 2018 alone, Accenture had filed LCAs for 1,243 allegedly available positions or "slots"). Upon information and belief, upwards of 80% (or more) of Accenture's annual LCAs and subsequent visa filings are for positions that do not in fact exist.

42.     Using these fraudulent LCAs, Accenture is able to submit thousands of visa applications annually and is consistently one of the top-10 H-1B visa filers and recipients in the country. For example, Accenture received 2,902 approved H-1B visa petitions in 2019, 3,032 approved petitions in 2018, 5,070 approved petitions in 2017, and 6,831 approved petitions in 2016 (with comparably high numbers in prior years). *See* USCIS Approved H-1B Petitions Data Excerpt FY 13-19 (Ex. 5);[5] Accenture – Historical and Projected H-1B Approvals (Ex. 6) (listing fresh

_____

[5] Approval numbers include H-1B visas for both new employment in the U.S., as well as continued

H-1B visa applications, extensions, amendments, and approvals, by year, from 2012 to 2017). As a result of these fraudulent visa practices, between 2007 and 2015, Accenture's visa-dependent workforce grew ten-fold in the U.S. *See* Chart of Accenture's Visa Usage As a % of the US Workforce (Ex. 7) (showing growth from fiscal year 2011 to 2017).

43.   In 2015, Accenture had almost 4,500 H-1B visa-ready employees located offshore who were available to fill U.S. positions, yet the company still filed an additional 9,472 LCAs with the Department of Labor. *See* Accenture 2011-2019 LCA Filings for H-1B Visa Jobs (Ex. 8) (listing 9,472 certified LCAs and 62 certified-withdrawn LCAs for Accenture in 2015); Accenture – Historical and Projected H-1B Approvals (Ex. 6) (filing for 8,914 H-1B visas in 2015); Email from A. Ghosh to R. Reddy, *et al.* (Nov. 30, 2015) (Ex. 9) (chart listing 4,498 "Total Offshore Visa enabled [Head Count]"). And in January 2017, Accenture had around 1,100 Career Level 10 and 11 visa-ready employees offshore with approved H-1B visa petitions who had not traveled to the U.S. for work, but filed another 6,650 LCAs with the Department of Labor that year:

> Based on the stats provided by Asma, IDC currently has 729 L10 and 366 L11 H1B petition approved employees at offshore[.] . . . And we currently have 1499 L10 and 219 L11 on GCP (landed [onsite]). Together this constitutes about 2700+ at these two levels[.]

*See* Email from R. Reddy to P. Ding, *et al.* (Jan. 17, 2017) (Ex. 10); Accenture 2011-2019 LCA Filings for H-1B Visa Jobs (Ex. 8) (listing 2017 LCA filings); *see also* List of H1-B Approved But Not Travelled (Ex. 11) (listing over 1,100 H-1B visa holders with approved petitions that had not yet traveled to the U.S. as of February 2020). These numbers are troubling, given that H-1B visa petitions may only be filed for existing work in the U.S. (not speculative or future positions). *See* PM-602-0157 at 4, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Feb. 22, 2018), https://bit.ly/2JoOxLn.

---

employment in the U.S.

44. When a position becomes available in the U.S. for one of Accenture's visa-ready workers, the company files an amended visa petition and LCA so that the employee can travel to a different client site for work in the U.S. *See* Accenture – Historical and Projected H-1B Approvals (Ex. 6) (noting Accenture filed 1,295 H-1B visa amendments in 2016 and 1,249 H-1B visa amendments in 2017); USCIS Approved H-1B Petitions Data Excerpt FY 13-19 at 1 (Ex. 5) (chart indicating 2,274 of Accenture's 2,902 approved H-1B visa petitions in fiscal year 2019 were for continuing rather than new employment in the U.S.); Email from P. Mohan to A. Sultana, *et al.* (Mar. 7, 2019) (Ex. 12) (noting that Accenture's People Mobility group is "receiving many address change request[s] from the [Managing Directors] stating that the original address provided . . . is incorrect" and that as a result, Accenture "will have to withdraw the LCA and procure [a] new LCA" for the H-1B visa filing).

45. In fact, between 50% to 75% of Accenture's visa-dependent employees have traveled to the U.S. to work at a different location or client than the one listed in the employee's original visa petition. And more than 90% of Accenture's H-1B visa holders traveled to the U.S. for work several months or even years after the start date of employment listed on their LCA and visa application. For example, when applying for an H-1B visas in April of each year, Accenture lists an October 1 start date for all employees' U.S. work, yet only a few hundred visa workers actually travel to the U.S. in October of each year. And given that only around one-third of Accenture's annual H-1B visa applications are awarded by the government, the number of fraudulent LCAs submitted to the government is much higher than the number of H-1B visas Accenture receives. *See* Accenture – Historical and Projected H-1B Approvals (Ex. 6) (chart noting that between 2015 and 2017, on average, only 35% of Accenture's H-1B visa applications were awarded by the government).

46.     Both Accenture's LCAs and the resulting H-1B visas obtained using these LCAs are fraudulent. These practices therefore deprive the government of its interest in its H-1B visas, which are limited in number, and should rightfully be awarded to individuals seeking non-speculative employment in the U.S. Accenture's conduct also harms U.S. workers who would otherwise fill the jobs assumed by individuals with fraudulently-obtained visas.

47.     Second, Accenture also fraudulently obtains H-1B visas and L-1 visas by drafting and submitting fraudulent right to control letters to USCIS in support of these visa petitions.

48.     As part of each application for an H-1B visa, Accenture must establish that a specific job at a specific location is available for the person for whom Accenture seeks the visa. *See* 20 CFR § 655.731(a); 20 CFR § 655.730(c)(4) (discussing required content of Labor Condition Applications that accompany visa petitions). It must also establish a valid employer-employee relationship with the visa worker, including its visa workers who will work directly at the client site. *See* 8 CFR 214.2(h)(4)(ii)(1) (employer of H-1B visa worker must have right to hire, pay, fire, supervise, or otherwise control the work of any such employee). These same requirements must also be met for L-1 visa petitions. *See* 9 FAM 402.12-10(a) (visa holder "stationed primarily at the worksite of an employer other than the petitioning employer . . . is not eligible for an L visa if . . . [t]he alien will be controlled and supervised principally by such unaffiliated employer").

49.     To meet these requirements, Accenture supports its visa petitions, in part, with right to control letters from the company's Managing Directors, certifying that the foreign worker employed by Accenture will work in a specific job, at a specific U.S.-based location, and under the supervision and control of a specific Accenture employee. Each year, Accenture seeks to file H-1B and L-1 visa applications at least four to six times in excess of its actual staffing needs, and often supports fraudulent applications with false right to control letters – *i.e.*, letters drafted by

Accenture and signed by its Managing Directors falsely referencing staffing needs for which visa

workers are needed.

50.     Members of Accenture's leadership team, including Peggy Ding (Managing

Director, Director of Operations), Janine Ellison (Americas People Mobility Director), and

Amanda VanOverbeke (Associate Director, Office of the North America Chief Executive),

strongly encourage Managing Directors to engage in this practice, and detailed procedures are in

place to ensure compliance:

> This is to inform you that we have major challenges with regards to RTC (Right to
> Control) letter[s.] . . . **Delay in RTC from US [Managing Directors or] MDs –**
> As of March 7th we have received RTC only for 600 nominations by pushing the
> MDs in all possible ways listed below.
>
> 1.  Sent multiple reminder emails to MDs
> 2.  Sent emails to offshore Project Managers to follow up with MDs
> 3.  Janine [Ellison] escalated to Peggy C Ding. Subsequent to that, Peggy sent
>     email to MDs with a final dead line of March 6th to complete the RTC task
> 4.  We formed a team including IBP to reach out to MDs individually. Team
>     worked late on evening IST [India Standard Time] to provide support during
>     US hours and set up time with MD's to help them complete the RTC task.
> 5.  We again followed up with MDs pinging through Skype. If MD's are
>     offline, DND, meetings etc.. team scheduled calendar invite for the
>     subsequent days to explain and help them complete the RTC task.
> 6.  Also, we had screen sharing through skype and tried to help MDs
>     completing the RTC task on the call.
> 7.  If the MD's are not accepting the calendar invites, team continuously
>     followed up for 2 to 3 days to help them.
> 8.  Couple of leads supported during US time to address any complex queries
>     from MDs.
> 9.  While we contacted the MDs, some of them provided alternate MD's name
>     for which the emails were triggered again to new MDs.

*See* Email from P. Mohan to A. Sultana, *et al.* (Mar. 7, 2019) (Ex. 12); *see also* Email from J.

Ellison to P. Ding (Mar. 7, 2019) (Ex. 12) (noting "[t]here have been training, multiple emails

from [Peggy Ding] and PM team and various pings" encouraging Managing Directors to execute the right to control letters).

51.    While a number of Accenture's Managing Directors have acquiesced and signed these letters without any pushback, in recent years, some employees have expressed concern over signing the right to control letters given the lack of demand for the work in the U.S. *See* Email from J. Ellison to P. Ding (Mar. 7, 2019) (Ex. 12) (noting lack of response from accounts to right to control letter "may be that the demand is not really there"). For example, during Mr. Reddy's tenure with Accenture, Sunil Tanneru, an Accenture Managing Director and executive on the State Farm client project, expressed concern to Mr. Reddy regarding the signing of right to control letters. Specifically, he noted that the State Farm project in Bloomington, Illinois was unlikely to have open positions for a number of H-1B candidates for whom he was asked to sign a right to control letter if and when their visas were awarded by the government.

52.    In addition, Accenture routinely asked its Managing Director for the Best Buy client project to sign right to control letters supporting a few hundred visa petitions each year. But Accenture only staffed between 50 to 75 workers on the project at its Minneapolis, Minnesota location. Thus, the vast majority of these positions did not exist at the time of the visa filings.

53.    This fraudulent practice occurs throughout Accenture's U.S. operations, including on the following client projects (among many others): Bank of America in Charlotte, North Carolina, JP Morgan Chase in Columbus, Ohio, All State in Chicago, Illinois, Travelers Insurance in Hartford, Connecticut, American Express in Phoenix, Arizona, Cargill in Minneapolis, Minnesota, and Cardinal Health in Columbus, Ohio.

54.    Accenture's use of fraudulent right to control letters is designed to maximize the number of H-1B and L-1 visas it can secure from the federal government each in order to allow

17

Accenture to create an inventory of cheap foreign workers residing offshore available to fill U.S. positions when they become available, such that Accenture can avoid hiring more expensive Americans.

55.     Accordingly, the false representations made in Accenture's right to control letters supporting H-1B and L-1 visa petitions violate 31 U.S.C. § 3729 and have deprived the United States of its interest in the fraudulently-obtained visas. These visas should have rightfully been awarded to individuals seeking non-speculative employment in the U.S. Further, Accenture's conduct has foreclosed other foreign workers the opportunity to work in the United States, thereby depriving the United States of the benefit that would be provided by these workers.

### ii. Applying for L-1 Visas in Lieu of H-1B Visas

56.     Accenture prefers to secure L-1 visas for its foreign workforce because H-1B visa applications ($2,460) are substantially more expensive than L-1 applications ($960), and H-1B visa applications are subject to the time consuming, highly competitive, and highly uncertain lottery process. As such, L-1 visas are not only cheaper for Accenture to apply for, but also easier to obtain.

57.     And while government scrutiny of L-1 visas has increased in the recent years, historically, scrutiny of L-1 visa petitions has been lower than that of H-1B visa petitions, leading to exceedingly high approval rates for L-1 visas. *See* USCIS Approvals and Denials for L-1B Visa Petitions CY 2003-2011 (Ex. 13) (listing between 93% to 94% approval rate for L-1B visas in calendar years 2005, 2006, and 2007, and 73% approval rate in calendar year 2011).[6]

58.     Accordingly, as part of its "travel-ready" or "travel enabled" visa process and to reduce visa application fees, Accenture fraudulently seeks L-1 visas simply to have foreign

---

[6] *Available at* https://www.uscis.gov/sites/default/files/document/data/i-129-l-1b-performance.pdf.

employees travel-ready to perform H-1B work. L-1 visas are exceedingly limited in scope, particularly compared to the scope of work allowed under H-1B visas. L-1A visas, for example, require that an actual job exist in which a prospective visa recipient primarily supervises and controls the work of others, as compared to completing technical client project work. *See* 8 C.F.R. § 214.2(l)(1)(ii)(B). L-1B visas are only available to individuals with highly specialized, uncommon knowledge within Accenture, and the position for which the visa is sought must require such knowledge. *See* 8 C.F.R. § 214.2(l)(1)(ii)(D). These narrow visa categories, however, do not deter Accenture from proactively seeking L-1 visas for employees who, after visa issuance, travel to the U.S. perform H-1B work once a job materializes.

59. In order to obtain L-1A visas for its employees, Accenture falsifies these individuals' job titles and work responsibilities on their L-1A visa petitions and holds these individuals out as managers who will exercise discretion and control over Accenture employees in the U.S. For example, Accenture secures L-1A visas for GCP employees performing technical work in the U.S. often referred to as "onshore/offshore coordination." But L-1A visas are often secured by Accenture for lower-level employees (*i.e.*, Career Level 9 or below) who lack managerial roles in the U.S.. These false certifications allow Accenture to maximize the number of L-1A visas it can secure from the federal government each year.

60. Accenture initially secured an L-1B visa, for example, for Raghavendra Hebbar to travel to the U.S. for work. But once in the U.S., Accenture moved him to an L-1A visa by way of visa amendment. Yet Mr. Hebbar had no direct reports in the U.S. and did not perform any managerial duties while on an L-1A visa.

61. With respect to L-1B visas, Accenture will exaggerate employees' skillset and expertise on their visa applications to qualify for this visa type, alleging that they are "key"

19

employees with specialized knowledge, despite the fact that the worker was not involved in developing the tool, technology, or methodology to be used at the client site. For example, Diwakar Srivastava, Amit M. Mishra, Mayank Mehrotra, and Xyril A. Baylon were employed by Accenture on the Entergy client project in New Orleans, Louisiana on L-1B visas. Yet these employees performed similar (if not identical) job duties as Deep Tanwar, Nirmal A. Venugopal, Manish G. Kumar, Jayberdhan Gupta, Prabha Suresh, Dayakar Reddy Sama, Marl Acain, and Arlen Balunan, each of whom held an H-1B visa. Yet in order to qualify for an L-1B visa, Messrs. Srivastava, Mishra, Mehrotra, and Baylon were required to be seeking to enter the U.S. to perform services in a specialized knowledge capacity, which they were not doing by performing the same work as Accenture's H-1B visa workers in the U.S.

62.    Because L-1B employees can only remain in the U.S. for up to five years, once this five-year period expires, Accenture applies for an H-1B visa on these employees' behalf, allowing them to remain in the U.S. for an additional year. Accenture uses H-1B and L-1B visas interchangeably to maximize a GCP employee's time in the U.S., without respect to the employee's role or visa regulations. For example, Accenture employee Tanmoy Banerjee began working in the U.S. on an L-1B visa in 2010. In April 2013, Accenture applied for an H-1B visa on his behalf, but even after the visa was awarded in October of that year, Mr. Banerjee continued to work in the U.S. on his L-1B visa. In May 2016, Accenture filed an amended H-1B visa petition so that Mr. Banerjee could then work for a different client at a different location than the one initially listed in his April 2013 H-1B visa petition.

63.    In addition, when an L-1B visa holder's initial role in the U.S. concludes, and they are transferred to a new U.S. role, Accenture has no system in place to verify that the employee's new role still complies with the L-1B visa requirements. Thus, some L-1B employees at Accenture

are staffed in roles which lack the "specialized knowledge" or skillset upon which the initial approval of the L-1B visa was based. For instance, while Accenture secured an L-1B visa for Harish CB to perform Microsoft technology-specific work on a client project in Seattle, Washington in 2019, once in the U.S., this employee was transferred to Accenture's Cloud Innovation Center in Dallas, Texas which did not utilize the proprietary skills and tools pursuant to which Mr. CB's L-1B visa was obtained.

64.     As a result of these practices, Accenture has been one of the top ten filers and recipients of L-1 visas for the past three years. Accenture received 138 L-1 visa petitions in 2019, 107 petitions in 2018, and 183 petitions in 2017. *See* USCIS Approved L-1 Petitions Data Excerpt FY 17-19 (Ex. 14).[7]

65.     Accenture's fraudulent L-1 visa practices have deprived the government of its property interest in the work visas. Moreover, in accordance with these fraudulent practices, Accenture has applied for thousands of L-1 visas when it should have rightfully sought an H-1B visa for the position at issue. And because each L-1 visa application costs about $1,500 less than an H-1B visa, the government has suffered lost revenue of $1,500 for each fraudulent L-1 visa application.

### iii.     Accenture's Fraudulent Underpayment of H-1B Visa Workers

66.     To obtain an H-1B visa, Accenture must certify to the government that, once an H-1B visa holder is in the United States, Accenture will pay the employee the higher of the actual wage rate (*i.e.*, the actual wage paid by the employer to other employees with similar experience and qualifications for the job at issue) or the prevailing wage (*i.e.*, the prevailing wage paid by

---

[7] Approval numbers include L-1 visas for both new employment in the U.S., as well as continued employment in the U.S.

other employers in the same geographic area for the job at issue) for the position, and that the employer will pay this required wage to the H-1B visa worker for his or her entire period of employment in the United States. *See* 20 C.F.R. § 655.731(a).

67. But Accenture's wage certifications – made under penalty of perjury– are false and fraudulent. It has no intention of paying H-1B visa workers as much as Americans, as H-1B visa workers are willing to work for much less than their American counterparts.

68. Accenture employs six practices designed to keep H-1B visa workers' U.S. salaries below required salary levels for H-1B employees.

69. First, Accenture misrepresents on LCAs and visa petitions the experience of the employees for whom it seeks a visa, allowing it to underpay its H-1B visa workers. Specifically, when applying for employees' H-1B visas, Accenture certifies (falsely) that the GCP employees have far fewer years of relevant experience when, in actuality, the employees for whom Accenture seeks a visa are experienced professionals who have typically worked with the company for four or more years. This, in turn, allows Accenture to select a lower prevailing wage rate on the LCA and visa petition than appropriate.

70. The Department of Labor provides guidance as to the prevailing wage for each occupation code (or job position), based on the "nature of the job offer, the area of intended employment, and job[] duties for workers that are similarly employed."[8] Using wage data collected under the Occupational Employment Statistics, the Department of Labor sets forth four wage levels for each occupation code's prevailing wage: Level I, Level II, Level III, and Level IV. *Id.*

---

[8] Employment and Training Administration at 3, FOREIGN LABOR CERTIFICATION DATA CENTER (Nov. 2009), https://flcdatacenter.com/download/NPWHC_Guidance_Revised_11_2009.pdf.

at 3, 7. These wage levels typically coincide with an employee's education and years of relevant work experience, with Level IV requiring the highest levels of education and experience.

71. Level I is an entry level wage rate "for beginning level employees who have only a basic understanding of the occupation." *Id.* at 7. Level II is a qualified wage rate for "employees who have attained, either through education or experience, a good understanding of the occupation." *Id.* Whereas Level III (experienced) and Level IV (fully competent) wage levels are reserved for senior employees with "sound understanding of the occupation" or "advanced skills and diversified knowledge," respectively. *Id.*

72. The individuals that Accenture employs in the U.S. as part of its visa program have typically worked offshore for the company for four or more years before traveling to the U.S. to fill open positions. While Accenture's H-1B visa workers are typically more senior employees who should be paid Level III or Level IV wages (per the Department of Labor's guidance), Accenture maps the majority of its H-1B visa workers to Level II wage positions. *See* 2014 Wage Level Chart (Ex. 15) (chart listing 80% of Accenture's H1-B visa filings in 2014 were for Wage Level II roles); Email from R. Reddy to S. Pazak (Oct. 23, 2014) (Ex. 16) (noting 75% of new H-1B nominations for fiscal year 2015 were for lower level roles (*i.e.*, "Level 10 and below"), and therefore associated with lower wage levels); Email from A. Ghosh to R. Reddy, *et al.* (Nov. 30, 2015) (Ex. 9) (chart confirming that 91% of H-1B visa petitions filed for fiscal year 2016 would be for lower level roles (i.e., Levels 10-12) with lower wage levels); Chart of Accenture's US Visa Usage (Ex. 4) (chart of Quarter 1, Fiscal Year 2018 H-1B filings noting that 48% of all H-1B visa petitions were filed for Wage Level 2 roles).

73. From 2013 to 2019, Accenture paid its H-1B visa workers, on average, between $69,699 and $88,200 annually. *See* USCIS Approved H-1B Petitions Data Excerpt FY 13-19 (Ex.

5). These annual salary figures were much lower than salaries paid by Accenture's competitors, including those who have employed non-visa workers, *id.*, and were also lower than the salaries Accenture paid its visa-independent employees. *See* Chart of Change in Salaries 2014-2018 (Ex. 17) (noting that while local workforce salaries for Accenture's most populous geographies and job levels increased by approximately 4.6% to 4.9% from 2014 to 2018, "GCP salaries . . . **decreased** approximately 1.0-0.1%").

74. To illustrate this fraud, in October 2016, Accenture employed a Career Level 9 employee in the U.S. on an H-1B visa. Email from B. Balakrishna to R. Reddy, *et al.* (Oct. 18, 2016) (Ex. 18). This employee performed a critical ALIP Integration Lead role in the U.S. typically filled by an employee in a higher career level of CL7 or CL8. *Id.* While a local hire (*i.e.*, an individual hired in the U.S.) would be paid $90,000 or more to perform this work, the GCP employee on the H-1B visa was paid just $79,000, which was at the lower end of the Wage Level I spectrum set by the Department of Labor. *Id.*

75. Moreover, in an effort to keep GCP employee salaries low, in 2014, Accenture implemented a new mapping matrix designed to map LCA job roles to lower wage levels. While Career Level 11 and 12 positions were previously mapped to either wage Level I or Level II roles on LCAs, following the implementation of the new mapping matrix, these roles could now be mapped by Accenture only to wage Level I roles, resulting in lower pay for these H-1B employees. *See* H-1B Mapping Matrix at 3 (Ex. 19) (discussing "[i]nitial estimate of potential annual savings" of between $700,000 to $3.5 million from implementation of mapping matrix which would impact "between 60-300 employees based on current onshore population"). Similar changes were implemented for Career Level 9 and 10 roles. While these positions were previously mapped to

either wage Level II or Level III roles on LCAs, under the new matrix, they could only be mapped to wage Level II roles. *Id.* at 2.

76. Second, to avoid paying H-1B visa workers the requisite wage, in 2010, Accenture began mapping H-1B visa workers to Standard Occupational Classification ("SOC") codes with lower wage requirements than the role the employee would actually perform in the U.S. on an approved visa.

77. When Accenture first began utilizing H-1B visas for its foreign workforce, it mapped most GCP employees to one of three SOC codes: (1) Computer Programmer; (2) Computer Systems Analyst; and (3) Computer Information and Systems Manager. However, because Computer Programmer and Computer Systems Analyst positions typically had higher wage rates in the majority of U.S. metropolitan areas, Accenture began mapping these H-1B employees to the lower-paying Computer Specialists, All Others SOC code. Since 2010, a significant percentage of Accenture's H-1B visa petitions have been filed with this Computer Specialist role.

78. Similarly, while Accenture initially mapped H-1B visa workers performing project manager roles to the Computer Information and Systems Manager SOC code, because this SOC code would generally have higher wage requirements, Accenture stopped using this code, and instead began mapping GCP employees to the Information Technology Project Manager SOC code. This practice has allowed Accenture to significantly underpay its project managers working

in the U.S. on H-1B visas and to pay these employees less than local workers performing the same job in the U.S.

79.     Third, Accenture has historically underpaid its H-1B visa workers by paying these employees the minimum wage rate set by the Department of Labor (*i.e.*, the prevailing wage), rather than the higher of the prevailing wage or the actual wage rate for the position.

80.     Initially, when an employee traveled to the U.S. for work on an H-1B visa, Accenture would convert the employee's home country salary to U.S. dollars and add a fixed uplift amount. However, if this salary fell below the Department of Labor's minimum wage, Accenture would also pay the employee a "catch-up" allowance to account for the difference in wages. If the GCP employee then received a raise in the U.S. as part of his or her annual appraisal, the employee would not experience an increase in salary. Instead, the employee's "catch-up" allowance would be reduced against this salary increase until the "catch-up" allowance equaled zero and the employee's salary matched the Department of Labor's minimum wage rate. As a result of this practice, the majority of H-1B visa holders receiving a "catch-up" allowance experienced no salary increase for a period of one to three years in the U.S.

81.     This practice continued until December 2014, when, in seeking to make its GCP employees' salaries "more competitive" (*i.e.*, cheaper), Accenture discovered that 553 H-1B visa

workers had been underpaid in the U.S. Accenture estimated that it would cost $4,000,000 to resolve this issue.

82.    Fourth, even when Accenture began accounting for the actual wage rate paid to non-GCP employees when calculating H-1B visa workers' salaries, Accenture failed to properly calculate this wage rate, resulting in the continued underpayment of its H-1B visa workers.

83.    In December 2014, Accenture introduced an actual wage rate ("AWR") compensation methodology, designed to keep H-1B visa workers' salaries low. While "[t]he actual wage is the wage rate paid by the employer to all individuals with experience and qualifications similar to the H-1B nonimmigrant's experience and qualifications for the specific employment in question at the place of employment,"[9] Accenture's AWR compensation methodology was flawed as it excluded a number of locally-hired employees from its calculation. Specifically, because local employees are often tagged to Accenture offices in the company's system, and not their actual work location, whereas GCP employees are typically tagged to the client work site, these local employees were excluded from some AWR calculations. As a result, Accenture's AWR was significantly lower than the salary paid to local employees performing the same work at the same job location.

84.    In fact, Accenture's AWR methodology actually increased the gap between Accenture's actual wage rate and the Department of Labor's prevailing wage rate from 20% in 2014 to 28% in 2018. *See* Chart of Distance from Prevailing Wage (Ex. 20). And because Accenture typically paid its H-1B workers the AWR or the lowest salary among similarly situated employees, rather than the higher of the prevailing wage rate or the actual wage rate for the

---

[9] Fact Sheet #62G: Must an H-1B worker be paid a guaranteed wage?, U.S. DEPARTMENT OF LABOR (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/62g-h1b-required-wage.

position, Accenture's GCP employees were consistently underpaid as compared to local workers, and H-1B visa holders' average salaries *decreased* following the introduction of the AWR compensation methodology. *See* Chart of Change in Salaries 2014-2018 (Ex. 17) (noting that from 2014 to 2018, local workforce salaries increased by approximately 4.6% to 4.9% whereas "GCP salaries assigned by AWT approach, before Prevailing Wage **decreased** approximately 1.0-0.1%"); Graph of Impact of AWT on Average Salaries and Prevailing Wage Gap (Ex. 21); Email from A. Breshears to R. Reddy, *et al.* (Sept. 20, 2017) (Ex. 22) (when setting actual wage rate, employee "with the lowest salary" was used, but because that individual "was Below Min of Zone 1, we used the Zone 1 Min to set the AW"); Email from W. Patterson to S. Hendricks, *et al.* (Sept. 8, 2017); Email from D. Vilieri to W. Patterson, *et al.* (Sept. 11, 2017) (Ex. 23) (email chain discussing how Accenture used the lower of two local employees' salaries ($103,000 versus $106,800), rather than the average of those salaries, when setting a GCP employee's salary and actual wage rate in the U.S.).

85. For example, from 2017 to 2018, the salaries of H-1B visa workers in Career Level 7 to 11 positions at Accenture decreased from between $487 and $12,921 (on average). *See* Chart of Visa Dependent Company Exempt Salary Increase Analysis (Ex. 24). And while internal analyses by Accenture routinely indicated that the salaries of its H-1B employees were significantly lower than that of its local workforce performing the same roles in the same job locations, Accenture made no effort to correct for these underpayments. *See e.g.*, Email from A. Stapp Holland to R. Reddy, *et al.* (May 25, 2018) (Ex. 25) (providing examples of where GCP employees are paid, on average, less than their non-GCP peer group based on average annual salaries); Email from A. Stapp Holland to W. Patterson & R. Reddy (Oct. 25, 2018) (Ex. 26) (chart indicating that the minimum, average, median, and maximum salaries for GCP employees in

Career Level 7 and 8 Application Development positions were consistently lower than that of their domestic peers).

86.    Accenture's failure to pay H-1B visa workers the requisite wage is also evident when comparing H-1B visa workers' salaries to the salaries listed on Accenture's EB-2 and EB-3 green card applications for those same individuals. To secure a green card for an employee, Accenture must first obtain a PERM Labor Certification from the Department of Labor, which lists the prevailing wage for the position the company seeks to fill in the U.S. with the H-1B visa worker. "The prevailing wage rate is defined as the average wage paid to similarly employed workers in a specific occupation in the area of intended employment."[10] Because Accenture typically seeks green cards for its H-1B employees so that these individuals can continue performing the same role in the U.S. in perpetuity, the H-1B visa worker should be paid the same salary as that listed on the PERM Labor Certification. Yet Accenture routinely pays its H-1B visa workers around $20,000 to $40,000 less than the salary listed on the PERM Labor Certification and subsequent green card application. This practice deprives the government of significant tax revenue as H-1B visa workers are allowed to remain in the U.S. during the pendency of their green card applications, and applicants from India typically must wait about nine years for their applications to be processed and the green card awarded.

87.    Fifth, because Accenture's GCP employees' salaries were based on the employee's career level, rather than the role the employee was performing in the U.S., Accenture also

---

[10] Prevailing Wages (PERM, H-2B, H-1B, H-1B1 and E-3), U.S. DEPARTMENT OF LABOR (last accessed Feb. 18, 2021), https://www.dol.gov/agencies/eta/foreign-labor/wages/prevailing-wage.

underpaid a significant number of GCP employees by forcing lower-level employees to perform more senior-level work in the U.S.

88.     At the same time the AWR compensation methodology was introduced, there was a push by Accenture leadership to utilize lower level employees to perform more senior-level work in the U.S. that was typically performed by employees in higher career levels who had greater skills and work experience. This practice allowed Accenture to cut costs and to undercut its competition. This practice also allowed Accenture to underpay its GCP workers, as those employees' salaries were determined based on their career levels, rather than the roles they were actually performing in the U.S., in violation of the Department of Labor's wage guidelines (which requires employees performing the same work in the same location to be paid the same salary).

89.     Sixth, while GCP employees are eligible for and can receive raises while in the U.S., Accenture delays payment of these raises by failing to amend the visa holder's LCA until the time of the employee's visa renewal or the employee's relocation to a new client project.

90.     For example, if an employee is promoted to a new career level, but his or her visa is valid for another two years, Accenture does not file an amended LCA and visa petition reflecting this salary change until the visa is set to expire. As a result, during this two year period, the H-1B visa holder is paid less than non-visa-dependent employees working in the same role, work location, and career level as the GCP employee. This practice of delaying visa amendments to reflect GCP employees' promotions and raises again allows Accenture to significantly underpay its H-1B visa workers.

91.     Accenture's underpayment of H1-B visa workers is perpetuated by the company's practice of securing visa extensions for these individuals to keep them in the United States as long as possible, often by transferring the workers to new client projects as they become available.

92.     As a result of these fraudulent visa practices, Accenture fails to pay a significant number of its H-1B visa workers the proper wage rate and instead pays these workers significantly less than their non-visa-dependent counterparts performing comparable work. This deprives the U.S. government of significant tax revenue. Accenture's conduct also provides it with a significant competitive advantage to the detriment of U.S. companies and workers as it is able to illegally secure labor from individuals paid far below market rate.

**D.     Harm to the Government from Accenture's Fraudulent Visa Practices.**

93.     The government has suffered three distinct types of harm from Accenture's fraudulent visa practices. First, Accenture's practice of creating "travel-ready" visa holders by fraudulently obtaining visas through its use of false LCAs and right to control letters has deprived the government of its interest the fraudulently-obtained visas and its interest in controlling the distribution of such visas according to law. For example, by law, H-1B and L-1 visas may not be awarded for speculative or future work, and Accenture's fraudulent acquisition of these visas has deprived other foreign nationals the ability to legally work in the U.S.

94.     Second, Accenture has improperly applied for thousands of L-1 visas in lieu of applying for H-1B visas to perform work for which H-1B visas are required. Each such fraudulent L-1 visa application deprives the government of $1,500 in filing fees, as L-1 visa petitions cost significantly less than H-1B visa petitions. Thus, the government has lost significant visa application revenue as a result of this fraudulent practice.

95.     Third, Accenture's underpayment of its H-1B visa workers has deprived the U.S. government of significant tax revenue. Specifically, by failing to pay its H-1B employees the required prevailing wage, Accenture has reduced the amount of federal payroll tax it otherwise would have been required to pay the federal government. Having falsely misrepresented on visa

applications that it would pay H-1B visa employees the required prevailing wage, Accenture has successfully reduced its federal tax payments without any misrepresentation to or fraud on the Internal Revenue Service ("IRS"). That is, by paying H-1B visa holders less than the required prevailing wage, the IRS and tax laws, faithfully obeyed, simply required less of a contribution from Accenture than would have been required had Accenture paid H-1B visa holders what it told the federal government it would pay. The IRS requires an employer to contribute 7.65% of each U.S. employee's salary in payroll taxes. By underpaying H1-B employees, the federal government's tax receipts on that required 7.65% was lower by the very operation of the tax laws.

**E.   Materiality of Accenture's Visa Fraud.**

96.   Accenture's visa fraud is material in at least two ways.

97.   First, Accenture's fraudulent scheme has been very successful. Between 2013 and 2019, Accenture was often a top-10 H-1B visa recipient, receiving more than 31,480 H-1B visas, visa extensions, and visa amendments over this period. *See* USCIS Approved H-1B Petitions Data Excerpt FY 13-19 (Ex. 5). Accenture has also received over 400 new or continuing L-1 visas over the past three years (with comparable numbers in prior years). *See* USCIS Approved L-1 Petitions Data Excerpt FY 17-19 (Ex. 14).

98.   Second, absent Accenture's false representations to the federal government, Accenture's visa applications would have been denied (as discussed below) and Accenture otherwise would have paid substantially more in visa application fees (in applying for H-1B visas in lieu of fraudulent L-1 visas).

99.   **Accenture's Invention of Fictitious Jobs and Work to Support both H-1B and L-1 Visa Applications:** Accenture's scheme to use false LCAs and right to control letters to petition for visas against fake jobs and work is critical to Accenture's receipt of visas, since the

government consistently denies visa petitions for speculative or future work – *i.e.*, when the petitioner fails to demonstrate actual employment for the beneficiary in the U.S. at the time of the visa filing. As reflected in decisions issued by the Administrative Appeals Office ("AAO") of USCIS, petitions for speculative work that are supported by fraudulent LCAs and right to control letters such as those utilized by Accenture (or other fraudulent materials) will be denied. *See, e.g.*, WAC 07 149 52522 at 2, 4, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (July 31, 2009), https://tinyurl.com/y63c6dtw (affirming denial of visa application where petitioner's letter and supporting evidence was "insufficient to establish eligibility for the benefit sought" and "no bona fide position" existed for the beneficiary at the time of the visa filing); MATTER OF S-S-, INC. at 5, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Dec. 9, 2015), https://tinyurl.com/y5w4mhps (affirming denial of H-1B petition where the petitioner failed to establish that "the petition was filed for non-speculative work for the Beneficiary that existed as of the time of the petition's filing" and there was "insufficient documentary evidence in the record corroborating the availability of work for the Beneficiary for the requested period of employment"); *see also* Chart of USCIS Non-Precedent Decisions at 1-9 (Ex. 27) (listing examples of USCIS's denial of visa petitions for fake positions or speculative work).

100. **Accenture's Application for L-1 Visas in Lieu of H-1B Visas:** Accenture's misrepresentations to the government about the purported work an employee will perform once in the U.S. on an L-1 visa is material to its receipt of both L-1A and L-1B visas. This is because USCIS consistently denies L-1A visa petitions where the petitioner fails to establish that the beneficiary will perform managerial work in the U.S. *See, e.g.*, In Re: 15276970 at 4-5, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Jan. 14, 2021), https://tinyurl.com/y6qkkqyy (upholding denial of L-1A petition where "Petitioner ha[d] not provided sufficient evidence

demonstrating that the Beneficiary will be employed in a managerial capacity" and documents indicated that the Beneficiary would be involved in operational tasks for the company in the U.S.); File No. [REDACTED] at 7-8, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Sept. 8, 2014), https://tinyurl.com/yxleuthl (dismissing appeal of denial of L-1A petition based on "the lack of specificity and the additional nonqualifying duties included in the beneficiary's resume [which] raise[d] questions as to the beneficiary's actual day-to-day responsibilities" and whether the beneficiary would be performing both managerial and non-managerial duties in the U.S.); File No. [REDACTED] at 6, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Aug. 28, 2015), https://tinyurl.com/yxkaxt27 (finding "the petitioner ha[d] not established that the beneficiary will be employed in a qualifying managerial or executive capacity" and denying L-1A petition where only "vague job responsibilities" were provided for the beneficiary, and "[t]he actual duties themselves [were needed to] reveal the true nature of the employment").

101.    Similarly, L-1B petitions that fail to satisfy the "specialized knowledge" requirement are also rejected by USCIS. *See, e.g.*, In Re: 13856515 at 5-6, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Jan. 7, 2021), https://tinyurl.com/y5l4keoc (upholding denial of L-1B petition where "the Petitioner ha[d] not established that the Beneficiary's formal education and experience with the foreign entity resulted in knowledge that is either special or advanced"); File No. [REDACTED] at 8-9, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (June 19, 2014) https://tinyurl.com/y26eogt9 (dismissing appeal of L-1B denial where "the petitioner ha[d] not . . . demonstrate[d] that [the beneficiary's] knowledge [wa]s uncommon or advanced" and noting that "[c]laiming . . . the beneficiary ha[d] technical knowledge of complex equipment is not sufficient to establish that he possesses specialized knowledge"); File No. [REDACTED] at 11, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Mar. 25, 2013), https://tinyurl.com/y3werann

(dismissing appeal and denying L-1B petition where "[t]he evidence submitted fail[ed] to establish . . . that the beneficiary possesses specialized knowledge or that he has and will be employed in a specialized knowledge capacity with the petitioner in the United States").

102. **Accenture's Misrepresentation of the Wages to be Paid to its H-1B Visa Workers:** Accenture has knowingly and repeatedly mispresented the salary to be paid to its H-1B visa workers in order to avoid having these visa applications rejected. Because USCIS consistently denies H-1B visa petitions that fail to list the proper wage rate for the recipient, Accenture was well aware that its visa petitions would be denied had it disclosed its fraudulent underpayment on the visa applications. *See e.g.*, MATTER OF G-H-P-, INC. at 12, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Oct. 31, 2018), https://tinyurl.com/yxsqjysv (denying H-1B petition and noting "the Petitioner was required to provide at the time of filing an LCA certified for the correct prevailing wage in order for it to be found to correspond to the petition. To permit otherwise may result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, 8 U.S.C. § 1 182(n)(l)(A)"); File No. [REDACTED] at 11, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (May 26, 2015), https://tinyurl.com/y479m8ro (dismissing appeal of H-1B visa denial where proffered wage did not comply with the prevailing wage and the "attested salary . . . on the Form I-129 f[ell] well below that required by law for the position of Software Developer, Application"); *see also* Chart of USCIS Non-Precedent Decisions at 9-18 (Ex. 27) (listing examples of USCIS's denial of H-1B visa petitions for failure to pay proper wage rate).

### F.     Accenture's Retaliation Against Relator Ranpal Reddy

103.     As noted above, Relator Ranpal Reddy began working for Accenture in January 2005 and led Accenture's North America Global Careers Program ("GCP") for the vast majority of his fifteen-year career with the company.

104.     Mr. Reddy performed well in his GCP Lead role, and received no complaints regarding his performance or otherwise. In fact, in 2008, he was promoted from a Career Level 7 to a Career Level 6 designation (a Senior Manager-level) and received another promotion in 2015 to a Career Level 5 designation (an Associate Director-level) because of his significant contributions to the North America GCP's growth (growing the program from just 800 employees in 2007 to over 8,400 employees in 2016).

105.     Starting around 2014, Mr. Reddy began raising concerns with Accenture regarding the company's fraudulent visa practices. Specifically, Mr. Reddy complained to Accenture leadership that the company routinely failed to pay its H-1B visa workers the requisite wage, that some GCP employees remained in the U.S. illegally following their visa expiry, that Accenture's AWR methodology was flawed, that its L-1 visa strategy and execution required significant changes given that Accenture improperly sought L-1 visas for employees who should be working in the U.S. on an H-1B visa, and that Accenture was filing for visas in excess of its actual staffing needs.

106.     He raised these concerns consistently with Accenture for five or six years, but little was done to address his concerns. *See e.g.*, Email from R. Reddy to J. Yedo & J. Joseph (Oct. 6, 2014) (Ex. 28); (expressing concern over visa filings for low-level (Level 12) employees and stating, "I am not sure how we are going to support/justify over 10k new petitions this year."); Email from R. Reddy to H. Hickson (Feb. 6, 2020) (Ex. 29) ("I think there is a huge opportunity

to correct and/or improve several areas, especially around temporary visa holders in the US. . . . I see several red flags in the way we deal with H1B vias, L1 visas, Green Card sponsorship, Compensation / Benefits for temporary visa holders etc. If we don't fix some of those areas, Accenture could be at a risk for potential law suits from current or former temporary visa holders."); Email from R. Reddy to S. Agarwal (Apr. 27, 2020) (Ex. 30) (discussing H-1B compensation issues which "could lead to immigration compliance issues due to which there is a huge risk if any employee files a case against Accenture," GCP employees "working illegally on their visa," and Accenture "submitting [a] significant number of H1B applications every year which is another huge flag from the immigration compliance perspective" because not all employees travel to the U.S. once their visa is approved).

107.   In response to these complaints, Accenture retaliated against Mr. Reddy for speaking out against the company's visa practices. Specifically, the company: (1) denied Mr. Reddy positions for which he was qualified; (2) removed him from his GCP Lead position and subsequent role as the Dallas Cloud Innovation Center Lead; and (3) terminated his employment.

108.   ***Denial of Positions Within Accenture.*** In 2018, Mr. Reddy applied to two positions within Accenture for which he was well qualified – a Global Mobility Business Partner Director and a Global Mobility Delivery Director role. Despite having worked in Global Mobility / Immigration with Accenture for the past decade, Mr. Reddy was not selected for either position. Mr. Reddy believes his rejection by Accenture was retaliatory, and that he was denied these roles for speaking out against Accenture's fraudulent visa practices.

109.   In February 2020, Mr. Reddy reached out to Helen Hickson, Executive Director of Global Mobility, to see if there were any roles within Global Mobility that she was looking to fill or could potentially create that would utilize his knowledge and experience in immigration. In his

February 6, 2020 email to Ms. Hickson, Mr. Reddy noted that he saw "several flags in the way [Accenture] deal[s] with H1B visas, L1 visas, Green Card sponsorship, [and] Compensation / Benefits for temporary visa holders etc." and that if Accenture didn't "fix some of those areas, [the company] could be at risk for potential law suits from current or former temporary visa holders." Email from R. Reddy to H. Hickson (Feb. 6, 2020) (Ex. 29). Mr. Reddy stressed in his email that he "would like to be part of [the] Global Mobility team to help Accenture [be] fully compliant with US immigration laws and rules." *Id.* But again, Mr. Reddy was not selected by Accenture for a new role within Global Mobility.

110. ***Removal from Positions Within Accenture.*** In February or March of 2019, Accenture informed Mr. Reddy that his position as GCP Lead was being eliminated, and that he would need to look for a new role within the company. But rather than eliminating Mr. Reddy's role, Accenture replaced Mr. Reddy with an employee who was about 15 years his junior and who had considerable less experience with GCP and immigration matters than Mr. Reddy.

111. Accenture then placed Mr. Reddy in an unallocated or inactive status known as being on the "bench." While on the bench, Mr. Reddy actively searched for a new role with Accenture, and was able to secure a position as the Dallas Cloud Innovation Center Lead. But after just three months in this role, Accenture again replaced Mr. Reddy, without justification, with an external hire, and placed him on the bench in March 2020. Accenture's removal of Mr. Reddy from these positions was designed to punish him for voicing his immigration and compliance-related concerns to the company.

112. ***Termination of Mr. Reddy's Employment.*** Three months later, on June 26, 2020, Accenture terminated Mr. Reddy's employment. Mr. Reddy had worked for the company for more

than 15 years. Mr. Reddy's termination was retaliatory and was again undertaken to punish him for speaking out against Accenture's fraudulent visa practices.

## CLAIMS

### COUNT I
### Violations of the False Claims Act, U.S.C. § 3729

113.    Relator re-alleges and incorporates the foregoing paragraphs by reference as if fully set forth herein.

114.    Accenture has knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, in violation of 31 U.S.C. § 3729(a)(1)(A). Accenture has knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(B). Accenture has also knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G).

115.    Accenture, by and through its officers, agents, and employees authorized and ratified all the violations of the False Claims Act committed by its various officers, agents, and employees.

116.    Accenture's fraudulent conduct has deprived the government of its interest in thousands of visas. The fraudulently obtained H-1B and L-1 visas should have rightfully been awarded to individuals seeking non-speculative work in the United States. Accenture's conduct has also deprived the government of significant visa application filing fees each time the company improperly applied for an L-1 visa for a foreign employee who traveled to the U.S. to perform work for which an H-1B visa should have been sought (resulting in a loss of $1,500 for each

fraudulent L-1 visa application). Accenture's fraudulent conduct has further deprived the government of substantial tax revenue because Accenture consistently underpays its thousands of its H-1B visa workers utilized in the U.S. each year. Given Accenture's heavy reliance on H-1B visa workers in staffing U.S. positions, the lost tax revenue suffered by the government is considerable. Thus, the U.S. government has suffered millions of dollars in lost visa application fees and tax revenue — damages which continue to accrue.

117. For each False Claims Act violation, Accenture is subject to penalties of up to $10,000 (for false claims made before November 3, 2015) and up to $22,363 (for false claims made on or after November 3, 2015) for each improper act and three times the amount of damages sustained by the government. These civil penalties are mandatory. *See* 31 U.S.C. § 3729(a)(1)(G); S. Rep. No. 96-615 at 2 & n.4 (1980) ("The imposition of this forfeiture is automatic and mandatory for each claim which is found to be false. The United States is entitled to recover such forfeitures solely upon proof that false claims were made, without proof of any damages. . . The Committee does not intend that the amount of forfeiture recovery be left to the discretion of the district court. Rather, for each false claim, a forfeiture shall be imposed.").[11]

<div align="center">

**COUNT II**
**Retaliation in Violation of the False Claims Act, U.S.C. § 3730(h)**

</div>

118. Relator re-alleges and incorporates the foregoing paragraphs by reference as if fully

---

[11] *See also* S. Rep. No. 99-345 at 8 (1986) ("The imposition of this forfeiture is automatic and mandatory for each claim which is found to be false. The United States is entitled to recover such forfeitures solely upon proof that false claims were made, without proof of any damages."); *id.* at 17 ("The Committee reaffirms the apparent belief of the act's initial drafters that defrauding the Government is serious enough to warrant an automatic forfeiture rather than leaving fine determinations with district courts, possibly resulting in discretionary nominal payments."); *United States v. Miller*, 645 F.2d 473, 475-76 & n.4 (5th Cir. 1982) ("the knowing submission of a false claim to the government is sufficient for the levying of the statutory forfeiture penalty" even where a complaint does not allege damages to the government).

set forth herein.

119.    Relator has engaged in the following protected conduct in an effort to prevent one or more violations of the False Claims Act: (1) investigated, documented, and reported the allegations set forth herein to Accenture leadership; (2) assisted the undersigned counsel in preparation of this complaint when Accenture failed to take corrective action; and (3) prepared to disclose and disclosed Accenture's fraudulent scheme to the appropriate government officials.

120.    In response to these actions, Accenture retaliated against Relator for reporting Accenture's fraudulent conduct, as described above.

121.    Accenture's retaliatory conduct has directly caused monetary damages and injury to the Relator.

122.    Pursuant to 31 U.S.C. § 3730(h), Relator is entitled to all relief necessary to make him whole, including, but not limited to, an award of back pay, with interest, compensatory damages, punitive damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays that the Court enter judgment against Accenture, and in favor of the United States and Relator as follows:

   a. A declaratory judgment that the practices complained of herein are unlawful and violate 31 U.S.C. § 3729;

   b. Imposition of the maximum amount of civil penalties permitted for each of Accenture's False Claims Act violations;

   c. Civil penalties in the amount of three times the actual damages suffered by the federal government as a result of Accenture's actions;

   d. A permanent injunction against Accenture and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, from engaging in unlawful policies, practices, customs, and usages set forth herein;

   e. Relator seeks a fair and reasonable amount of any award for his contribution to the government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of

the False Claims Act, plus interest;

f.  Relator also seeks an award of back pay, interest on the back pay, compensatory damages, punitive damages, costs, and attorneys' fees pursuant to 31 U.S.C. § 3730(h) of the False Claims Act;

g.  Award all reasonable attorneys' fees, expert witness fees, expenses, and costs of this action;

h.  Pre- and post-judgment interest; and

i.  Such other relief on behalf of the Relator and/or the United States of America as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Relator hereby demands a trial by jury.


Dated: March 3, 2021                             /s/Mark Hammervold
                                                 *Attorney for Relator*

                                                 Mark Hammervold, IL #6320744
                                                 KOTCHEN & LOW LLP
                                                 1745 Kalorama Road NW, Suite 101
                                                 Washington, DC 20009
                                                 (202) 471-1995
                                                 (202) 280-1128 (Fax)
                                                 mhammervold@kotchen.com

# Exhibit 1



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Service Center Operations Directorate*
Washington, DC 20529-2060

**U.S. Citizenship
and Immigration
Services**

**JAN 0 8 2010**    HQ 70/6.2.8
AD 10-24

# Memorandum

TO:      Service Center Directors

FROM:    Donald Neufeld
         Associate Director, Service Center Operations

SUBJECT: Determining Employer-Employee Relationship for Adjudication of H-1B
         Petitions, Including Third-Party Site Placements

         Additions to Officer's Field Manual (AFM) Chapter 31.3(g)(15) (AFM Update
         AD 10-24)

## I. Purpose

This memorandum is intended to provide guidance, in the context of H-1B petitions, on the
requirement that a petitioner establish that an employer-employee relationship exists and will
continue to exist with the beneficiary throughout the duration of the requested H-1B validity
period.

## II. Background

Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA) defines an H-1B
nonimmigrant as an alien:

> who is coming temporarily to the United States to perform services…in a specialty
> occupation described in section 1184(i)(1)…, who meets the requirements of the
> occupation specified in section 1184(i)(2)…, and with respect to whom the Secretary of
> Labor determines and certifies…that the intending employer has filed with the Secretary
> an application under 1182(n)(1).

The Code of Federal Regulations (C.F.R.) provides that a "United States employer" shall file an
[H-1B] petition. 8 C.F.R. 214.2(h)(2)(i)(A).

The term "United States employer", in turn, is defined at 8 C.F.R. 214.2(h)(4)(ii) as follows:

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 2

United States employer means a person, firm, corporation, contractor, or other association, or organization in the United States which:
(1) Engages a person to work within the United States;
(2) Has an **employer-employee relationship** with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and
(3) Has an Internal Revenue Service Tax identification number.

In support of an H-1B petition, a petitioner must not only establish that the beneficiary is coming to the United States temporarily to work in a specialty occupation but the petitioner must also satisfy the requirement of being a U.S. employer by establishing that a valid employer-employee relationship exists between the U.S. employer and the beneficiary throughout the requested H-1B validity period. To date, USCIS has relied on common law principles[1] and two leading Supreme Court cases in determining what constitutes an employer-employee relationship.[2]

The lack of guidance clearly defining what constitutes a valid employer-employee relationship as required by 8 C.F.R. 214.2(h)(4)(ii) has raised problems, in particular, with independent contractors, self-employed beneficiaries, and beneficiaries placed at third-party worksites. The placement of the beneficiary/employee at a work site that is not operated by the petitioner/employer (third-party placement), which is common in some industries, generally makes it more difficult to assess whether the requisite employer-employee relationship exists and will continue to exist.

While some third-party placement arrangements meet the employer-employee relationship criteria, there are instances where the employer and beneficiary do not maintain such a relationship. Petitioner control over the beneficiary must be established when the beneficiary is placed into another employer's business, and expected to become a part of that business's regular operations. The requisite control may not exist in certain instances when the petitioner's business is to provide its employees to fill vacancies in businesses that contract with the petitioner for personnel needs. Such placements are likely to require close review in order to determine if the required relationship exists.

Furthermore, USCIS must ensure that the employer is in compliance with the Department of Labor regulations requiring that a petitioner file an LCA specific to each location where the

---

[1] USCIS has also relied on the Department of Labor definition found at 20 C.F.R. 655.715 which states: *Employed, employed by the employer, or employment relationship* means the employment relationship as determined under the common law, under which the key determinant is the putative employer's right to control the means and manner in which the work is performed. Under the common law, "no shorthand formula or magic phrase * * * can be applied to find the answer * * *. [A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB* v. *United Ins. Co. of America,* 390 U.S. 254, 258 (1968).

[2] Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992) (hereinafter Darden) and Clackamas Gastroenterology Assoc. v. Wells, 538 U.S. 440 (2003) (hereinafter Clackamas).

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 3

beneficiary will be working.[3]  In some situations, the location of the petitioner's business may
not be located in the same LCA jurisdiction as the place the beneficiary will be working.

## III. Field Guidance

### A. The Employer-Employee Relationship

An employer who seeks to sponsor a temporary worker in an H-1B specialty occupation is
required to establish a valid employer-employee relationship.  USCIS has interpreted this term
to be the "conventional master-servant relationship as understood by common-law agency
doctrine."[4]  The common law test requires that all incidents of the relationship be assessed and
weighed with no one factor being decisive.  The Supreme Court has stated:

> *we consider the hiring party's **right to control the manner and means by which the
> product is accomplished**. Among the other factors relevant to this inquiry are the skill
> required; the source of the instrumentalities and tools; the location of the work; the
> duration of the relationship between the parties; whether the hiring party has the right to
> assign additional projects to the hired party, the extent of the hired party's discretion
> over when and how long to work; the method of payment; the hired party's role in hiring
> and paying assistants; whether the work is part of the regular business of the hiring
> party; whether the hiring party is in business; the provision of employee benefits; and the
> tax treatment of the hired party.[5]*

Therefore, USCIS must look at a number of factors to determine whether a valid employer-
employee relationship exists. Engaging a person to work in the United States is more than merely
paying the wage or placing that person on the payroll.  In considering whether or not there is a
valid "employer-employee relationship" for purposes of H-1B petition adjudication, USCIS must
determine if the employer has a sufficient level of control over the employee.  The petitioner
must be able to establish that it has the **right to control**[6] over when, where, and how the
beneficiary performs the job and USCIS will consider the following to make such a
determination (with no one factor being decisive):

(1) Does the petitioner supervise the beneficiary and is such supervision off-site or on-site?
(2) If the supervision is off-site, how does the petitioner maintain such supervision, *i.e.*
    weekly calls, reporting back to main office routinely, or site visits by the petitioner?
(3) Does the petitioner have the right to control the work of the beneficiary on a day-to-day
    basis if such control is required?

---

[3] See 20 C.F.R. 655.730(c)(4)(v), 20 C.F.R. 655.730(c)(5) and 20 C.F.R. 655.730(d)(1)(ii)
[4] See Darden at 322-323.
[5] See Darden at 323-324 (Emphasis added.)
[6] The *right* to control the beneficiary is different from *actual* control.  An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. The employer-employee relationship hinges on the *right* to control the beneficiary.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 4

(4) Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
(5) Does the petitioner hire, pay, and have the ability to fire the beneficiary?
(6) Does the petitioner evaluate the work-product of the beneficiary, i.e. progress/performance reviews?
(7) Does the petitioner claim the beneficiary for tax purposes?
(8) Does the petitioner provide the beneficiary any type of employee benefits?
(9) Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?
(10) Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?
(11) Does the petitioner have the ability to control the manner and means in which the work product of the beneficiary is accomplished?

The common law is flexible about how these factors are to be weighed. The petitioner will have met the relationship test, if, in the totality of the circumstances, a petitioner is able to present evidence to establish its right to control the beneficiary's employment. In assessing the requisite degree of control, the officer should be mindful of the nature of the petitioner's business and the type of work of the beneficiary. The petitioner must also be able to establish that the right to control the beneficiary's work will continue to exist throughout the duration of the beneficiary's employment term with the petitioner.

## Valid employer-employee relationship would exist in the following scenarios:[7]

### Traditional Employment

The beneficiary works at an office location owned/leased by the petitioner, the beneficiary reports directly to the petitioner on a daily basis, the petitioner sets the work schedule of the beneficiary, the beneficiary uses the petitioner's tools/instrumentalities to perform the duties of employment, and the petitioner directly reviews the work-product of the beneficiary. The petitioner claims the beneficiary for tax purposes and provides medical benefits to the beneficiary.

**[Exercise of Actual Control Scenario]**

### Temporary/Occasional Off-Site Employment

The petitioner is an accounting firm with numerous clients. The beneficiary is an accountant. The beneficiary is required to travel to different client sites for auditing purposes. In performing such audits, the beneficiary must use established firm practices. If the beneficiary travels to an off-site location outside the geographic location of the employer to

---

[7] These scenarios are meant to be illustrative examples and are not exhaustive. Officers may see a variety of situations and factors when reviewing an H-1B petition.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 5

perform an audit, the petitioner provides food and lodging costs to the beneficiary. The
beneficiary reports to a centralized office when not performing audits for clients and has an
assigned office space. The beneficiary is paid by the petitioner and receives employee
benefits from the petitioner.

**[Right to Control Scenario]**

### Long-Term/Permanent Off-Site Employment

The petitioner is an architectural firm and the beneficiary is an architect. The petitioner has a
contract with a client to build a structure in a location out of state from the petitioner's main
offices. The petitioner will place its architects and other staff at the off-site location while
the project is being completed. The contract between the petitioner and client states that the
petitioner will manage its employees at the off-site location. The petitioner provides the
instruments and tools used to complete the project, the beneficiary reports directly to the
petitioner for assignments, and progress reviews of the beneficiary are completed by the
petitioner. The underlying contract states that the petitioner has the right to ultimate control
of the beneficiary's work.

**[Right to Control Specified and Actual Control is Exercised]**

### Long Term Placement at a Third-Party Work Site

The petitioner is a computer software development company which has contracted with
another, unrelated company to develop an in-house computer program to track its
merchandise, using the petitioner's proprietary software and expertise. In order to complete
this project, petitioner has contracted to place software engineers at the client's main
warehouse where they will develop a computer system for the client using the petitioner's
software designs. The beneficiary is a software engineer who has been offered employment
to fulfill the needs of the contract in place between the petitioner and the client. The
beneficiary performs his duties at the client company's facility. While the beneficiary is at
the client company's facility, the beneficiary reports weekly to a manager who is employed
by the petitioner. The beneficiary is paid by the petitioner and receives employee benefits
from the petitioner.

**[Right to Control Specified and Actual Control is Exercised]**

### The following scenarios would not present a valid employer-employee relationship:[8]

#### Self-Employed Beneficiaries

The petitioner is a fashion merchandising company that is owned by the beneficiary. The
beneficiary is a fashion analyst. The beneficiary is the sole operator, manager, and employee

---

[8] These scenarios are meant to be illustrative examples and are not exhaustive. Officers may see a variety of
situations and factors when reviewing an H-1B petition.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
    Including Third-Party Site Placements

Page 6

of the petitioning company. The beneficiary cannot be fired by the petitioning company. There is no outside entity which can exercise control over the beneficiary.[9] The petitioner has not provided evidence that that the corporation, and not the beneficiary herself, will be controlling her work.[10]

**[No Separation between Individual and Employing Entity; No Independent Control Exercised and No Right to Control Exists]**

### Independent Contractors

The beneficiary is a sales representative. The petitioner is a company that designs and manufactures skis. The beneficiary sells these skis for the petitioner and works on commission. The beneficiary also sells skis for other companies that design and manufacture skis that are independent of the petitioner. The petitioner does not claim the beneficiary as an employee for tax purposes. The petitioner does not control when, where, or how the beneficiary sells its or any other manufacturer's products. The petitioner does not set the work schedule of the beneficiary and does not conduct performance reviews of the beneficiary.

**[Petitioner Has No Right to Control; No Exercise of Control]**

### Third-Party Placement/ "Job-Shop"

The petitioner is a computer consulting company. The petitioner has contracts with numerous outside companies in which it supplies these companies with employees to fulfill specific staffing needs. The specific positions are not outlined in the contract between the petitioner and the third-party company but are staffed on an as-needed basis. The beneficiary is a computer analyst. The beneficiary has been assigned to work for the third-party company to fill a core position to maintain the third-party company's payroll. Once placed at

---

[9] USCIS acknowledges that a sole stockholder of a corporation can be employed by that corporation as the corporation is a separate legal entity from its owners and even its sole owner. See Matter of Aphrodite, 17 I&N Dec. 530 (BIA 1980). However, an H-1B beneficiary/employee who owns a majority of the sponsoring entity and who reports to no one but him or herself may not be able to establish that a valid employment relationship exists in that the beneficiary, who is also the petitioner, cannot establish the requisite "control". See generally Administrator, Wage and Hour Division v. Avenue Dental Care, 6-LCA-29 (ALJ June 28, 2007) at 20-21.

[10] In the past, the Administrative Appeals Office (AAO) has issued a limited number of unpublished decisions that addressed whether a beneficiary may be "employed" by the petitioner even though she is the sole owner and operator of the enterprise. The unpublished decisions correctly determined that corporations are separate and distinct from their stockholders and that a corporation may petition for, and hire, their principal stockholders as H-1B temporary employees. However, similar to the 1979 decision in *Matter of Allan Gee, Inc.*, the AAO did not reach the question of how, or whether, petitioners must establish that such beneficiaries are bona fide "employees" of "United States employers" having an "employer-employee relationship." 17 I&N Dec. 296 (Reg. Comm. 1979). While it is correct that a petitioner may employ and seek H-1B classification for a beneficiary who happens to have a significant ownership interest in a petitioner, this does not automatically mean that the beneficiary is a bona fide employee. Starting in 2007, the AAO has utilized the criteria discussed in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 322-323 (1992) and *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003) to reach this pivotal analysis.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
        Including Third-Party Site Placements

Page 7

the client company, the beneficiary reports to a manager who works for the third-party
company. The beneficiary does not report to the petitioner for work assignments, and all
work assignments are determined by the third-party company. The petitioner does not
control how the beneficiary will complete daily tasks, and no propriety information of the
petitioner is used by the beneficiary to complete any work assignments. The beneficiary's
end-product, the payroll, is not in any way related to the petitioner's line of business, which
is computer consulting.    The beneficiary's progress reviews are completed by the client
company, not the petitioner.
**[Petitioner Has No Right to Control; No Exercise of Control]**

## The following is an example of a regulatory exception where the petitioner is not the employer:

### Agents as Petitioners[11]

The petitioner is a reputable modeling agency that books models for various modeling jobs at
different venues to include fashion houses and photo shoots.    The beneficiary is a
distinguished runway model.    The petitioner and beneficiary have a contract between one
another that includes such terms as to how the agency will advise, counsel, and promote the
model for fashion runway shows. The contract between the petitioner and beneficiary states
that the petitioner will receive a percentage of the beneficiary's fees when the beneficiary is
booked for a runway show.    When the beneficiary is booked for a runway show, the
beneficiary can negotiate pay with the fashion house. The fashion house (actual employer)
controls when, where, and how the model will perform her duties while engaged in the
runway shows for the fashion house.
**[Agent Has No Right to Control; Fashion House Has and Exercises Right to Control]**

### B. Documentation to Establish the Employer-Employee Relationship

Before approving H-1B nonimmigrant visa petitions, "the director shall consider all the evidence
submitted and such other evidence as he or she may independently require to assist his or her
adjudication."[12]   In addition to all other regulatory requirements, including that the petitioner
provide an LCA specific to each location where the beneficiary will be working, the petitioner
must establish the employer-employee relationship described above. Such evidence should
provide sufficient detail that the employer and beneficiary are engaged in a valid employer-
employee relationship. If it is determined that the employer will not have the right to control the

---

[11] Under 8 C.F.R. 214.2(h)(2)(i)(F), it is also possible for an "agent" who may not be the actual employer of the H-
1B temporary employee to file a petition on behalf of the actual employer and the beneficiary. The beneficiary must
be one who is traditionally self-employed or who uses agents to arrange short-term employment on their
behalf with numerous employers. However, as discussed below, the fact that a petition is filed by an agent does
not change the requirement that the end-employer have a valid employer-employee relationship with the beneficiary.

[12] See 8 C.F.R. 214.2(h)(9)(i).

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
 Including Third-Party Site Placements

Page 8

employee in the manner described below, the petition may be denied for failure of the employer
to satisfy the requirements of being a United States employer under 8 C.F.R. 214.2(h)(4)(ii).

### 1. Initial Petition

The petitioner must clearly show that an employer-employee relationship will exist between the
petitioner and beneficiary, and establish that the employer has the right to control the
beneficiary's work, including the ability to hire, fire and supervise the beneficiary. The petitioner
must also be responsible for the overall direction of the beneficiary's work.[13] Lastly, the
petitioner should be able to establish that the above elements will continue to exist throughout
the duration of the requested H-1B validity period. The petitioner can demonstrate an employer-
employee relationship by providing a combination of the following or similar types of evidence:

- A complete itinerary of services or engagements that specifies the dates of each service or
  engagement, the names and addresses of the actual employers, and the names and
  addresses of the establishment, venues, or locations where the services will be performed
  for the period of time requested;
- Copy of signed Employment Agreement between the petitioner and beneficiary detailing
  the terms and conditions of employment;
- Copy of an employment offer letter that clearly describes the nature of the employer-
  employee relationship and the services to be performed by the beneficiary;
- Copy of relevant portions of valid contracts between the petitioner and a client (in which
  the petitioner has entered into a business agreement for which the petitioner's employees
  will be utilized) that establishes that while the petitioner's employees are placed at the
  third-party worksite, the petitioner will continue to have the right to control its
  employees;
- Copies of signed contractual agreements, statements of work, work orders, service
  agreements, and letters between the petitioner and the authorized officials of the ultimate
  end-client companies where the work will actually be performed by the beneficiary,
  which provide information such as a detailed description of the duties the beneficiary will
  perform, the qualifications that are required to perform the job duties, salary or wages
  paid, hours worked, benefits, a brief description of who will supervise the beneficiary and
  their duties, and any other related evidence;
- Copy of position description or any other documentation that describes the skills required
  to perform the job offered, the source of the instrumentalities and tools needed to perform
  the job, the product to be developed or the service to be provided, the location where the
  beneficiary will perform the duties, the duration of the relationship between the petitioner
  and beneficiary, whether the petitioner has the right to assign additional duties, the extent
  of petitioner's discretion over when and how long the beneficiary will work, the method
  of payment, the petitioner's role in paying and hiring assistants to be utilized by the
  beneficiary, whether the work to be performed is part of the regular business of the

---

[13] See 8 C.F.R. 214.2(h)(4)(ii).

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 9

petitioner, the provision of employee benefits, and the tax treatment of the beneficiary in relation to the petitioner;
- A description of the performance review process; and/or
- Copy of petitioner's organizational chart, demonstrating beneficiary's supervisory chain.

## 2. Extension Petitions[14]

An H-1B petitioner seeking to extend H-1B employment for a beneficiary must continue to establish that a valid employer-employee relationship exists. The petitioner can do so by providing evidence that the petitioner continues to have the right to control the work of the beneficiary, as described above.

The petitioner may also include a combination of the following or similar evidence to document that it maintained a valid employer-employee relationship with the beneficiary throughout the initial H-1B status approval period:

- Copies of the beneficiary's pay records (leave and earnings statements, and pay stubs, etc.) for the period of the previously approved H-1B status;
- Copies of the beneficiary's payroll summaries and/or Form W-2s, evidencing wages paid to the beneficiary during the period of previously approved H-1B status;
- Copy of Time Sheets during the period of previously approved H-1B status;
- Copy of prior years' work schedules;
- Documentary examples of work product created or produced by the beneficiary for the past H-1B validity period, (i.e., copies of: business plans, reports, presentations, evaluations, recommendations, critical reviews, promotional materials, designs, blueprints, newspaper articles, web-site text, news copy, photographs of prototypes, etc.). Note: The materials must clearly substantiate the author and date created;
- Copy of dated performance review(s); and/or
- Copy of any employment history records, including but not limited to, documentation showing date of hire, dates of job changes, i.e. promotions, demotions, transfers, layoffs, and pay changes with effective dates.

If USCIS determines, while adjudicating the extension petition, that the petitioner failed to maintain a valid employer-employee relationship with the beneficiary throughout the initial approval period, or violated any other terms of its prior H-1B petition, the extension petition may be denied unless there is a compelling reason to approve the new petition (e.g., the petitioner is able to demonstrate that it did not meet all the terms and conditions through no fault of its own). Such a limited exception will be made solely on a case-by-case basis.

---

[14] In this context, an extension petition refers to a petition filed by the same petitioner to extend H-1B status without a material change in the terms of employment.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 10

USCIS requests the documentation described above to increase H-1B program compliance and curtail violations. As always, USCIS maintains the authority to do pre- or post-adjudication compliance review site visits for either initial or extension petitions.

## C. Request for Evidence to Establish Employer-Employee Relationship

USCIS may issue a Request For Evidence (RFE) when USCIS believes that the petitioner has failed to establish eligibility for the benefit sought, including in cases where the petitioner has failed to establish that a valid employer-employee relationship exists and will continue to exist throughout the duration of the beneficiary's employment term with the employer. Such RFEs, however, must specifically state what is at issue (e.g. the petitioner has failed to establish through evidence that a valid employer-employee relationship exists) and be *tailored* to request specific illustrative types of evidence from the petitioner that goes directly to what USCIS deems as deficient. Officers should first carefully review all the evidence provided with the H-1B petition to determine which required elements have not been sufficiently established by the petitioner. The RFE should neither mandate that a specific type of evidence be provided, unless provided for by regulations (e.g. an itinerary of service dates and locations), nor should it request information that has already been provided in the petition. Officers should state what element the petitioner has failed to establish and provide examples of documentation that could be provided to establish H-1B eligibility.

## D. Compliance with 8 C.F.R. 214.2(h)(2)(i)(B)

Not only must a petitioner establish that a valid employer-employee relationship exists and will continue to exist throughout the validity period of the H-1B petition, the petitioner must continue to comply with 8 C.F.R. 214.2(h)(2)(i)(B) when a beneficiary is to be placed at more than one work location to perform services. To satisfy the requirements of 8 C.F.R. 214.2(h)(2)(i)(B), the petitioner must submit a complete itinerary of services or engagements that specifies the dates of each service or engagement, the names and addresses of the actual employers, and the names and addresses of the establishment, venues, or locations where the services will be performed for the period of time requested. Compliance with 8 C.F.R. 214.2(h)(2)(i)(B) assists USCIS in determining that the petitioner has concrete plans in place for a particular beneficiary, that the beneficiary is performing duties in a specialty occupation, and that the beneficiary is not being "benched" without pay between assignments.

## IV. Use

This memorandum is intended solely for the training and guidance of USCIS personnel in performing their duties relative to the adjudication of applications. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
    Including Third-Party Site Placements

Page 11

at law or by any individual or other party in removal proceedings, in litigation with the United
States, or in any other form or manner.

**V. Contact**

Any questions regarding the memorandum should be directed through appropriate supervisory
channels to the Business Employment Services Team in the Service Center Operations
Directorate.

AFM UPDATES

Accordingly, the *AFM* is revised as follows:

1. Section (g)(15) of Chapter 31.3 of the *Officer's Field Manual* is added to read as
follows:

## 31.3  H-1B Classification and Documentary Requirements

***

(g) Adjudicative Issues

(15) Evidence of Employer-Employee Relationship

USCIS must look at a number of factors to determine whether a valid employer-
employee relationship exists. Engaging a person to work in the United States is more
than merely paying the wage or placing that person on the payroll. In considering
whether or not there is a valid "employer-employee relationship" for purposes of H-1B
petition adjudication, USCIS must determine if the employer has a sufficient level of
control over the employee. The petitioner must be able to establish that it has the **right
to control**[1] over when, where, and how the beneficiary performs the job and USCIS will
consider the following to make such a determination (with no one factor being decisive):

   (1) Does the petitioner supervise the beneficiary and is such supervision off-site or
   on-site?
   (2) If the supervision is off-site, how does the petitioner maintain such supervision,
   *i.e.* weekly calls, reporting back to main office routinely, or site visits by the
   petitioner?
   (3) Does the petitioner have the right to control the work of the beneficiary on a day-
   to-day basis if such control is required?

---

[1] The *right* to control the beneficiary is different from *actual* control. An employer may have the right to control the
beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary.
The employer-employee relationship hinges on the *right* to control the beneficiary.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 12

(4) Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
(5) Does the petitioner hire, pay, and have the ability to fire the beneficiary?
(6) Does the petitioner evaluate the work-product of the beneficiary, i.e. progress/performance reviews?
(7) Does the petitioner claim the beneficiary for tax purposes?
(8) Does the petitioner provide the beneficiary any type of employee benefits?
(9) Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?
(10) Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?
(11) Does the petitioner have the ability to control the manner and means in which the work product of the beneficiary is accomplished?

The common law is flexible about how these factors are to be weighed. The petitioner will have met the relationship test, if, in the totality of the circumstances, a petitioner is able to present evidence to establish its right to control the beneficiary's employment. In assessing the requisite degree of control, the officer should be mindful of the nature of the petitioner's business and the type of work of the beneficiary. The petitioner must also be able to establish that the right to control the beneficiary's work will continue to exist throughout the duration of the beneficiary's employment term with the petitioner.

**Valid employer-employee relationship would exist in the following scenarios:**[2]

**Traditional Employment**

The beneficiary works at an office location owned/leased by the petitioner, the beneficiary reports directly to the petitioner on a daily basis, the petitioner sets the work schedule of the beneficiary, the beneficiary uses the petitioner's tools/instrumentalities to perform the duties of employment, and the petitioner directly reviews the work-product of the beneficiary. The petitioner claims the beneficiary for tax purposes and provides medical benefits to the beneficiary.
**[Exercise of Actual Control Scenario]**

**Temporary/Occasional Off-Site Employment**

The petitioner is an accounting firm with numerous clients. The beneficiary is an accountant. The beneficiary is required to travel to different client sites for auditing purposes. In performing such audits, the beneficiary must use established firm practices. If the beneficiary travels to an off-site location outside the geographic

---

[2] These scenarios are meant to be illustrative examples and are not exhaustive. Officers may see a variety of situations and factors when reviewing an H-1B petition.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 13

location of the employer to perform an audit, the petitioner provides food and lodging costs to the beneficiary. The beneficiary reports to a centralized office when not performing audits for clients and has an assigned office space. The beneficiary is paid by the petitioner and receives employee benefits from the petitioner.
**[Right to Control Scenario]**

### Long-Term/Permanent Off-Site Employment

The petitioner is an architectural firm and the beneficiary is an architect. The petitioner has a contract with a client to build a structure in a location out of state from the petitioner's main offices. The petitioner will place its architects and other staff at the off-site location while the project is being completed. The contract between the petitioner and client states that the petitioner will manage its employees at the off-site location. The petitioner provides the instruments and tools used to complete the project, the beneficiary reports directly to the petitioner for assignments, and progress reviews of the beneficiary are completed by the petitioner. The underlying contract states that the petitioner has the right to ultimate control of the beneficiary's work.
**[Right to Control Specified and Actual Control is Exercised]**

### Long Term Placement at a Third-Party Work Site

The petitioner is a computer software development company which has contracted with another, unrelated company to develop an in-house computer program to track its merchandise, using the petitioner's proprietary software and expertise. In order to complete this project, petitioner has contracted to place software engineers at the client's main warehouse where they will develop a computer system for the client using the petitioner's software designs. The beneficiary is a software engineer who has been offered employment to fulfill the needs of the contract in place between the petitioner and the client. The beneficiary performs his duties at the client company's facility. While the beneficiary is at the client company's facility, the beneficiary reports weekly to a manager who is employed by the petitioner. The beneficiary is paid by the petitioner and receives employee benefits from the petitioner.
**[Right to Control Specified and Actual Control is Exercised]**

### <u>The following scenarios would not present a valid employer-employee relationship:[3]</u>

### Self-Employed Beneficiaries

---

[3] These scenarios are meant to be illustrative examples and are not exhaustive. Officers may see a variety of situations and factors when reviewing an H-1B petition.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 14

The petitioner is a fashion merchandising company that is owned by the beneficiary.
The beneficiary is a fashion analyst. The beneficiary is the sole operator, manager,
and employee of the petitioning company. The beneficiary cannot be fired by the
petitioning company. There is no outside entity which can exercise control over the
beneficiary.[4] The petitioner has not provided evidence that that the corporation, and
not the beneficiary herself, will be controlling her work.[5]
**[No Separation between Individual and Employing Entity; No Independent
Control Exercised and No Right to Control Exists]**

### Independent Contractors

The beneficiary is a sales representative. The petitioner is a company that designs
and manufactures skis. The beneficiary sells these skis for the petitioner and works
on commission. The beneficiary also sells skis for other companies that design and
manufacture skis that are independent of the petitioner. The petitioner does not
claim the beneficiary as an employee for tax purposes. The petitioner does not
control when, where, or how the beneficiary sells its or any other manufacturer's
products. The petitioner does not set the work schedule of the beneficiary and does
not conduct performance reviews of the beneficiary.
**[Petitioner Has No Right to Control; No Exercise of Control]**

### Third-Party Placement/ "Job-Shop"

The petitioner is a computer consulting company. The petitioner has contracts with
numerous outside companies in which it supplies these companies with employees
to fulfill specific staffing needs. The specific positions are not outlined in the contract
between the petitioner and the third-party company but are staffed on an as-needed
basis. The beneficiary is a computer analyst. The beneficiary has been assigned to
work for the third-party company to fill a core position to maintain the third-party
company's payroll. Once placed at the client company, the beneficiary reports to a

[4] USCIS acknowledges that a sole stockholder of a corporation can be employed by that corporation as the
corporation is a separate legal entity from its owners and even its sole owner. See Matter of Aphrodite, 17 I&N Dec.
530 (BIA 1980). However, an H-1B beneficiary/employee who owns a majority of the sponsoring entity and who
reports to no one but him or herself may not be able to establish that a valid employment relationship exists in that
the beneficiary, who is also the petitioner, cannot establish the requisite "control". See generally Administrator,
Wage and Hour Division v. Avenue Dental Care, 6-LCA-29 (ALJ June 28, 2007) at 20-21.
[5] The Administrative Appeals Office (AAO) of USCIS has issued an unpublished decision on the issue of whether a
beneficiary may be "employed" by the petitioner even though she is the sole owner and operator of the enterprise.
The unpublished decisions of the AAO correctly determined that corporations are separate and distinct from their
stockholders and that a corporation may petition for, and hire, their principal stockholders as H-1B temporary
employees. However, the unpublished AAO decision did not address how, or whether, petitioners must establish
that such beneficiaries are bona fide "employees" of "United States employers" having an "employer-employee
relationship." The AAO decision did not reach this pivotal analysis and thus, while it is correct that a petitioner may
employ and seek H-1B classification for a beneficiary who happens to have a significant ownership interest in a
petitioner, this does not automatically mean that the beneficiary is a bona fide employee.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 15

manager who works for the third-party company. The beneficiary does not report to the petitioner for work assignments, and all work assignments are determined by the third-party company. The petitioner does not control how the beneficiary will complete daily tasks, and no propriety information of the petitioner is used by the beneficiary to complete any work assignments. The beneficiary's end-product, the payroll, is not in any way related to the petitioner's line of business, which is computer consulting. The beneficiary's progress reviews are completed by the client company, not the petitioner.
**[Petitioner Has No Right to Control; No Exercise of Control]**

## The following is an example of a regulatory exception where the petitioner is not the employer:

### Agents as Petitioners[6]

The petitioner is a reputable modeling agency that books models for various modeling jobs at different venues to include fashion houses and photo shoots. The beneficiary is a distinguished runway model. The petitioner and beneficiary have a contract between one another that includes such terms as to how the agency will advise, counsel, and promote the model for fashion runway shows. The contract between the petitioner and beneficiary states that the petitioner will receive a percentage of the beneficiary's fees when the beneficiary is booked for a runway show. When the beneficiary is booked for a runway show, the beneficiary can negotiate pay with the fashion house. The fashion house (actual employer) controls when, where, and how the model will perform her duties while engaged in the runway shows for the fashion house.
**[Agent Has No Right to Control; Fashion House Has and Exercises Right to Control]**

## B. Documentation to Establish the Employer-Employee Relationship

Before approving H-1B nonimmigrant visa petitions, "the director shall consider all the evidence submitted and such other evidence as he or she may independently require to assist his or her adjudication."[7] In addition to all other regulatory requirements, including that the petitioner provide an LCA specific to each location where the beneficiary will be working, the petitioner must establish the employer-employee relationship described above. Such evidence should provide sufficient detail that the

---

[6] Under 8 C.F.R. 214.2(h)(2)(i)(F), it is also possible for an "agent" who may not be the actual employer of the H-1B temporary employee to file a petition on behalf of the actual employer and the beneficiary. The beneficiary must be one **who is traditionally self-employed or who uses agents to arrange short-term employment on their behalf with numerous employers**. However, as discussed below, the fact that a petition is filed by an agent does not change the requirement that the end-employer have a valid employer-employee relationship with the beneficiary.
[7] 8 C.F.R. 214.2(h)(9)(i)

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 16

employer and beneficiary are engaged in a valid employer-employee relationship. If it is determined that the employer will not have the right to control the employee in the manner described below, the petition may be denied for failure of the employer to satisfy the requirements of being a United States employer under 8 C.F.R. 214.2(h)(4)(ii).

### 1. Initial Petition

The petitioner must clearly show that an employer-employee relationship will exist between the petitioner and beneficiary, and establish that the employer has the right to control the beneficiary's work, including the ability to hire, fire and supervise the beneficiary. The petitioner must also be responsible for the overall direction of the beneficiary's work.[8] Lastly, the petitioner should be able to establish that the above elements will continue to exist throughout the duration of the requested H-1B validity period. The petitioner can demonstrate an employer-employee relationship by providing a combination of the following or similar types of evidence:

- A complete itinerary of services or engagements that specifies the dates of each service or engagement, the names and addresses of the actual employers, and the names and addresses of the establishment, venues, or locations where the services will be performed for the period of time requested;
- Copy of signed Employment Agreement between the petitioner and beneficiary detailing the terms and conditions of employment;
- Copy of an employment offer letter that clearly describes the nature of the employer-employee relationship and the services to be performed by the beneficiary;
- Copy of relevant portions of valid contracts between the petitioner and a client (in which the petitioner has entered into a business agreement for which the petitioner's employees will be utilized) that establishes that while the petitioner's employees are placed at the third-party worksite, the petitioner will continue to have the right to control its employees;
- Copies of signed contractual agreements, statements of work, work orders, service agreements, and letters between the petitioner and the authorized officials of the ultimate end-client companies where the work will actually be performed by the beneficiary, which provide information such as a detailed description of the duties the beneficiary will perform, the qualifications that are required to perform the job duties, salary or wages paid, hours worked, benefits, a brief description of who will supervise the beneficiary and their duties, and any other related evidence;
- Copy of position description or any other documentation that describes the skills required to perform the job offered, the source of the instrumentalities and tools

---

[8] See 8 C.F.R. 214.2(h)(4)(ii).

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 17

> needed to perform the job, the product to be developed or the service to be provided, the location where the beneficiary will perform the duties, the duration of the relationship between the petitioner and beneficiary, whether the petitioner has the right to assign additional duties, the extent of petitioner's discretion over when and how long the beneficiary will work, the method of payment, the petitioner's role in paying and hiring assistants to be utilized by the beneficiary, whether the work to be performed is part of the regular business of the petitioner, the provision of employee benefits, and the tax treatment of the beneficiary in relation to the petitioner;
> - A description of the performance review process; and/or
> - Copy of petitioner's organizational chart, demonstrating beneficiary's supervisory chain.

### 2. Extension Petitions[9]

An H-1B petitioner seeking to extend H-1B employment for a beneficiary must continue to establish that a valid employer-employee relationship exists. The petitioner can do so by providing evidence that the petitioner continues to have the right to control the work of the beneficiary, as described above.

The petitioner may also include a combination of the following or similar evidence to document that it maintained a valid employer-employee relationship with the beneficiary throughout the initial H-1B status approval period:

- Copies of the beneficiary's pay records (leave and earnings statements, and pay stubs, etc.) for the period of the previously approved H-1B status;
- Copies of the beneficiary's payroll summaries and/or Form W-2s, evidencing wages paid to the beneficiary during the period of previously approved H-1B status;
- Copy of Time Sheets during the period of previously approved H-1B status;
- Copy of prior years' work schedules;
- Documentary examples of work product created or produced by the beneficiary for the past H-1B validity period, (i.e., copies of: business plans, reports, presentations, evaluations, recommendations, critical reviews, promotional materials, designs, blueprints, newspaper articles, web-site text, news copy, photographs of prototypes, etc.). Note: The materials must clearly substantiate the author and date created;
- Copy of dated performance review(s); and/or

---

[9] In this context, an extension petition refers to a petition filed by the same petitioner to extend H-1B status without a material change in the terms of employment.

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 18

- Copy of any employment history records, including but not limited to, documentation showing date of hire, dates of job changes, i.e. promotions, demotions, transfers, layoffs, and pay changes with effective dates.

If USCIS determines, while adjudicating the extension petition, that the petitioner failed to maintain a valid employer-employee relationship with the beneficiary throughout the initial approval period, or violated any other terms of its prior H-1B petition, the extension petition may be denied unless there is a compelling reason to approve the new petition (e.g., the petitioner is able to demonstrate that it did not meet all the terms and conditions through no fault of its own). Such a limited exception will be made solely on a case-by-case basis.

USCIS requests the documentation described above to increase H-1B program compliance and curtail violations. As always, USCIS maintains the authority to do pre- or post-adjudication compliance review site visits for either initial or extension petitions.

## C. Request for Evidence to Establish Employer-Employee Relationship

USCIS may issue a Request For Evidence (RFE) when USCIS believes that the petitioner has failed to establish eligibility for the benefit sought, including in cases where the petitioner has failed to establish that a valid employer-employee relationship exists and will continue to exist throughout the duration of the beneficiary's employment term with the employer. Such RFEs, however, must specifically state what is at issue (e.g. the petitioner has failed to establish through evidence that a valid employer-employee relationship exists) and be *tailored* to request specific illustrative types of evidence from the petitioner that goes directly to what USCIS deems as deficient. Officers should first carefully review all the evidence provided with the H-1B petition to determine which required elements have not been sufficiently established by the petitioner. The RFE should neither mandate that a specific type of evidence be provided, unless provided for by regulations (e.g. an itinerary of service dates and locations), nor should it request information that has already been provided in the petition. Officers should state what element the petitioner has failed to establish and provide examples of documentation that could be provided to establish H-1B eligibility.

## D. Compliance with 8 C.F.R. 214.2(h)(2)(i)(B)

Not only must a petitioner establish that a valid employer-employee relationship exists and will continue to exist throughout the validity period of the H-1B petition, the petitioner must continue to comply with 8 C.F.R. 214.2(h)(2)(i)(B) when a beneficiary is to be placed at more than one work location to perform services. To satisfy the requirements of 8 C.F.R. 214.2(h)(2)(i)(B), the petitioner must submit a complete

Memorandum for Service Center Directors
Subject: Determining Employer-Employee Relationship for Adjudication of H-1B Petitions,
Including Third-Party Site Placements

Page 19

itinerary of services or engagements that specifies the dates of each service or
engagement, the names and addresses of the actual employers, and the names and
addresses of the establishment, venues, or locations where the services will be
performed for the period of time requested. Compliance with 8 C.F.R. 214.2(h)(2)(i)(B)
assists USCIS in determining that the petitioner has concrete plans in place for a
particular beneficiary, that the beneficiary is performing duties in a specialty occupation,
and that the beneficiary is not being "benched" without pay between assignments.

# Exhibit 2

From: Patterson, William B.
Sent: Tuesday, February 12, 2019 4:25 AM
To: Biviji, Mustafa T. <mustafa.t.biviji@accenture.com>
Cc: Ding, Peggy C. <peggy.c.ding@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; VanOverbeke, Amanda M.
<amanda.m.vanoverbeke@accenture.com>; Cirillo, Scott J. <scott.j.cirillo@accenture.com>; Schafbuch, Laura <laura.schafbuch@accenture.com>
Subject: Subject: Adjustments to GCP Demand Approval and Availability Distribution

Hi Mustafa,

Laura expects to have the 'Supply Led' report with upcoming available visa enabled people ready by the end of this week. In addition, Scott is also communicating changes within the Talent Supply Chain team to streamline GCP staffing in certain locations for certain skills – both of these things aimed at improving GCP uptake into value-adding roles to help reverse our GCP decline.

We would like to send an email out to Technology Leaders, specifically all AS Delivery Leads and others you recommend to highlight the adjustment to our processes, and expedite the change.

Annette has expressed her concern about communicating any sort of change, and so this is written to be intentionally reserved. I would like your thoughts on sending anything at all, and on the text below.

Please let me know your thoughts on this. Maybe we can touch on it when we discuss the Green Card deck later today. Pat.
---
Subject: Adjustments to GCP Demand Approval and Availability Distribution

In April 2017, our NA Technology Leadership embraced a new Technology Talent Strategy which recognized the importance to rotate to the New, and strengthened our local foundation of talent for sustainable growth.
Operational adjustments were made to support the strategy including changes aimed at driving local headcount growth at junior levels.
We have been successful in driving local talent growth, and given the current position and trends in our local and GCP headcount mix we are making two adjustments in our Talent Supply Chain operations:

1) Simplified demand approval and staffing of GCP talent where skills and locations allow
2) A return to broader distribution of GCP upcoming availability including the availability of offshore visa-enabled talent.

More details regarding demand approval will be shared as teams engage the TSC team with new demand. The expanded distribution of the availability report will begin Monday, 2/18 to [audience]. Changes to the distribution list for the report will be managed by Kaman Hwang, on our NA GCP Talent Supply Chain Team.
Any questions regarding these adjustments can be directed to Laura Schafbuch, our NA GCP TSC Lead or William (Pat) Patterson, our NA Technology Immigration Talent Lead.

William (Pat) Patterson
NA Technology Immigration Talent Lead
Cell 302-593-0213
NA Technology Immigration Talent Field HR Team Support: Erin Evans – H&PS; Bhavna Balakrishna – FS; Andrea Stapp Holland – CMT: Shruti B. Bansal – Canada, RES, Special Groups; Bea LanderRisso - PRD



Exhibit 3

| Employee ID | Name | Career Level | Primary Skill | Visa Type | Visa Status | Exp. Date |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| a.o.srivastava | Abhishek | 8 - Consultant | Communication Order Management Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| abhilash.kusampudi | Abhilash Kusampudi | 9 - Consultant | Apache Spark | H-1B Visa | Petition Approved Visa Not Stamped | 3/31/2020 |
| abhishek.bose | Awanish Kumar | 7 - Manager | Netapp NAS Administration | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2020 |
| acharya.thiyagarajan | Acharya | 8 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| adarsh.rajeev | Adarsh | 8 - Consultant | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| adarsh.shankarappa | Adarsh Medihally Shankarappa | 8 - Consultant | Python Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 12/12/2020 |
| aditya.salgotra | Aditya | 7 - Manager | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| alok.k.kumar.singh | Alok | 8 - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| ambrish.kumar.mishr | Vasudha Ravilla | 8 - Consultant | Microsoft FEO Angular | H-1B Visa | Petition Approved Visa Not Stamped | 3/19/2020 |
| amit.a.pinohit | Amit | 7 - Manager | Agile Methods (ADM for Distributed Agile Develo | H-1B Visa | Petition Approved Visa Not Stamped | 3/31/2021 |
| amit.p.prakash | Amit | 10 - Analyst | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| amrita.nidhi | Amrita | 8 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| anand.sathilyamurchy | Praveen Reddy Naramreddy | 9 - Consultant | IBM Operational Decision Manager | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| ananda.ramachandra | Ananda | 8 - Consultant | Siemens Teamcenter PLM | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2020 |
| anik.gupta | Anik | 9 - Consultant | Software Quality Assurance | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| anika.shirolkar | Anika Shirolkar | 10 - Analyst | Vlocity Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| animesh.rastogi | Animesh Rastogi | 8 - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| anish.x.patel | Anish | 8 - Consultant | SAP Success Factors Employee Central | H-1B Visa | Petition Approved Visa Not Stamped | 9/13/2020 |
| anjaney.kumar | Anjaney Kumar | 9 - Consultant | SAP Manufacturing Integration & Intelligence | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| anupriya.shrivastava | Anupriya | 9 - Consultant | Microsoft Windows Communication Foundation | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| aparna.rawal | Aparna | 9 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| aparna.sm | Aparna S M | 9 - Consultant | Oracle NetSuite ERP Financial Management | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| appaji.v.katti | Appaji Katti | 7 - Manager | SAP ABAP | H-1B Visa | Petition Approved Visa Not Stamped | 5/31/2021 |
| aravind.shegunasi | Shegunasi Aravind | 8 - Consultant | SAP for Oil & Gas Downstream | H-1B Visa | Petition Approved Visa Not Stamped | 8/17/2020 |
| aritra.dev | Aritra | 8 - Consultant | IBM DB2 | H-1B Visa | Petition Approved Visa Not Stamped | 9/15/2020 |
| ashwini.bhojaraj | Ashwini | 9 - Consultant | Infrastructure Security Vulnerability Management | H-1B Visa | Petition Approved Visa Not Stamped | 3/18/2021 |
| astha.x.misra | Astha | 9 - Consultant | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2020 |
| atul.kanekar | Atul | 7 - Manager | SAP SD Sales Order Management | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| atul.s.singh | Atul Kumar Singh | 8 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 5/8/2020 |
| audrinch.yadav | Sanjiv Kumar | 8 - Consultant | Selenium | H-1B Visa | Petition Approved Visa Not Stamped | 9/14/2020 |
| avinash.x.singh | Avnish | 8 - Consultant | CyberArk Privileged Identity Access Management | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| b.balavand.deshmukh | Bhagyashree | 9 - Consultant | Core Banking | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| b.v.rgapoan | Yegappan Balasubramanian | 6 - Senior Manager | Advance Front End Development ReactJS | H-1B Visa | Petition Approved Visa Not Stamped | 6/21/2020 |
| balbir.kumar | Balbir | 8 - Consultant | Pegasystems Platform | H-1B Visa | Petition Approved Visa Not Stamped | 8/26/2020 |
| brindha.srthanari | Brindha | 8 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| c.rajaram | Umesh Heemath Appalah | 8 - Consultant | Data Architecture Principles | H-1B Visa | Petition Approved Visa Not Stamped | 7/18/2020 |
| c.sekhar.annabathina | Chandra | 9 - Consultant | Oracle Database Cloud Services | H-1B Visa | Petition Approved Visa Not Stamped | 3/13/2022 |
| c.sruvanthi.kurapati | Chaitanya | 7 - Manager | Microsoft Dynamics CRM Technical | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| chandan.tripathy | Chandan Tripathy | 7 - Manager | Manufacturing Execution Systems (MES) | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| chandravathi.kondur | Chandravathi Konduru | 8 - Consultant | Microsoft FEO Angular | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| chandru.annamalal | Chandru | 8 - Consultant | Life Sciences R&D | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2020 |
| charan.kalwani | Charan Kalwani | 8 - Consultant | PeopleSoft Administration | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| chetan.krishnamurthy | Chetan Krishnamurthy | 7 - Manager | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 3/31/2020 |
| deepa.tilvakar.shetty | Sujeeth Kumar Manchagalah | 8 - Consultant | TOSCA Testsuite | H-1B Visa | Petition Approved Visa Not Stamped | 3/8/2021 |
| deepak.goyal | Deepak | 8 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| deepak.setia | Deepak Setia | 9 - Consultant | Java Standard Edition | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| deepak.suresh.kini | Shashi Ranjan Kumar | 7 - Manager | CAS FS Technical | H-1B Visa | Petition Approved Visa Not Stamped | 3/30/2020 |
| dhiraj.a.kumar | Chitrekala Ramamijam | 7 - Manager | SAP BASIS Administration | H-1B Visa | Petition Approved Visa Not Stamped | 8/28/2020 |
| dhiraj.panjwani | Dhiraj | 8 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 2/12/2020 |
| dnyaneshwar.dhumal | Dnyaneshwar | 7 - Manager | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 7/23/2020 |
| er.abdullah.plumber | Ebrahim Abdullah Plumber | 8 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 2/12/2020 |
| eswara.rao.vamala | Manu Shah | 8 - Consultant | SAP HANA Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2020 |
| g.a.dutta | Goutami | 8 - Consultant | Informatica Product 360 (PIM) | H-1B Visa | Petition Approved Visa Not Stamped | 2/2/2021 |
| g.arasan.muthusamy | Gnana Arasan Muthusamy | 8 - Consultant | Pegasystems Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 12/26/2020 |
| g.krishan.jaiswal | Gopal Krishan Jaiswal | 8 - Consultant | Agile Process Coaching | H-1B Visa | Petition Approved Visa Not Stamped | 8/2/2021 |
| ganeswar.das | Das Ganeswar | 9 - Consultant | SAP BW on HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2022 |
| gaurav.f.srivastava | Gaurav | 8 - Consultant | Oracle Cloud Order Management | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| gaurav.vichare | Gaurav Kamlakant Vichare | 6 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| gireesh.kumar | Gireesh | 10 - Analyst | ASP.NET MVC | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| githika.n.pur | Abhishek Ahuja | 9 - Consultant | PeopleSoft PeopleTools | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| godwin.pushparaj | Godwin | 8 - Consultant | Oracle FMW Admin | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| gopi.krishna.mekala | Gopi Krishna Meka | 9 - Consultant | GuideWire PolicyCenter | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| gowthami.vm | Venkataswamy Marijula Gowthami | 9 - Consultant | Oracle HCM Cloud Core HR | H-1B Visa | Petition Approved Visa Not Stamped | 7/24/2021 |
| h.b.gopalakrishnan | Hariprasad | 9 - Consultant | Splunk Security Information and Event Management | H-1B Visa | Petition Approved Visa Not Stamped | 8/29/2020 |
| harish.ma | Suganiya Subramanian | 8 - Consultant | Microsoft Windows Forms | H-1B Visa | Petition Approved Visa Not Stamped | 2/29/2020 |
| harish.muniyappa | Harish Byrapura | 8 - Consultant | Cloud Design and Build | H-1B Visa | Petition Approved Visa Not Stamped | 9/25/2020 |
| himanshu.b.pandey | Himanshu | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| j.michwal.stanlin | Joseph Michwal Stanlin | 9 - Consultant | Oracle ATG Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 8/3/2021 |
| jagadish.ng | Jagadish Gangadhar nagathihalli | 9 - Consultant | Workday Core HCM | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| jagannathan.anbu | Jagannathan Anbu | 10 - Analyst | Functional Test Planning | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| jagdish.prasad | Jagdish | 9 - Consultant | Apache Spark | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| jayalekshmi.santhosh | Jayalekshmi Santhosh | 7 - Manager | Oracle Siebel Enterprise Application Integration | H-1B Visa | Petition Approved Visa Not Stamped | 7/11/2020 |
| jignesh.v.patel | Jignesh Vallabhbhai Patel | 9 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 1/30/2020 |
| jitendra.kumar.sahu | Jitendra | 9 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| john.p.amanna | John Prabhakara Amanna | 7 - Manager | SAP Data Services Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| jwala.kumar | Mahesh Ramchandra Shinde | 8 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| jyoti.prakash.nandi | Jyoti Prakash | 8 - Consultant | Pivotal Cloud Foundry | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| k.c.balasubramani | Karthikeyan Balasubramani | 9 - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| kallol.nath | Kallol Nath | 8 - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 9/19/2021 |
| kalpana.thunga | Kalpana | 8 - Consultant | Microsoft Modern Data Platform | H-1B Visa | Petition Approved Visa Not Stamped | 8/26/2020 |
| kapil.chhabra | Kapil Chhabra | 8 - Consultant | IBM Integration Bus | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2020 |
| karthik.a.b | Karthik Alampoondi Balasubramanian | 9 - Consultant | Pegasystems Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/24/2020 |
| kasetty.koushik | Kasetty | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 2/28/2021 |
| kirubakaran.g.ana | kirubakaran | 9 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| kishor.kathar | Robin Khanna | 9 - Consultant | Apple iOS Application Development | H-1B Visa | Petition Approved Visa Not Stamped | 5/15/2021 |
| kishore.akella | Karthek Kumar Reddy Pedaballi | 8 - Consultant | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| kishore.h.kumar | Kishore Kumar | 9 - Consultant | SAP EWM Extended Warehouse Management | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| kodandapani.th | Kodandapani | 9 - Consultant | SAP Native HANA SQL Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/15/2020 |
| krishna.prasad.das | Krishna | 9 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2022 |
| krishnamadhav.majet | Majety Krishna Madhav | 9 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| kulkarni.ashish.s | ISHAMA ABDULQADAR SYED | 9 - Consultant | SAP Business Planning and Consolidation | H-1B Visa | Petition Approved Visa Not Stamped | 8/17/2021 |
| kumar.rahul | Kumar | 8 - Consultant | Agile Methods (ADM for Distributed Agile Develo | H-1B Visa | Petition Approved Visa Not Stamped | 3/31/2021 |
| kumuda.rangegowda | Kumuda Manathanahalli Rangegowda | 8 - Consultant | Microsoft Windows Communication Foundation | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |

| Name | Full Name | Role | Technology | Visa | Petition Status | Date |
|---|---|---|---|---|---|---|
| lalitkumar.mishra | Shekhar Kashyap | 8 - Consultant | C++ UNIX | H-1B Visa | Petition Approved Visa Not Stamped | 6/16/2022 |
| laltu.pati | Laltu Pati | 9 - Consultant | Microsoft Windows Azure (IaaS) | H-1B Visa | Petition Approved Visa Not Stamped | 5/31/2020 |
| lata.sachdev | Lata | 8 - Consultant | Microsoft Office365 | H-1B Visa | Petition Approved Visa Not Stamped | 8/28/2020 |
| laxmi.narain.shukla | Laxmi Narain Shukla | 7 - Manager | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 1/1/2021 |
| m.a.khan | NAGESH SHARNAPPA MULE | 9 - Consultant | PeopleSoft Administration | H-1B Visa | Petition Approved Visa Not Stamped | 1/16/2020 |
| m.c.radhakrishnan | Madhusudhanan | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| m.dilawar.handia | Mohammed Sadiq Dilawar Handia | 8 - Consultant | Google Compute Engine | H-1B Visa | Petition Approved Visa Not Stamped | 2/20/2020 |
| m.kishor.pancha | Syed Rafiulla | 9 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 2/12/2020 |
| m.krishna.dandvolu | Mohanakrishna Reddy Dandvolu | 9 - Consultant | TDSCA Testsuite | H-1B Visa | Petition Approved Visa Not Stamped | 2/7/2020 |
| m.prasannaraj | Muthukumaran Prasannaraj | 9 - Consultant | Oracle Database Cloud Services | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| m.s.singh | Manpreet | 6 - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 9/6/2020 |
| madhusmita.rath | Madhusmita | 5 - Consultant | Adobe AEM/CQ | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2022 |
| mahesh.kannegunda | Mahesh | 5 - Consultant | Salesforce Development | H-1B Visa | Petition Approved Visa Not Stamped | 10/23/2021 |
| maheshkumar.pillai | Maheshkumar | 9 - Consultant | Maximo | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2023 |
| majid.shaik.monamm | Majid | 10 - Analyst | Advance Front End Development ReactJS | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| manasi.k.ran.patil | Manasi | 7 - Manager | SAP for Utilities CRM | H-1B Visa | Petition Approved Visa Not Stamped | 4/30/2022 |
| manasvi.bhargava | Manasvi | 5 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 2/1/2021 |
| manish.gurav | Mangesh | 7 - Manager | Splunk Security Information and Event Management | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| manish.b.sharma | Lakshmijyothi Aramadaka | 7 - Manager | Test Automation Strategy | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| manish.n.kumar | Manish | 5 - Consultant | IBM WebSphere Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| manoj.thulasingam | Venus Jain | 9 - Consultant | Functional Test Planning | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| manuendra.anjan | Anjan Manuendra | 8 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| megha.sabharwal | Megha | 9 - Consultant | Microsoft Sharepoint Server | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| mithul.somasundara | Mithul | 9 - Consultant | Oracle Meter Data Management | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2023 |
| mohan.khadagade | Mohan Kumar Khadagade | 9 - Consultant | BMC Discovery ADDM | H-1B Visa | Petition Approved Visa Not Stamped | 9/20/2021 |
| moumita.adhikary | Moumita adhikary | 10 - Analyst | Selenium | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| mrinal.bhattacharjee | Mrinal | 8 - Consultant | Microsoft Advanced Analytics | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| murthy.samidhi | Shafeeque Muhammed koya | 8 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| n.a.somasundaram | Somasundaram Nehru Prakash | 9 - Consultant | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 5/20/2022 |
| n.akkireddy | Nagarjunareddy | 5 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| n.mittal | Neha | 8 - Consultant | Enterprise Application Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| n.pardurangaraokoli | Naga Venkata Pardu koli | 9 - Consultant | Contact Center Technologies Implementation | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| n.reddy.oireddy | Sukhpreet Singh | 9 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| n.sadanivam | Namaswayam Sadasivam | 9 - Consultant | Java Standard Edition | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| nagarjuna.ganiyalu | Nagarjuna | 8 - Consultant | Oracle Business Intelligence Enterprise Edition (OBIEE) | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2020 |
| nandini.rajacholan | nandini rajacholan | 10 - Analyst | TDSCA Testsuite | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| naresh.sampathilla | Bharat Mittal | 8 - Consultant | Oracle EBS Receivables | H-1B Visa | Petition Approved Visa Not Stamped | 2/18/2021 |
| navneet.b.kumar | Navneet Kumar | 10 - Analyst | ASP.NET | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| nikhil.p.bhandari | Nikhil Prakash Bhandari | 7 - Manager | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| niraj.kadlan | Niraj | 9 - Consultant | SAP Master Data Governance | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| niranjan.ey | Niranjan | 10 - Analyst | SAP HCM Time Management | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| nisheeth.mathur | Nisheeth Mathur | 6 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| nitya.chandra | Nitya Chandra | 10 - Analyst | Salesforce Development | H-1B Visa | Petition Approved Visa Not Stamped | 5/28/2022 |
| p.kumar.vailuri | Prasanna Kumar Vailuri | 5 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 3/8/2021 |
| pallavi.tushar.patil | Soumyadip Banerjee | 8 - Consultant | Accenture Life Insurance Platform (ALIP) | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| parthiban.saravanan | Parthiban | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| pavankumar.motamra | Alahwar kapoor | 8 - Consultant | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2020 |
| peeyush.a.bansal | Jyotshna Ruia | 9 - Consultant | SAP PO/PI & APIs Development | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2023 |
| piyush.rajesh | Piyush | 9 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| pradeep.kumar.alena | Pradeep Kumar Alena | 8 - Consultant | IBM WebSphere Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 8/3/2021 |
| pradeep.kumar.soni | Pradeep Kumar Soni | 8 - Consultant | Oracle Real Application Clusters (RAC) Administration | H-1B Visa | Petition Approved Visa Not Stamped | 3/30/2020 |
| pranaya.kandekar | Neeraj Lingaiah | 8 - Consultant | SAP Purchasing (MM PO) | H-1B Visa | Petition Approved Visa Not Stamped | 9/11/2022 |
| prakash.mahabalarai | Prakash | 9 - Consultant | Microsoft Business Intelligence Testing | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2020 |
| prakhar.tripathi | Prakhar Tripathi | 8 - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/4/2021 |
| pramod.karam | Gopinath Mani | 7 - Manager | Travel platform players | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| prashant.nikam | Prashant | 9 - Consultant | ASP.NET | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| pratyush.verma | Pratyush Verma | 7 - Manager | MuleSoft Anypoint Platform | H-1B Visa | Petition Approved Visa Not Stamped | 2/21/2020 |
| praveen.k.krish | Praveen Kumar | 8 - Consultant | Oracle Procurement | H-1B Visa | Petition Approved Visa Not Stamped | 1/22/2022 |
| praveen.kumar.misra | Praveen | 8 - Consultant | HPE Service Management Suite | H-1B Visa | Petition Approved Visa Not Stamped | 9/6/2020 |
| pravin.packia | Pravinselvan | 9 - Consultant | Personal Insurance | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| premkumar.ramasam | Premkumar Ramasamy | 9 - Consultant | Webservices Testing | H-1B Visa | Petition Approved Visa Not Stamped | 11/30/2020 |
| prti.ganesh.joshi | Priti | 8 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 1/1/2020 |
| priya.mahendra.jain | Priya | 8 - Consultant | ASP.NET | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2020 |
| priya.rajamanickam | Rajamanickam Priya | 10 - Analyst | Testing for Agile | H-1B Visa | Petition Approved Visa Not Stamped | 2/19/2021 |
| puneet.narang | Puheet | 9 - Consultant | Microsoft FED Angular | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| r.a.thiyagarajan | Ramkumar | 9 - Consultant | EPIC | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| r.h.kumta | Rahul | 9 - Consultant | Java Enterprise Edition | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2020 |
| r.sudarshenilyan | Loganathan Thirupathivaswan | 9 - Consultant | Java Standard Edition | H-1B Visa | Petition Approved Visa Not Stamped | 7/12/2021 |
| radhika.kishore | Radhika | 8 - Consultant | Oracle Procedural Language Extensions to SQL | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| rahul.dev.sarmah | Dev Sarmah Rahul | 8 - Consultant | SAS Base & Macros | H-1B Visa | Petition Approved Visa Not Stamped | 4/30/2020 |
| rahul.i.verma | Rahul | 9 - Consultant | Oracle Retail Merchandising System | H-1B Visa | Petition Approved Visa Not Stamped | 8/17/2020 |
| raj.kumar.soni | Raj | 7 - Manager | Microsoft Windows Desktop Management | H-1B Visa | Petition Approved Visa Not Stamped | 9/28/2020 |
| rajdeep.sharma | Raj Deep Sharma | 9 - Consultant | SAP for Utilities Billing | H-1B Visa | Petition Approved Visa Not Stamped | 3/13/2022 |
| rajesh.g.rajendran | Rajeshkumar | 9 - Consultant | Teradata BI | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| rajesh.k.perumal | Rajesh Kallyaperumal | 9 - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| rajorshi.bose | Bose Rajorshi | 9 - Consultant | Teradata BI | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| rama.krishna.kandi | Venkata Satya | 9 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 2/28/2021 |
| ramanujam.solaimala | Ramanujam | 9 - Consultant | Tandem | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| rambabu.emani | Ram Babu Emani | 9 - Consultant | Spring Boot | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| ramesh.krishnasamy | Ramesh Krishnasamy | 8 - Consultant | TrackWise Quality Management Software | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| ramesh.masanam | Ramesh Masanam | 8 - Consultant | Pegasystems Platform | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| ramesh.sivashankara | Ramesh Sivashankaran | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| ranjana.shukla | Surender Kumar | 9 - Consultant | Oracle Financials | H-1B Visa | Petition Approved Visa Not Stamped | 1/24/2021 |
| rapuru.shanmugam | Rapuru Shanmugam | 9 - Consultant | SAP BW on HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| ravi.govindan | Govindan Ravi | 8 - Consultant | WebMethods Fabric | H-1B Visa | Petition Approved Visa Not Stamped | 3/19/2022 |
| ravi.teja.gaddipati | Ravi Teja Gaddipati | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| ravi.valapadasu | Ravi Valapadasu | 8 - Consultant | SAP SD Sales Order Management | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| reddeppa.kum | Reddeppa | 8 - Consultant | SAP BW/4HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| rekha.doddi | Rekha Aavula | 8 - Consultant | User Interface Development Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 6/3/2021 |
| renuka.k.h | Renuka | 8 - Consultant | ServiceNow IT Service Management | H-1B Visa | Petition Approved Visa Not Stamped | 3/1/2021 |
| rishav.a.dutta | Rishav | 9 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 7/24/2021 |
| ritesh.p.kumar | Damodar Naidu Chintala | 8 - Consultant | SAP BusinessObjects Data Services | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| ritesh.dash | Ritesh | 8 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |

| Email/Username | Name | Role | Job Description | Visa | Petition Status | Date |
|---|---|---|---|---|---|---|
| rohit.karandikar | Rohit | 8 - Consultant | Personal Insurance | H-1B Visa | Petition Approved Visa Not Stamped | 9/11/2020 |
| rohit.singh.bisht | Rohit Singh Bisht | 8 - Consultant | SAP ECC PM Plant Maintenance | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2020 |
| rohitr.radhakrishnan | Rohit | 9 - Consultant | SalesForce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| s.s.gunasekaran | Shyam Sunder Gogi | 9 - Consultant | Functional Test Planning | H-1B Visa | Petition Approved Visa Not Stamped | 3/29/2021 |
| s.b.rajendran | Shubham Sharma | 1D - Analyst | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| s.bhargav.mahadevan | Srinivas | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| s.goud.bempelly | Srikanth | 9 - Consultant | SAP Master Data Governance | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| s.kumar.gutha | Shrayank Srivastava | 8 - Consultant | SAP BW on HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2020 |
| s.singh.vohra | Simranjeet | 8 - Consultant | Microsoft Modern Data Platform | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| s.kumar | Syed Umar Syed Nazir Bashi | 7 - Manager | SAP BW/4HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 10/4/2021 |
| sadappaan.thirumalai | Sadappaan Thirumalai | 9 - Consultant | SAP BW (Business Warehouse) | H-1B Visa | Petition Approved Visa Not Stamped | 8/30/2020 |
| sadiq.nawaz.sa | Sadiq Nawaz | 8 - Consultant | Oracle Database Administration | H-1B Visa | Petition Approved Visa Not Stamped | 6/21/2020 |
| sai.j.donnadula | Dornadula Sai Jayadeep | 1D - Analyst | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 8/2/2020 |
| sai.satish.jami | Sai | J - Manager | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 8/25/2020 |
| sailesh.kumar.singh | Sailesh | 10 - Analyst | Teradata BI | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2022 |
| saket.b.kumar | Saket Kumar | 9 - Consultant | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| salma.mohammedku | Salma FNU | 9 - Consultant | PeopleSoft PeopleTools | H-1B Visa | Petition Approved Visa Not Stamped | 5/8/2022 |
| sampath.k.qasarathi | Sampath Kumar Dawarathi | 8 - Consultant | SAP Fiori/UI5 & Responsive Design Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2020 |
| samuel.ignatius.c | Samuel | 8 - Consultant | Oracle Database Administration | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| sandeep.s.kuma | Ramesh Ranganathan | 8 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/26/2020 |
| sathis.kannan | Sathis | 8 - Consultant | User Interface Development Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| saurabh.puri | Saurabh Puri | 8 - Consultant | Pegasystems Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 2/15/2021 |
| saurabh.sardana | Saurabh | 8 - Consultant | Microsoft SQL Server Database Administration | H-1B Visa | Petition Approved Visa Not Stamped | 8/29/2020 |
| shaik.shadad | Shadadi Shaik | 10 - Analyst | Functional Test Planning | H-1B Visa | Petition Approved Visa Not Stamped | 7/26/2021 |
| shailesh.n.jadhav | Shailesh Nivruti Jadhav | 8 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 7/23/2021 |
| shashi.b.shekhar | Shashi | 8 - Consultant | Oracle Demantra | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| shashi.dhar | Shashi | 8 - Consultant | Marketo | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| shimul.bharadwaj | Shimul Bharadwaj | 8 - Consultant | SAP FI CO Finance | H-1B Visa | Petition Approved Visa Not Stamped | 1/4/2020 |
| shisnir.sr | Shishir | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| shisir.singh | Shisir | 9 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 8/28/2020 |
| shiva.s.pannala | Shiva Shankar Reddy | 8 - Consultant | EPIC | H-1B Visa | Petition Approved Visa Not Stamped | 6/1/2021 |
| shreyash.chaudhary | Shreyash Gulabrao Chaudhary | 8 - Consultant | HPE Operations Manager i | H-1B Visa | Petition Approved Visa Not Stamped | 2/28/2021 |
| shruthi.indudhar | Shruthi Indudhara Sheelvanth | 8 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 9/17/2020 |
| shubnam.a.rastogi | Shubham Rastogi | 8 - Consultant | Oracle Demantra Demand Management | H-1B Visa | Petition Approved Visa Not Stamped | 4/24/2021 |
| siddharth.r.mehta | Siddharth | 8 - Consultant | Communication Order Management Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| siddharth.tonk | Siddharth Tonk | 8 - Consultant | ServiceNow IT Service Management | H-1B Visa | Petition Approved Visa Not Stamped | 3/1/2021 |
| sireesha.machiraju | Sireesha Machiraju | 7 - Manager | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 5/16/2020 |
| siva.seknar.kandula | Siva | 8 - Consultant | SAP ABAP Development | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| snegha.mohanraj | Snegha | 8 - Consultant | Python Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| someshwar.kumasgi | Someshwar | 8 - Consultant | BMC IT Service Management (ITSM) | H-1B Visa | Petition Approved Visa Not Stamped | 7/1/2021 |
| somnath.adhikari | Somnath Adhikari | 8 - Consultant | HPE Unified Functional Testing (UFT) | H-1B Visa | Petition Approved Visa Not Stamped | 8/4/2021 |
| soumya.d.das | Soumya | 7 - Manager | Oracle BI Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/8/2020 |
| soumya.halder | Soumya Halder | 9 - Consultant | Microsoft SQL Server Integration Services | H-1B Visa | Petition Approved Visa Not Stamped | 1/1/2021 |
| sowjanya.devarakont | Sowjanya | 1D - Analyst | ServiceNow IT Service Management | H-1B Visa | Petition Approved Visa Not Stamped | 9/8/2020 |
| sreehari.vr | Sreehari | 9 - Consultant | Static Application Security Testing (SAST) | H-1B Visa | Petition Approved Visa Not Stamped | 6/6/2020 |
| sreevianth.vasireddy | Yuga Vilap Pokale | 9 - Consultant | JavaScript | H-1B Visa | Petition Approved Visa Not Stamped | 2/14/2021 |
| sreenivasulu.mo.opun | Sreenivasulu | 9 - Consultant | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| srikanth.rangaswamy | Srikanth | 8 - Consultant | Functional Test Planning | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| srinivasa.chudur | Srinivasachakravar Chukdur | 1D - Analyst | ASP.NET MVC | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2020 |
| steffy.mary.mathews | Steffy Mary Mathews | 1D - Analyst | ServiceNow IT Service Management | H-1B Visa | Petition Approved Visa Not Stamped | 8/26/2022 |
| syddhasil.sarkar | Syddhasil Sarkar | 8 - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 9/20/2021 |
| sudhakar.eluru | Pradnya Deshmukh | 8 - Consultant | SAP Fi S/4 HANA Accounting | H-1B Visa | Petition Approved Visa Not Stamped | 5/14/2020 |
| sudhanshu.kumar.gu | Sudhanshu Kumar Guru | 8 - Consultant | Microsoft SQL Server Analysis Services | H-1B Visa | Petition Approved Visa Not Stamped | 1/24/2020 |
| sudip.barua | Sudip | 8 - Consultant | Cloud Design and Build | H-1B Visa | Petition Approved Visa Not Stamped | 2/28/2021 |
| sudip.manrar | Sudip | 8 - Consultant | Oracle Database Administration | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| sumita.sahu | Sumita | 9 - Consultant | SAP EHS Regulatory Compliance | H-1B Visa | Petition Approved Visa Not Stamped | 8/3/2021 |
| suneel.sv | Svsuneel | 9 - Consultant | Microsoft BizTalk Server | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| sunil.anil.pawar | Pawar Sunil Anil | 8 - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2021 |
| suraj.a.ramachandran | Suraj Ramachandran | 8 - Consultant | Oracle ATG Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| sureshbabu.payyavul | Mahesh Kumar Chinnamsetty | 9 - Consultant | Oracle IaaS Administration | H-1B Visa | Petition Approved Visa Not Stamped | 7/12/2020 |
| sweta.a.goel | Goel,Sweta | 9 - Consultant | Python Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| switi.m.shah | Switi | 9 - Consultant | Uniface | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| tarika.manchanda | Tarika Manchanda | 9 - Consultant | SAP HANA Cloud Integration | H-1B Visa | Petition Approved Visa Not Stamped | 8/24/2021 |
| tarun.n.shetty | Tarun | 9 - Consultant | Apache Spark | H-1B Visa | Petition Approved Visa Not Stamped | 2/28/2021 |
| tejas.mukund.ambek | Tejas Mukund Ambekar | 9 - Consultant | Accenture Life Insurance Platform (ALIP) | H-1B Visa | Petition Approved Visa Not Stamped | 10/16/2020 |
| uma.a.singh | Uma | 9 - Consultant | Wealth Management Advisory Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| v.d.reddy | Palugulla venkata Sashidhar Reddy | 8 - Consultant | Oracle Identity Manager | H-1B Visa | Petition Approved Visa Not Stamped | 11/30/2020 |
| v.ekambaraam | Vigneshwaran Ekambaram | 1D - Analyst | Teradata BI | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| v.sunder.shetty | Vilky | 8 - Consultant | Accenture Life Insurance Platform (ALIP) | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| vadiraj.pandihal | Vadiraj | 9 - Consultant | TIBCO BusinessWorks | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| vamsi.charan.sure | Vamsi Choran Sure | 9 - Consultant | Microsoft Sharepoint Server | H-1B Visa | Petition Approved Visa Not Stamped | 3/31/2021 |
| veeta.los | Veeta | 8 - Consultant | Microsoft Sharepoint Server | H-1B Visa | Petition Approved Visa Not Stamped | 6/6/2020 |
| venkata.r.lebaka | Venkata | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| venkata.rao.balla | Abhishee Baliyan | 9 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| venkatesh.paidakula | Venkatesh | 9 - Consultant | Oracle Database Administration | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| venkateswarlu.swarn | Venkateswarlu | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| vidhya.vasu | Vidhya | 8 - Consultant | Python Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| vijay.kumar.puttaiah | Vijay Kumar | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 11/30/2021 |
| vijayashree.gv | Vijayashree | 9 - Consultant | ASP.NET MVC | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| vikas.t.kumar | Shreeja Kurup | 9 - Consultant | TOSCA Testsuite | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| vimal.singh | Vimal Singh | 7 - Manager | SAP Utilities Customer Financial Management (FI) | H-1B Visa | Petition Approved Visa Not Stamped | 8/28/2020 |
| viplav.modi | Viplav Modi | 9 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| vishal.kamal | Vishal | 8 - Consultant | SAP EWM Extended Warehouse Management | H-1B Visa | Petition Approved Visa Not Stamped | 9/6/2020 |
| yashodhan.bapat | Yashodhan Harshwardhan Bapat | 8 - Consultant | Workday Financial Accounting Core | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| yat.sh.a.kumar | Samudranil Chatterjee | 8 - Consultant | SAP ECC PM Plant Maintenance | H-1B Visa | Petition Approved Visa Not Stamped | 9/6/2020 |
| a.h.bhattacharya | Arkaprava Bhattacharya | 8N/A | Oracle BI Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 1/8/2020 |
| a.g.prakash | Anand Prakash | 8N/A | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 4/16/2020 |
| vivek.chauhan | Vivek Chauhan | 9 - Consultant | SAP Fi S/4 HANA Accounting | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| nilesh.b.lamjane | Nilesh Basvant Lamjane | 9 - Consultant | IBM Cloud (Bluemix) | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| m.a.muthuraman | Manikandan Muthuraman | 8N/A | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 8/16/2020 |
| varun.prajapati | Varun Prajapati | 8 - Consultant | SAP TM Transportation Managements | H-1B Visa | Petition Approved Visa Not Stamped | 6/25/2020 |
| rohit.h.ranjan | Rohit Ranjan | R - Consultant | CSV (Computer System Validations) | H-1B Visa | Petition Approved Visa Not Stamped | 8/28/2020 |
| vinay.kumar.halafe | Vinay Halafe | 9 - Consultant | SAP SuccessFactors Integrations Technical | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ramarao.ariyaram | Ramarao Ariyaram | R - Consultant | Java Enterprise Edition | H-1B Visa | Petition Approved Visa Not Stamped | 8/5/2020 |
| vijayalakshmi.sn | Vijayalakshmi Subrahmanyam Nagaraj | 7 - Manager | IBM Sterling Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 6/3/2021 |
| lalit.mohan.bajpai | Lalit Mohan Bajpai | 9 - Consultant | ASP.NET | H-1B Visa | Petition Approved Visa Not Stamped | 8/9/2021 |
| sudar.duraiswamy | Manickasudar Duraiswamy | 9 - Consultant | Microsoft FED Angular | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| jayanth.b.r | Jayanth B R | 10 - Analyst | IBM Sterling Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| javed.anwar | Javed Anwar | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| santoshkumar.turang | Santosh Kuntar Turangi | R - Consultant | Amazon Web Services | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2020 |
| ruchi.a.jaiswal | Ruchi Jaiswal | 9 - Consultant | Java Enterprise Edition | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| d.chakravarthy.t | Deepan Chakravarthy T | R - Consultant | AWS Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| kishore.jonnadula | Kishore Jonnadula | 9 - Consultant | Vlocity Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| keerthi.thoutireddy | Keerthi Thoutireddy | 9 - Consultant | Vlocity Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| s.a.mohanrao.patil | Shivraj Mohanrao Patil | 9 - Consultant | nCino | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| sheba.sanjay.gaikwad | Sheba Gaikwad | 9 - Consultant | nCino | H-1B Visa | Petition Approved Visa Not Stamped | 10/10/2020 |
| alok.n.kumar | Alok Kumar | 9 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| radha.c.krishnan | RADHA KRISHNAN | 7 - Manager | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| sravanthi.muppaparaju | Sravanthi Muppaparaju | 7 - Manager | Workday Core HCM | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| manas.k.maity | Manas Kumar Maity | R - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| maheswaran.manicka | Maheswaran Manickam | 9 - Consultant | Oracle-LSH | H-1B Visa | Petition Approved Visa Not Stamped | 4/30/2021 |
| santosh.jajur | Santosh Jajur Shankar | 8 - Consultant | SAP BW on HANA Data Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| akash.seth | Akash Seth | 8 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| dipendra.a.singh | Dipendra Singh | 9 - Consultant | SAP Native HANA SQL Modeling & Development | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| abhijit.rout | Abhijit Rout | 9 - Consultant | WebMethods Fabric | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| d.ramachandiran | Devaraj Ramachandiran | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| suvarna.a.gail | Suvarna Subray Aigal | 9 - Consultant | Sitecore | H-1B Visa | Petition Approved Visa Not Stamped | 7/10/2022 |
| h.b.krishnamurthy | Hariprakash Krishnamurthy | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| ramesh.lodagala | Ramesh Lodagala | 9 - Consultant | Microsoft Sharepoint Server | H-1B Visa | Petition Approved Visa Not Stamped | 10/22/2020 |
| ravi.a.mandala | Ravi Mandala | 9 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| mansi.k.thakkar | Mansi Kamlesh Thakkar | R - Consultant | Salesforce Technical Architecture | H-1B Visa | Petition Approved Visa Not Stamped | 3/17/2022 |
| shifali.manral | Shifali Manral | 10 - Analyst | Salesforce Development | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2022 |
| shikhar.b.srivastava | Shikhar Srivastava | 10 - Analyst | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| syed.ashammantakas | Syed Ashammantekkath | 8 - Consultant | Oracle ATG Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| s.sreekanth.donkada | Satya Sreekanth Donkada | 8 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| madanmohan.kannoj | Madanmohan Kannojiya | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 4/30/2020 |
| vijay.revalli | Vijey Kumar Revalli | 9 - Consultant | SAP ABAP Development for HANA | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| brijesh.dilip.shah | Brijesh Dilip Shah | 9 - Consultant | SAP HANA Administration & Performance Engine | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2021 |
| sivaraj.bathran | Sivaraj Bathran | R - Consultant | UNIX Shell Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 10/10/2020 |
| renu.shridhar.ulhe | Renu Shridhar Ulhe | 8 - Consultant | Microsoft - Robotic Process Automation | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| neha.chourasia | Neha Chourasia | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| gautam.vasuki | Gautam Vasuki | 9 - Consultant | IBM Operational Decision Manager | H-1B Visa | Petition Approved Visa Not Stamped | 2/12/2020 |
| v.pathri | Venkateswararao Pathri | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| manoharan.mudaliar | Manoharan Damodharan Mudaliar | R - Consultant | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 13/31/2021 |
| yuvaraj.ganesh | Yuvaraj Ganesh | 8 - Consultant | Oracle Applications DBA | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| chiranjit.mishra | Chiranjit Mishra | 9 - Consultant | User Interface Development Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| venugopal.gunupudi | Venugopal Gunupudi | 8 - Consultant | Personal Insurance | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| baby.rani.sakthivel | Baby Rani Sakthivel | 9 - Consultant | COBOL Programming Language | H-1B Visa | Petition Approved Visa Not Stamped | 10/10/2020 |
| vikash.sinha | Vikash Kumar Sinha | 9 - Consultant | EPIC | H-1B Visa | Petition Approved Visa Not Stamped | 8/31/2020 |
| aswin.balaji | Aswin Ramanujan Balaji | 9 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| kalyan.kuchipudi | Kalyan Kuchipudi | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| kiran.pavuluri | Kiran Pavuluri | 9 - Consultant | Hadoop | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| yogesh.kumar.sinha | Yogesh Kumar Sinha | 9 - Consultant | EPIC | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| kunjan.sonegara | Kunjan Sonegara | 9 - Consultant | PeopleSoft PeopleTools | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| shankar.appavu | Shankar Appavu | 9 - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| akshay.s.nimkar | Akshay Sureshrao Nimkar | 9 - Consultant | Informatica PowerCenter | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2021 |
| mohamed.javeed | Mohamed Javeed | 5 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| divya.raji | Divya Raji | 8 - Consultant | Machine Learning | H-1B Visa | Petition Approved Visa Not Stamped | 11/31/2020 |
| jayakumar.subraman | Jayakumar Subramani | 10 - Analyst | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| nyma.syed.mohamed | Nyma Syed Mohamed | 9 - Consultant | Teradata BI | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| vaibhav.mangan | Vaibhav Mangesh Mahajan | 9 - Consultant | SAP Hybris Commerce | H-1B Visa | Petition Approved Visa Not Stamped | 11/30/2021 |
| s.sankanagoudar | Sadanandgouda Mahanandgouda Sankan | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 9/30/2021 |
| anusha.gade | Anusha Gade | R - Consultant | Oracle HCM Cloud Core HR | H-1B Visa | Petition Approved Visa Not Stamped | 3/30/2020 |
| r.sivakala | Ravichandra Babu Sivakala | 9 - Consultant | Python Scripting | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| anand.das | Anand Das | R - Consultant | Microsoft SQL Server Integration Services | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| a.c.gupt | Ankit Gupta | 9 - Consultant | Vlocity Solutions | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| g.mohammed.imran | Imran Mohammed Ghouse | 9 - Consultant | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| prakash.murugaiyan | Prakash Murugaiyan | 9 - Consultant | Advance Front End Development AngularJS | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| anand.al.kumar | Anand Kumar | 9 - Consultant | Openlink Endur Functional | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| r.bantwal.baliga | Rathnakar Bantwal Baliga | 8 - Consultant | Apache Spark | H-1B Visa | Petition Approved Visa Not Stamped | 8/21/2020 |
| bhavesh.dodia | Bhavesh Dodia | 9 - Consultant | Oracle Procedural Language Extensions to SQL | H-1B Visa | Petition Approved Visa Not Stamped | 2/1/2021 |
| amit.ab.singh | Amit Singh | 9 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| pushkar.dudhal | Pushkar Gajanan Dudhal | 9 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Petition Approved Visa Not Stamped | 6/30/2021 |
| vinamra.sharma | Vinamra Sharma | 9 - Consultant | Hadoop Administration | H-1B Visa | Petition Approved Visa Not Stamped | 7/24/2021 |
| prachi.kalika | Prachi Kalika | 9 - Consultant | Microsoft Azure DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| nishad.akliparambil | Nishad Janardanan Akliparambil | 10 - Analyst | PeopleSoft PeopleTools | H-1B Visa | Petition Approved Visa Not Stamped | 12/15/2022 |
| sumalatha.bomdla | Sumalatha Bomdla | R - Consultant | Abinitio | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| mahesh.birimanati | Mahesh Birimanati | 9 - Consultant | Accenture Life Insurance Platform (ALIP) | H-1B Visa | Petition Approved Visa Not Stamped | 4/30/2020 |
| d.kuppuswamy | Dilipkumar Kuppuswamy | 9 - Consultant | Oracle Applications Development | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| archana.a.agarwal | Archana Agarwal | 10 - Analyst | SAP PP Production Planning & Control Discrete In | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| narender.gadiela | Narender Reddy Gadiela | 8 - Consultant | SAP HANA Administration & Performance Engine | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| a.shiravadekar | Abhishek Shiravadekar | 8 - Consultant | Microsoft SQL Server Integration Services | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| mukul.sishodia | Mukul Kumar | 10 - Analyst | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 10/1/2020 |
| a.t.sharm | Abhishek Sharma | 10 - Analyst | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| neha.nagori | Neha Nagori | 9 - Consultant | Salesforce Lightning | H-1B Visa | Petition Approved Visa Not Stamped | 1/31/2021 |
| salma.kathermohidee | Salma Rizwana Kathermohideen | 9 - Consultant | SAP Purchasing (MM PO) | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| piyush.gakre | Piyush Gakre | 9 - Consultant | ASP.NET MVC | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| rakesh.b.yadav | Rakesh Yadav | 9 - Consultant | Microsoft Modern Data Platform | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| dilip.veetun | Dilip Bharadwaja Veetur | 8 - Consultant | IBM Cloud (Bluemix) | H-1B Visa | Petition Approved Visa Not Stamped | 10/31/2021 |
| paras.bhagat | Paras Bhagat | 9 - Consultant | Java Standard Edition | H-1B Visa | Petition Approved Visa Not Stamped | 1/5/2022 |
| p.sarathi.goswami | Partha Sarathi Goswami | 9 - Consultant | SAP UI5 Fiori Development (HTML5 & Java) | H-1B Visa | Petition Approved Visa Not Stamped | 7/10/2022 |
| lourdhu.vanathaiyan | Lourdhabirindra Vanathaiyan | 8 - Consultant | CSV (Computer System Validations) | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |
| kishor.ananda.sonar | Kishor Ananda Sonar | 9 - Consultant | TIBCO ActiveMatrix Business Works | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2021 |
| mayuresh.mulay | Mayuresh Suresh Mulay | R - Consultant | SAP EWM Extended Warehouse Management | H-1B Visa | Petition Approved Visa Not Stamped | 3/15/2022 |
| mayank.l.jain | Mayank Jain | 9 - Consultant | SAP BASIS Administration | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| abhinav.kumar.sharm | Abhinav Kumar Sharma | 8 - Consultant | Microsoft FED Angular | H-1B Visa | Petition Approved Visa Not Stamped | 7/31/2022 |

| | | | | | | |
|---|---|---|---|---|---|---|
| brijesh.d.kumar | Brijesh Kumar | 9 - Consultant | Accenture Life Insurance Platform (ALIP) | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2021 |
| swapnil.b.deshpande | Swapnil Deshpande | 10 - Analyst | DevOps | H-1B Visa | Petition Approved Visa Not Stamped | 2/1/2021 |
| n.a.mittal | Divya Mittal | 9 - Consultant | ASP.NET | H-1B Visa | Petition Approved Visa Not Stamped | 12/31/2020 |
| krishnan.ganapathy | Krishnan Ganapathy | 8 - Consultant | Application Security Architecture and Design | H-1B Visa | Pipeline Case | |
| a.a.raja | Ashok Raja | 9 - Consultant | Microsoft Windows Azure (IaaS) | H-1B Visa | Pipeline Case | |
| ajamil.mitra | Ajamil Mitra | 8 - Consultant | Network Infrastructure | H-1B Visa | Pipeline Case | |
| sopan.a.joshi | Sopan Aniksumar Joshi | 9 - Consultant | Network Security Operations | H-1B Visa | Pipeline Case | |
| nilesh.a.sharma | Nilesh Sharma | 7 - Manager | Microsoft Active Directory | H-1B Visa | Pipeline Case | |
| shashidhar.patabaila | Shashidhar Patabaila | 9 - Consultant | Viocity Solutions | H-1B Visa | Pipeline Case | |
| d.b.murugesan | Dhananidharan Murugesan | 9 - Consultant | Pegasystems Architecture | H-1B Visa | Pipeline Case | |
| pravin.kumar.choubey | Pravin Kumar Choubey | 8 - Consultant | Salesforce Technical Architecture | H-1B Visa | Pipeline Case | |
| latika.totre | Latika Totre | 9 - Consultant | Life Sciences Revenue Management | H-1B Visa | Pipeline Case | |
| vinod.mangipudi | Vinod Mangipudi | 9 - Consultant | Salesforce Lightning | H-1B Visa | Pipeline Case | |
| p.b.chandrasekaran | Prasanna Chandrasekaran | 8 - Consultant | Salesforce Technical Architecture | H-1B Visa | Pipeline Case | |
| indresh.narayangowd | Indresh Narayangowda Tashikentnagar | 9 - Consultant | WebMethods Fabric | H-1B Visa | Pipeline Case | |
| shreya.bhat | Shreya Sandeep Kamath | 8 - Consultant | Pegasystems Platform | H-1B Visa | Pipeline Case | |
| v.b.pandey | Vivek Pandey | 9 - Consultant | Amazon Web Services | H-1B Visa | Pipeline Case | |
| nikhil.a.tiwari | Nikhil Tiwari | 9 - Consultant | SAP Hybris Commerce | H-1B Visa | Pipeline Case | |
| kranthi.kumar.chanda | Kranthi Kumar Chanda | 8 - Consultant | TIBCO BusinessWorks | H-1B Visa | Pipeline Case | |
| ananth.kannan | Ananth Kannan | 9 - Consultant | Tandem | H-1B Visa | Pipeline Case | |
| anuj.a.verma | Anuj Verma | 8 - Consultant | PeopleSoft PeopleTools | H-1B Visa | Pipeline Case | |
| shashi.a.shekhar.jha | Shashi Shekhar Jha | 10 - Analyst | Oracle Fusion Middleware WebLogic Server Admin | H-1B Visa | Pipeline Case | |
| ravikiran.emani | Ravikiran Emani | 9 - Consultant | Siebel Open UI | H-1B Visa | Pipeline Case | |
| koti.reddy.avula | Koti Reddy Avula | 8 - Consultant | IBM Integration Bus | H-1B Visa | Pipeline Case | |
| dattatray.s.shinde | Dattatray Sadashiv Shinde | 8 - Consultant | Natural Language Processing (NLP) | H-1B Visa | Pipeline Case | |
| harish.jangala | Harish Jangala | 8 - Consultant | SAP BW on HANA Data Modeling & Development | H-1B Visa | Pipeline Case | |
| hemant.a.kumar.yada | Hemant Kumar Yadav | 9 - Consultant | Maximo | H-1B Visa | Pipeline Case | |
| m.manohara | MANOHARA MUKUNDA | 8 - Consultant | Microsoft Windows Azure PaaS | H-1B Visa | Pipeline Case | |
| gaurav.motwani | Gaurav Shantiprakash Motwani | 9 - Consultant | Data Science (Jupyter/Azure ML/MatLab) | H-1B Visa | Pipeline Case | |
| vinayak.vijayan | Vinayak Vijayan | 9 - Consultant | Microsoft Windows Communication Foundation | H-1B Visa | Pipeline Case | |
| yogeswararao.nelluri | Yogeswararao Nelluri | 9 - Consultant | GuideWire ClaimCenter | H-1B Visa | Pipeline Case | |
| sindhu.gunasekar | Sindhu Gunasekar | 8 - Consultant | SAP Infrastructure Security | H-1B Visa | Pipeline Case | |
| cherry.mahajan | Cherry Mahajan | 10 - Analyst | SAP BW (Business Warehouse) | H-1B Visa | Pipeline Case | |
| prathibha.somavarap | Prathibha Somavarapu | 10 - Analyst | Salesforce Lightning | H-1B Visa | Pipeline Case | |
| reddy.karthik.m | ReddyKarthik Marrikonmadinne | 9 - Consultant | IBM Sterling Commerce | H-1B Visa | Pipeline Case | |
| devashish.bhatachryc | Devashish Bhattacharya | 9 - Consultant | SAP Hybris Marketing Segmentation | H-1B Visa | Pipeline Case | |
| hemanth.adapa | Hemanth Adapa | 9 - Consultant | Amazon Web Services | H-1B Visa | Pipeline Case | |
| geeta.sarlashkar | Geeta Sadashiv Sarlashkar | 9 - Consultant | Agile Methods (ADM for Distributed Agile Develo | H-1B Visa | Pipeline Case | |
| a.raghavendra.hosur | Anup Raghavendra Hosur | 8 - Consultant | Microsoft Windows Presentation Foundation (WP | H-1B Visa | Pipeline Case | |
| czarina.a.soriano | Maria Czarina Soriano | | Accenture Leadership - Managing Director | L1A Visa | NA | 1/30/2021 |
| dianne.m.romasanta | Dianne Malonzo Romasanta | 7 - Manager | | H-1B Visa | NA | 2/21/2020 |
| ermilyn.a.magpantay | Ermilyn Enderez Magpantay | 9 - Consultant | | H-1B Visa | NA | 1/1/2021 |
| mary.ann.p.chua | Mary Ann Chua Reyes | 7 - Manager | | L1B Visa | NA | 6/16/2020 |
| mary.fatima.s.gamboa | Mary Fatima Santos Gamboa | 9 - Consultant | | L1B Visa | NA | 6/24/2010 |
| ninio.j.r.montillano | Niño Jeffrey Rivera Montillano | 9 - Consultant | | H-1B Visa | NA | 11/26/2021 |
| richie.a.g.breganza | Richie Paul Garrido Breganza | 6 - Senior Manager | | L1A Visa | NA | 4/29/2020 |
| vinson.g.alday | Vinson Gute Alday | 8 - Consultant | | H-1B Visa | NA | 6/28/2020 |
| a.d.de.los.reyes | Angeli Diano De Los Reyes | 9 - Consultant | | L1B Visa | NA | 2/15/2021 |
| aj.d.migrino | Alvin Joseph Dela Cruz Migrino | 7 - Manager | | L1A Visa | NA | 4/21/2020 |
| ann.jewel.r.lagrimas | Ann Jewel Roque Lagrimas | 7 - Manager | | L1A Visa | NA | 7/21/2020 |
| arvin.jay.v.cando | Arvin Jay Velarde Cando | 6 - Senior Manager | | L1A Visa | NA | 11/23/2021 |
| bernadette.f.naiagan | Bernadette Fabella Naiagan | 6 - Senior Manager | | L1A Visa | NA | 7/21/2020 |
| christian.l.d.sia | Christian Leroy D. Sia | 8 - Consultant | | L1B Visa | NA | 1/19/2020 |
| christopher.r.perez | Christopher Reyes Perez | 8 - Consultant | | L1B Visa | NA | 9/26/2020 |
| czarina.a.soriano | Maria Czarina Soriano | | Accenture Leadership - Managing Director | L1A Visa | NA | 6/29/2026 |
| czarina.joy.e.legara | Czarina Joy Encionar Legara | 9 - Consultant | | L1B Visa | NA | 1/27/2020 |
| dianne.m.romasanta | Dianne Malonzo Romasanta | 7 - Manager | | H-1B Visa | NA | 2/21/2020 |
| emmanuel.s.aviles | Emmanuel Simbulan Aviles | 8 - Consultant | | L1B Visa | NA | 12/15/2020 |
| ernst.jhon.a.humtawd | Ernst Jhon Humtawid | 8 - Consultant | | L1B Visa | NA | 7/14/2020 |
| ivyn.c.r.de.leon | Ivyn Charls Robleson De Leon | 9 - Consultant | | L1B Visa | NA | 2/7/2021 |
| jaime.e.fajardo | Jaime E. Fajardo | 8 - Consultant | | L1B Visa | NA | 3/29/2012 |
| jennifer.e.meily | Jennifer Espadilla Meily | 9 - Consultant | | L1A Visa | NA | 3/13/2022 |
| jerimie.h.cruz | Jerimie H. Cruz | 9 - Consultant | | H-1B Visa | NA | 9/25/2020 |
| jimbert.r.cecilio | Jimbert Ramones Cecilio | 8 - Consultant | | L1B Visa | NA | 1/16/2012 |
| john.brian.e.anotado | John Brian Elvas Anotado | 8 - Consultant | | L1B Visa | NA | 5/24/2021 |
| jose.b.c.martin | Jose Bernard C. Martin | 8 - Consultant | | H-1B Visa | NA | 9/30/2020 |
| k.r.labrague | Klea Retanino Labrague | 9 - Consultant | | L1B Visa | NA | 2/27/2023 |
| karla.c.d.tuazon | Karla Claudette Tuazon | 7 - Manager | | L1A Visa | NA | 4/20/2020 |
| keith.b.montes | Keith Burlas Montes | 7 - Manager | | L1B Visa | NA | 11/19/2020 |
| leo.g.v.mendoza | Leo Gregory Mendoza | 8 - Consultant | | L1A Visa | NA | 5/19/2020 |
| leslie.b.caranay | Leslie Balbuena Caranay | 8 - Consultant | | L1A Visa | NA | 4/18/2021 |
| lexter.j.ramos | Lexter Ramos | 6 - Senior Manager | | H-1B Visa | NA | 7/5/2020 |
| liza.chagnon | Liza Jennifer Chagnon | 5 - Senior Manager | | L1A Visa | NA | 6/13/2024 |
| lourdett.c.belen | Lourdett Caparas Belen | 10 - Analyst | | L1B Visa | NA | 1/5/2020 |
| mar.c.p.perez | Mar Christian Pangilinan Perez | 9 - Consultant | | L1B Visa | NA | 11/7/2020 |
| maria.g.s.regis | Maria Giselle S. Santos Regis | 9 - Consultant | | L1B Visa | NA | 6/22/2020 |
| mark.lester.b.huang | Mark Lester Huang | 9 - Consultant | | L1B Visa | NA | 5/11/2020 |
| mark.n.d.soterol | Mark Nhevin Degracia Soterol | 8 - Consultant | | H-1B Visa | NA | 6/3/2021 |
| martin.g.a.casenas | Martin Gretcro Averion Casenas | 8 - Consultant | | L1B Visa | NA | 2/17/2020 |
| michael.dave.c.libby | Michael Dave Ceriño Libby | 8 - Consultant | | L1B Visa | NA | 7/21/2020 |
| michael.john.quijano | Michael John Quijano | 10 - Analyst | | L1B Visa | NA | 3/24/2020 |
| paula.j.r.dimalanta | Paula Jane Raz Dimalanta | 8 - Consultant | | L1B Visa | NA | 2/17/2020 |
| r.h.formalejo.jr | Rolando Hintay Formalejo Jr. | 8 - Consultant | | L1A Visa | NA | 1/4/2020 |
| richie.p.g.breganza | Richie Paul Garrido Breganza | 6 - Senior Manager | | L1A Visa | NA | 7/14/2020 |
| robert.john.f.genete | Robert John Feliciano Genete | 8 - Consultant | | L1A Visa | NA | 10/5/2020 |
| rony.v.lucanco.jr | Rony Lucanco Jr. | 8 - Consultant | | L1A Visa | NA | 4/7/2020 |
| rose.d.l.amparo | Rose Dominique Librando Amparo | 8 - Consultant | | L1A Visa | NA | 4/11/2021 |
| vinson.g.alday | Vinson Gute Alday | 9 - Consultant | | H-1B Visa | NA | 6/28/2020 |

Exhibit 4

# US VISA USAGE: ACCENTURE WAGES ARE GENERALLY IN LINE WITH IPP'S

There are significantly more LCA slots than H-1B visa holders onshore.

Data for USCIS FY18 Q1 (October 1, 2017 – December 31, 2017).

| H-1B Wage Level based on publicly available Labor Condition Application (LCA) data | # of LCA slots | Level I | | Level 2 | | Level 3 | | Level 4 | |
|---|---|---|---|---|---|---|---|---|---|
| | | % | Avg. Actual Wage | % | Avg. Actual Wage | % | Avg. Actual Wage | % | Avg. Actual Wage |
| DELOITTE CONSULTING LLP | 7059 | 40% | $74,260 | 39% | $87,928 | 17% | $105,205 | 5% | $144,063 |
| COGNIZANT | 6274 | 8% | $61,526 | 40% | $75,498 | 20% | $92,045 | 32% | $108,539 |
| CAPGEMINI | 3034 | 5% | $61,522 | 51% | $78,609 | 34% | $95,156 | 11% | $121,539 |
| INFOSYS LIMITED | 2423 | 16% | $69,983 | 42% | $81,507 | 25% | $100,445 | 16% | $122,072 |
| TATA CONSULTANCY SERVICES LIMITED | 1879 | 0% | | 86% | $68,722 | 14% | $84,975 | 0% | $97,828 |
| MICROSOFT CORPORATION | 1472 | 14% | $113,187 | 35% | $129,710 | 45% | $154,379 | 5% | $181,268 |
| ACCENTURE LLP | 1243 | 1% | $63,315 | 48% | $80,479 | 30% | $97,778 | 22% | $140,176 |
| WIPRO LIMITED | 1205 | 0% | $65,187 | 84% | $73,923 | 15% | $95,129 | 1% | $117,948 |
| TECH MAHINDRA (AMERICAS) | 648 | 0% | | 100% | $85,487 | 0% | | 0% | |
| IBM INDIA PRIVATE LIMITED | 583 | 0% | | 91% | $78,972 | 9% | $106,766 | 0% | |
| IBM | 448 | 0% | | 52% | $99,224 | 5% | $116,800 | 43% | $132,722 |

# Exhibit 5



**U.S. Citizenship and Immigration Services**

**Approved H 1B Petitions (Number, Salary, and Degree/Diploma) by Employer,Top 100**
**Fiscal Year 2019**

Source: USCIS, data as of October 15, 2019. Notes: All data are based on petitions approved during the fiscal year for both initial employment and continuing employment. Petitions approved in a fiscal year may be filed in previous fiscal year. Per USCIS best practices, units of less than 10 beneficiaries are masked to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. The letter "H" replaces the value from which one could deduce the value of "D". While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the education field is not captured by the USCIS electronic data storage system. Median salary is based on data reported by the petitioner in the petition and may include part-time employment or may be reported inaccurately. Because USCIS data systems do not include hours worked, we are unable to identify salaries earned from part-time employment. Instead of the required degree, a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. Employers without tax identification numbers in our system were excluded. The H-1B petition may be used to sponsor an alien currently in a different nonimmigrant classification, or with no classification if outside the U.S., for an initial period of H-1B employment (see "initial employment" column below), or to extend or change the authorized stay of an alien currently in H-1B status (see "continuing employment" column below). An employer may file an H-1B petition to sponsor an alien who currently has H-1B nonimmigrant status working for another employer or to amend a previously approved petition; these petitions are counted in the "continuing employment" column below. Initial employment includes both cap-subject and cap-exempt petitions. Due to the transactional nature of the report, revocations, appeals, and consular returns may cause the counts of approved petitions to change slightly over time.

| Employer Tax ID (Last 4 Digits) | Employer Name | Number of Beneficiaries | | | Median Salary | Beneficiary Degree/Diploma | |
|---|---|---|---|---|---|---|---|
| | | Initial Employment | Continuing Employment | Total | | | |
| 4155 | COGNIZANT TECH SOLUTIONS US CORP | 1,581 | 11,726 | 13,307 | 89,217 | Bachelor's | 9,951 |
| | | | | | | Master's | 3,346 |
| | | | | | | Doctorate | D |
| | | | | | | High School | D |
| | | | | | | No Diploma | D |
| | | | | | | Professional | D |
| 9806 | TATA CONSULTANCY SVCS LTD | 1,728 | 5,768 | 7,496 | 77,400 | Bachelor's | 5,665 |
| | | | | | | Master's | H |
| | | | | | | Some College | D |
| 4687 | AMAZON COM SERVICES INC | 3,082 | 4,235 | 7,317 | 131,580 | Master's | 4,943 |
| | | | | | | Bachelor's | 2,133 |
| | | | | | | Doctorate | 234 |
| | | | | | | Professional | D |
| | | | | | | Some College | D |
| 4513 | DELOITTE CONSULTING LLP | 1,171 | 4,920 | 6,091 | 110,990 | Bachelor's | 3,555 |
| | | | | | | Master's | 2,517 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 3581 | GOOGLE LLC | 2,694 | 3,326 | 6,020 | 140,000 | Master's | 3,709 |
| | | | | | | Bachelor's | 1,751 |
| | | | | | | Doctorate | 550 |
| | | | | | | Professional | D |
| | | | | | | Some College | D |
| 0235 | INFOSYS LIMITED | 756 | 4,707 | 5,463 | 85,583 | Bachelor's | 3,995 |
| | | | | | | Master's | 1,441 |
| | | | | | | Professional | 21 |
| | | | | | | Doctorate | D |
| | | | | | | Associates | D |
| | | | | | | High School | D |
| | | | | | | Some College | D |
| 4442 | MICROSOFT CORPORATION | 1,775 | 3,545 | 5,320 | 135,000 | Master's | 3,207 |
| | | | | | | Bachelor's | 1,920 |
| | | | | | | Doctorate | 187 |
| | | | | | | Professional | D |
| | | | | | | Some College | D |
| | | | | | | High School | D |
| 5929 | CAPGEMINI AMERICA INC | 813 | 2,763 | 3,576 | 93,600 | Bachelor's | 2,361 |
| | | | | | | Master's | 1,208 |
| | | | | | | High School | D |
| | | | | | | Professional | D |
| | | | | | | Doctorate | D |
| 5019 | FACEBOOK INC | 1,533 | 2,012 | 3,545 | 150,852 | Master's | 2,189 |
| | | | | | | Bachelor's | 994 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 4110 | APPLE INC | 1,161 | 2,304 | 3,465 | 150,000 | Master's | 2,094 |
| | | | | | | Bachelor's | 1,005 |
| | | | | | | Doctorate | 349 |
| | | | | | | Some College | D |
| | | | | | | Professional | D |
| | | | | | | High School | D |
| | | | | | | No Diploma | D |
| | | | | | | Associates | D |
| 4401 | WIPRO LIMITED | 593 | 2,458 | 3,051 | 75,650 | Bachelor's | 1,734 |
| | | | | | | Master's | 1,272 |
| | | | | | | Associates | 42 |
| | | | | | | Doctorate | D |
| | | | | | | High School | D |
| | | | | | | Professional | D |
| 2743 | INTEL CORPORATION | 1,010 | 1,963 | 2,973 | 109,510 | Master's | 2,268 |
| | | | | | | Doctorate | 425 |
| | | | | | | Bachelor's | 280 |
| 2904 | ACCENTURE LLP | 628 | 2,274 | 2,902 | 88,200 | Bachelor's | 2,068 |
| | | | | | | Master's | H |

Note: Full data available in CSV format: https://www.uscis.gov/legal-resources/buy-american-and-hire-american-putting-american-workers-first. Previous PDF reports contain full listings but may not be Section 508 accessible.

| Code | Company | | | | | Education | Count |
|---|---|---|---|---|---|---|---|
| | | | | | | Doctorate | D |
| 5596 | ERNST & YOUNG US LLP | 501 | 2,344 | 2,845 | 106,750 | Master's | 1,895 |
| | | | | | | Bachelor's | 918 |
| | | | | | | Doctorate | 25 |
| | | | | | | Professional | D |
| | | | | | | High School | D |
| 2696 | TECH MAHINDRA AMERICAS INC | 939 | 1,868 | 2,807 | 80,850 | Bachelor's | 1,808 |
| | | | | | | Master's | 977 |
| | | | | | | High School | 10 |
| | | | | | | Professional | D |
| | | | | | | Doctorate | D |
| 5035 | HCL AMERICA INC | 407 | 2,019 | 2,426 | 93,538 | Bachelor's | 1,665 |
| | | | | | | Master's | 758 |
| | | | | | | Doctorate | D |
| | | | | | | High School | D |
| 4303 | LARSEN & TOUBRO INFOTECH LIMITED | 536 | 1,736 | 2,272 | 86,590 | Bachelor's | 1,701 |
| | | | | | | Master's | 571 |
| 9951 | CISCO SYSTEMS INC | 701 | 1,404 | 2,105 | 130,736 | Master's | 1,305 |
| | | | | | | Bachelor's | 775 |
| | | | | | | Doctorate | 23 |
| | | | | | | Missing Education | D |
| | | | | | | Professional | D |
| 5249 | ORACLE AMERICA INC | 547 | 1,356 | 1,903 | 130,000 | Master's | 1,045 |
| | | | | | | Bachelor's | 823 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 1985 | IBM CORPORATION | 1,165 | 736 | 1,901 | 108,976 | Master's | 964 |
| | | | | | | Bachelor's | 860 |
| | | | | | | Doctorate | H |
| | | | | | | High School | D |
| 4428 | JPMORGAN CHASE & CO | 434 | 1,253 | 1,687 | 120,000 | Bachelor's | 813 |
| | | | | | | Master's | 800 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 4409 | WAL-MART ASSOCIATES INC | 473 | 1,053 | 1,526 | 125,000 | Master's | 985 |
| | | | | | | Bachelor's | 510 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 0693 | SALESFORCE COM INC | 274 | 1,029 | 1,303 | 150,000 | Master's | 904 |
| | | | | | | Bachelor's | 383 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 9720 | MPHASIS CORPORATION | 384 | 908 | 1,292 | 80,703 | Bachelor's | 910 |
| | | | | | | Master's | 382 |
| 8068 | AMAZON WEB SERVICES INC | 421 | 858 | 1,279 | 130,000 | Master's | 895 |
| | | | | | | Bachelor's | 373 |
| | | | | | | Doctorate | 11 |
| 7787 | QUALCOMM TECHNOLOGIES INC | 522 | 737 | 1,259 | 117,603 | Master's | 906 |
| | | | | | | Bachelor's | 212 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 2018 | SYNTEL INC | 249 | 942 | 1,191 | 77,979 | Bachelor's | 800 |
| | | | | | | Master's | 388 |
| | | | | | | High School | D |
| | | | | | | Doctorate | D |
| 1591 | L&T TECHNOLOGY SERVICES LIMITED | 226 | 941 | 1,167 | 75,566 | Bachelor's | 947 |
| | | | | | | Master's | H |
| | | | | | | Doctorate | D |
| 7441 | UBER TECHNOLOGIES INC | 486 | 667 | 1,153 | 147,150 | Master's | 751 |
| | | | | | | Bachelor's | 318 |
| | | | | | | Doctorate | H |
| | | | | | | Professional | D |
| 1517 | DELOITTE & TOUCHE LLP | 327 | 759 | 1,086 | 85,100 | Master's | 675 |
| | | | | | | Bachelor's | H |
| | | | | | | Doctorate | D |
| 5132 | RANDSTAD TECHNOLOGIES LLC | 76 | 1,002 | 1,078 | 110,000 | Bachelor's | 630 |
| | | | | | | Master's | 448 |
| 1430 | IBM INDIA PRIVATE LIMITED | 86 | 951 | 1,037 | 82,187 | Bachelor's | 732 |
| | | | | | | Master's | 305 |
| 5091 | MINDTREE LIMITED | 170 | 837 | 1,007 | 86,000 | Bachelor's | 651 |
| | | | | | | Master's | 356 |
| 0389 | CAPITAL ONE SERVICES LLC | 153 | 780 | 933 | 122,781 | Master's | 499 |
| | | | | | | Bachelor's | 406 |
| | | | | | | Doctorate | 28 |
| 2913 | VMWARE INC | 264 | 668 | 932 | 145,000 | Master's | 635 |
| | | | | | | Bachelor's | 278 |
| | | | | | | Doctorate | 17 |
| | | | | | | Missing Education | D |
| | | | | | | Professional | D |
| 2023 | LINKEDIN CORPORATION | 282 | 643 | 925 | 160,000 | Master's | 619 |
| | | | | | | Bachelor's | 258 |
| | | | | | | Doctorate | 48 |
| 8214 | PRICEWATERHOUSECOOPERS ADVISORY SE | 234 | 661 | 895 | 118,000 | Master's | 565 |

Note: Full data available in CSV format: https://www.uscis.gov/legal-resources/buy-american-and-hire-american-putting-american-workers-first. Previous PDF reports contain full listings but may not be Section 508 accessible.



**U.S. Citizenship
and Immigration
Services**

**Approved H-1B Petitions (Number, Salary,
and Degree/Diploma) by Employer
Fiscal Year 2018**

Source: USCIS, data as of Nov. 30, 2018. Notes: All data is based on petitions approved during the fiscal year for both initial employment and continuing employment. Petitions approved in a fiscal year may be filed in previous fiscal years. Per USCIS best practices, units of less than 10 beneficiaries are masked to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. The letter "H" replaces the value from which one could deduce the value of "D". While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the USCIS electronic data storage system does not capture the education field. Median salary is based on data reported by the petitioner in the petition and may include part-time employment or may be reported inaccurately. Because USCIS data systems do not include hours worked, we are unable to identify salaries earned from part-time employment. Instead of the required degree, a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. We excluded employers without tax identification numbers in our system. The H-1B petition may be used to sponsor an alien currently in a different nonimmigrant classification, or with no classification if outside the U.S., for an initial period of H-1B employment (see "initial employment" column below), or to extend or change the authorized stay of an alien currently in H-1B status (see "continuing employment" column below). An employer may file an H-1B petition to sponsor an alien who currently has H-1B nonimmigrant status working for another employer or to amend a previously approved petition; these petitions are counted in the "continuing employment" column below. Initial employment includes both cap-subject and cap-exempt petitions.

| Employer Tax ID (Last 4 Digits) | Employer Name | Number of Beneficiaries | | | Median Salary | Beneficiary Degree/Dipolma | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Initial Employment | Continuing Employment | Total | | | |
| 4155 | COGNIZANT TECH SOLNS US CORP | 500 | 8,694 | 9,194 | 86,653 | Bachelor's | 6,948 |
| | | | | | | Master's | 2,242 |
| | | | | | | Missing Education | D |
| | | | | | | Doctorate | D |
| | | | | | | High School | D |
| | | | | | | Professional Degree | D |
| 9806 | TATA CONSULTANCY SVCS LTD | 527 | 8,124 | 8,651 | 75,000 | Bachelor's | 6,811 |
| | | | | | | Master's | 1,835 |
| | | | | | | Some College | D |
| | | | | | | Associate Degree | D |
| | | | | | | Doctorate | D |
| | | | | | | High School | D |
| 0235 | INFOSYS LIMITED | 65 | 5,865 | 5,930 | 81,058 | Bachelor's | 4,453 |
| | | | | | | Master's | 1,453 |
| | | | | | | Professional Degree | 20 |
| | | | | | | High School | D |
| | | | | | | Doctorate | D |
| | | | | | | Some College | D |
| 4513 | DELOITTE CONSULTING LLP | 694 | 4,629 | 5,323 | 107,100 | Bachelor's | 3,296 |
| | | | | | | Master's | 2,008 |
| | | | | | | Doctorate | 13 |
| | | | | | | Professional Degree | D |
| | | | | | | Some College | D |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4442 | MICROSOFT CORPORATION | 1,265 | 3,211 | 4,476 | 131,011 | Master's | 2,669 |
| | | | | | | Bachelor's | 1,621 |
| | | | | | | Doctorate | 184 |
| | | | | | | Missing Education | D |
| | | | | | | Professional Degree | D |
| 4687 | AMAZON COM SERVICES INC | 2,396 | 1,987 | 4,383 | 125,000 | Master's | 2,971 |
| | | | | | | Bachelor's | 1,247 |
| | | | | | | Doctorate | H |
| | | | | | | Professional Degree | D |
| 3581 | GOOGLE LLC | 782 | 2,606 | 3,388 | 140,000 | Master's | 2,332 |
| | | | | | | Bachelor's | 716 |
| | | | | | | Doctorate | H |
| | | | | | | Professional Degree | D |
| 4110 | APPLE INC | 708 | 2,388 | 3,096 | 145,000 | Master's | 1,996 |
| | | | | | | Bachelor's | 784 |
| | | | | | | Doctorate | 298 |
| | | | | | | Professional Degree | D |
| | | | | | | Some College | D |
| | | | | | | Associate Degree | D |
| | | | | | | No Diploma | D |
| | | | | | | Missing Education | D |
| 4401 | WIPRO LIMITED | 275 | 2,815 | 3,090 | 74,818 | Bachelor's | 1,783 |
| | | | | | | Master's | 1,259 |
| | | | | | | Associate Degree | 45 |
| | | | | | | Professional Degree | D |
| | | | | | | High School | D |
| 2904 | ACCENTURE LLP | 357 | 2,675 | 3,032 | 82,955 | Bachelor's | 2,202 |
| | | | | | | Master's | 822 |
| | | | | | | Doctorate | D |
| | | | | | | Missing Education | D |
| | | | | | | High School | D |
| | | | | | | No Diploma | D |
| 5929 | CAPGEMINI AMERICA INC | 277 | 2,693 | 2,970 | 90,000 | Bachelor's | 1,998 |
| | | | | | | Master's | 964 |
| | | | | | | High School | D |
| | | | | | | Missing Education | D |
| | | | | | | Professional Degree | D |
| 5019 | FACEBOOK INC | 661 | 1,806 | 2,467 | 150,000 | Master's | 1,702 |
| | | | | | | Bachelor's | 546 |
| | | | | | | Doctorate | 216 |
| | | | | | | Professional Degree | D |
| | | | | | | Missing Education | D |
| 2696 | TECH MAHINDRA AMERICAS INC | 594 | 1,851 | 2,445 | 79,415 | Bachelor's | 1,530 |



**U.S. Citizenship and Immigration Services**

Approved H-1B Petitions (Number, Salary, and Degree/Diploma) by Employer Fiscal Year 2017

Source: USCIS, data as of October 25, 2017. Notes: All data are based on approved petitions during the fiscal year. Petitions approved in a fiscal year may be filed in previous fiscal years. Per USCIS best practices, units of less than 10 beneficiaries are masked so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the education field is not captured by the USCIS electronic data storage system. Average salary is based on data reported by the petitioner in the petition and may include part-time employment. Because USCIS data systems do not include hours worked, we are unable to identify salaries earned from part-time employment. In lieu of the required degree a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. The letter H replaces the value in the total column where one could deduce the value of D. Employers without tax identification numbers in our system were excluded.

| Employer Tax Number (last 4 digits) | Employer Name | Total Number of Approved Petitions | Average Salary ($) | Beneficiaries' Degree/Diploma | |
|---|---|---|---|---|---|
| 4155 | COGNIZANT TECH SOLNS US CORP | 28,908 | 85,429 | Bachelor's | 22,391 |
| | | | | Master's | 6,512 |
| | | | | Doctorate | D |
| | | | | High School | D |
| 9806 | TATA CONSULTANCY SVCS LTD | 14,697 | 73,505 | Bachelor's | 11,766 |
| | | | | Master's | 2,923 |
| | | | | Missing Education | D |
| | | | | Associate Degree | D |
| | | | | High School | D |
| | | | | No Diploma | D |
| | | | | Professional Degree | D |
| | | | | Some College Credits | D |
| 0235 | INFOSYS LTD | 13,408 | 85,717 | Bachelor's | 10,130 |
| | | | | Master's | 3,214 |
| | | | | Professional Degree | 47 |
| | | | | Associate Degree | 10 |
| | | | | Doctorate | D |

| | | | | | |
|---|---|---|---|---|---|
| | | | | High School | D |
| 4401 | WIPRO LIMITED | 6,529 | 75,082 | Bachelor's | 3,914 |
| | | | | Master's | 2,551 |
| | | | | Associate Degree | 62 |
| | | | | Missing Education | D |
| | | | | High School | D |
| 4513 | DELOITTE CONSULTING LLP | 6,027 | 106,797 | Bachelor's | 3,913 |
| | | | | Master's | 2,094 |
| | | | | Doctorate | 12 |
| | | | | Professional Degree | D |
| | | | | Some College Credits | D |
| 2904 | ACCENTURE LLP | 5,070 | 83,573 | Bachelor's | 3,674 |
| | | | | Master's | 1,390 |
| | | | | Doctorate | D |
| | | | | High School | D |
| 2696 | TECH MAHINDRA AMERICAS INC | 4,931 | 78,443 | Bachelor's | 3,143 |
| | | | | Master's | 1,730 |
| | | | | High School | 29 |
| | | | | Professional Degree | 19 |
| | | | | No Diploma | D |
| | | | | Doctorate | D |
| | | | | Some College Credits | D |
| | | | | Missing Education | D |
| 6545 | AMAZON CORPORATE LLC | 4,767 | 118,637 | Master's | 3,274 |
| | | | | Bachelor's | 1,353 |
| | | | | Doctorate | 138 |
| | | | | Missing Education | D |
| | | | | Professional Degree | D |
| 5035 | HCL AMERICA INC | 4,392 | 87,978 | Bachelor's | 2,719 |
| | | | | Master's | 1,668 |
| | | | | Doctorate | D |
| | | | | Missing Education | D |
| | | | | Some College Credits | D |
| 4442 | MICROSOFT CORPORATION | 4,069 | 130,259 | Master's | 2,185 |
| | | | | Bachelor's | 1,684 |
| | | | | Doctorate | 196 |
| | | | | Professional Degree | D |
| | | | | Missing Education | D |
| | | | | Some College Credits | D |
| 5929 | CAPGEMINI AMERICA INC | 3,580 | 84,667 | Bachelor's | 2,454 |



**U.S. Citizenship and Immigration Services**

**Approved H-1B Petitions (Number, Salary, and Degree/Diploma) by Employer Fiscal Year 2016**

Source: USCIS, as of June 30, 2017. Notes: All data are based on approved petitions during the fiscal year. Per USCIS best practices, units of less than 10 are aggregated so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. Total number of beneficiaries includes initial, renewal, cap-subject, and cap-exempt petitions. Missing Education means the education field is not captured by the USCIS electronic data storage system. Average salary includes both full-time and part-time employment. In lieu of the required degree a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

| Employer Information | | | Petition Information by Employer | | |
|---|---|---|---|---|---|
| Employer Tax Number (Last 4 Digits) | Employer Name | Total Number of Approved Petitions | Average Salary ($) | Beneficary Degree/Diploma | |
| 4155 | COGNIZANT TECH SOLNS US CORP | 21459 | 84,303 | Missing Education | D |
| | | | | Bachelor's | 16528 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 4919 |
| 0235 | INFOSYS LTD | 12780 | 84,344 | Missing Education | D |
| | | | | Associate Degree | 23 |
| | | | | Bachelor's | 9940 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 2759 |
| | | | | Professional Degree | 49 |
| 9806 | TATA CONSULTANCY SVCS LTD | 11295 | 71,819 | Missing Education | D |
| | | | | Bachelor's | 9071 |
| | | | | Doctorate | D |
| | | | | Master's | 2221 |
| 2904 | ACCENTURE LLP | 6831 | 79,416 | Missing Education | D |
| | | | | Bachelor's | 5162 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 1661 |
| | | | | Professional Degree | D |
| 4401 | WIPRO LTD | 6819 | 73,937 | Missing Education | D |
| | | | | Associate Degree | 65 |
| | | | | Bachelor's | 4220 |
| | | | | High School | D |
| | | | | Master's | 2521 |
| 1430 | IBM CORPORATION | 3569 | 79,275 | Missing Education | D |
| | | | | Bachelor's | 2181 |
| | | | | Master's | 1385 |
| | | | | Professional Degree | D |
| | | | | Some College Credits | D |
| 4442 | MICROSOFT CORP | 3556 | 126,096 | Missing Education | D |
| | | | | Bachelor's | 1494 |
| | | | | Doctorate | 151 |
| | | | | High School | D |
| | | | | Master's | 1907 |
| | | | | Professional Degree | D |
| 5035 | HCL AMERICA INC | 3492 | 83,980 | Missing Education | D |
| | | | | Bachelor's | 2192 |
| | | | | Doctorate | D |
| | | | | Master's | 1295 |
| | | | | No Diploma | D |
| | | | | Some College Credits | D |
| 2696 | TECH MAHINDRA AMERICAS INC | 3344 | 76,737 | Missing Education | D |



**U.S. Citizenship and Immigration Services**

Source: USCIS, as of June 30, 2017. Notes: All data are based on approved petitions during the fiscal year. Per USCIS best practices, units of less than 10 are aggregated so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. Total number of beneficiaries includes initial, renewal, cap-subject, and cap-exempt petitions. While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the education field is not captured by the USCIS electronic data storage system. Average salary includes both full-time and part-time employment. In lieu of the required degree a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

| Employer Tax Number (Last 4 Digits) | Employer Name | Total Number of Approved Petitions | Average Salary ($S) | Beneficiary Degree/Diploma | |
|---|---|---|---|---|---|
| 4155 | COGNIZANT TECH SOLUTIONS US | 15547 | 82,351 | Missing Education | 30 |
| | | | | Bachelor's | 11988 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 3525 |
| 0235 | INFOSYS LIMITED | 7989 | 82,156 | Missing Education | 22 |
| | | | | Bachelor's | 6223 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 1709 |
| | | | | Professional | 31 |
| 9806 | TATA CONSULTANCY SERVICES LI | 7936 | 69,252 | Missing Education | D |
| | | | | Associates | D |
| | | | | Bachelor's | 6472 |
| | | | | Doctorate | D |
| | | | | Master's | 1461 |
| 4401 | WIPRO LIMITED | 5968 | 72,711 | Missing Education | D |
| | | | | Associates | 32 |
| | | | | Bachelor's | 3869 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 2055 |
| | | | | Professional | D |
| | | | | Some College | D |
| 2904 | ACCENTURE LLP | 5445 | 76,233 | Associates | D |
| | | | | Bachelor's | 4014 |
| | | | | Doctorate | D |

| | | | | High School | D |
|---|---|---|---|---|---|
| | | | | Master's | 1421 |
| | | | | Professional | D |
| 1430 | IBM CORPORATION | 2815 | 75,516 | Associates | D |
| | | | | Bachelor's | 1676 |
| | | | | High School | D |
| | | | | Master's | 1133 |
| | | | | No Diploma | D |
| | | | | Professional | D |
| 2696 | TECH MAHIDRA AMERICAS INC | 2553 | 73,456 | Missing Education | D |
| | | | | Bachelor's | 1693 |
| | | | | High School | 12 |
| | | | | Master's | 846 |
| | | | | Professional | D |
| 5035 | HCL AMERICA INC | 2548 | 81,317 | Missing Education | D |
| | | | | Bachelor's | 1616 |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Master's | 921 |
| | | | | Some College | D |
| 4442 | MICROSOFT CORP | 2523 | 120,944 | Missing Education | D |
| | | | | Bachelor's | 1154 |
| | | | | Doctorate | 126 |
| | | | | Master's | 1239 |
| | | | | No Diploma | D |
| | | | | Some College | D |
| 3581 | GOOGLE | 2023 | 130,872 | Missing Education | D |
| | | | | Bachelor's | 659 |
| | | | | Doctorate | 265 |
| | | | | Master's | 1094 |
| | | | | Professional | D |
| 5497 | IGATE TEC INC | 1997 | 69,342 | Bachelor's | 1574 |
| | | | | Doctorate | D |
| | | | | Master's | 422 |
| 6545 | AMAZON CORPORATE LLC | 1858 | 110,412 | Bachelor's | 565 |
| | | | | Doctorate | 77 |
| | | | | Master's | 1211 |
| | | | | Professional | D |
| | | | | Some College | D |
| 4513 | DELOITTE CONSULTING LLP | 1744 | 97,078 | Missing Education | D |
| | | | | Bachelor's | 1147 |
| | | | | Doctorate | D |
| | | | | Master's | 587 |
| | | | | Professional | D |
| 3900 | SYNEL CONSULTING INC | 1721 | 65,611 | Bachelor's | 1227 |
| | | | | High School | D |
| | | | | Master's | 492 |
| 4110 | APPLE INC | 1586 | 135,090 | Missing Education | D |

 **U.S. Citizenship and Immigration Services**

**Approved H-1B Petitions (Number, Salary, and Degree/Diploma) by Employer Fiscal Year 2014**

Source: USCIS, data as of August 10, 2018. Notes: All data are based on approved petitions during the fiscal year. Petitions approved in a fiscal year may be filed in previous fiscal years. Per USCIS best practices, units of less than 10 beneficiaries are masked to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the education field is not captured by the USCIS electronic data storage system. Average salary is based on data reported by the petitioner in the petition and may include part-time employment or may be reported inaccurately. Because USCIS data systems do not include hours worked, we are unable to identify salaries earned from part-time employment. Instead of the required degree, a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. The letter H replaces the value in the total column where one could deduce the value of D. Employers without tax identification numbers in our system were excluded.

| Employer Tax ID (Last 4 digits) | Employer Name | Number of Approved Petitions | Average Salary | Beneficiary's Degree/Diploma | |
|---|---|---|---|---|---|
| 4155 | COGNIZANT TECH SOLUTIONS US CORP | 16,511 | $77,504 | Bachelor's | 12,734 |
| | | | | Master's | 3,771 |
| | | | | Doctorate | D |
| | | | | Associate Degree | D |
| 9806 | TATA CONSULTANCY SVCS LTD | 8,830 | $67,450 | Bachelor's | 7,258 |
| | | | | Master's | 1,566 |
| | | | | Associate Degree | D |
| | | | | No Diploma | D |
| 0235 | INFOSYS LIMITED | 7,891 | $77,474 | Bachelor's | 6,279 |
| | | | | Master's | 1,573 |
| | | | | Professional Degree | 29 |
| | | | | Associate Degree | D |
| | | | | Doctorate | D |
| | | | | Some College | D |
| 4401 | WIPRO LIMITED | 7,789 | $71,109 | Bachelor's | 4,693 |
| | | | | Master's | 3,014 |
| | | | | Associate Degree | 54 |
| | | | | High School | 10 |
| | | | | Professional Degree | D |
| | | | | Missing Education | D |
| | | | | Doctorate | D |
| | | | | Some College | D |
| 2904 | ACCENTURE LLP | 4,286 | $72,256 | Bachelor's | 3,153 |
| | | | | Master's | 1,127 |
| | | | | Professional Degree | D |
| | | | | Doctorate | D |
| | | | | High School | D |
| 4442 | MICROSOFT CORP | 2,568 | $115,657 | Master's | 1,225 |
| | | | | Bachelor's | 1,204 |
| | | | | Doctorate | H |
| | | | | Professional Degree | D |
| 1430 | IBM INDIA PRIVATE LIMITED | 2,198 | $73,668 | Bachelor's | 1,353 |
| | | | | Master's | H |
| | | | | Professional Degree | D |
| 2696 | TECH MAHINDRA AMERICAS INC | 2,146 | $72,604 | Bachelor's | 1,429 |
| | | | | Master's | 699 |
| | | | | High School | 14 |
| | | | | Some College | D |
| | | | | Doctorate | D |
| 3900 | SYNTEL CONSULTING INC | 2,077 | $64,145 | Bachelor's | 1,455 |
| | | | | Master's | 618 |
| | | | | High School | D |
| | | | | Doctorate | D |
| 4303 | LARSEN & TOUBRO INFOTECH LIMITED | 1,918 | $69,125 | Bachelor's | 1,619 |
| | | | | Master's | 299 |



**U.S. Citizenship and Immigration Services**

**Approved H-1B Petitions (Number, Salary, and Degree/Diploma) by Employer Fiscal Year 2013**

Source: USCIS, data as of August 10, 2018. Notes: All data are based on approved petitions during the fiscal year. Petitions approved in a fiscal year may be filed in previous fiscal years. Per USCIS best practices, units of less than 10 beneficiaries are masked to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different. Missing Education means the education field is not captured by the USCIS electronic data storage system. Average salary is based on data reported by the petitioner in the petition and may include part-time employment or may be reported inaccurately. Because USCIS data systems do not include hours worked, we are unable to identify salaries earned from part-time employment. Instead of the required degree, a beneficiary may qualify based on a combination of education, training, and/or progressively responsible experience in the specialty that is equivalent to the completion of such a degree, and recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. The letter H replaces the value in the total column where one could deduce the value of D. Employers without tax identification numbers in our system were excluded.

| Employer Tax Number (Last 4 digits) | Employer Name | Number of Approved Petitions | Average Salary | Beneficiary's Degree/Diploma | |
|---|---|---|---|---|---|
| 4155 | COGNIZANT TECH SOLUTIONS US | 10,479 | $73,598 | Bachelor's | 8,041 |
| | | | | Master's Degree | 2,433 |
| | | | | Missing Education | D |
| | | | | Associate Degree | D |
| | | | | Doctorate | D |
| | | | | High School | D |
| | | | | Some College | D |
| 0235 | INFOSYS LIMITED | 9,185 | $74,204 | Bachelor's | 7,409 |
| | | | | Master's Degree | 1,711 |
| | | | | Professional Degree | 53 |
| | | | | Associate Degree | D |
| | | | | Missing Education | D |
| | | | | Doctorate | D |
| | | | | No Diploma | D |
| | | | | Some College | D |

| | | | | | |
|---|---|---|---|---|---|
| 9806 | TATA CONSULTANCY SERVICES LI | 6,118 | $65,545 | Bachelor's | 4,861 |
| | | | | Master's Degree | 1,251 |
| | | | | Associate Degree | D |
| | | | | Professional Degree | D |
| 4401 | WIPRO LIMITED | 6,046 | $68,593 | Bachelor's | 3,609 |
| | | | | Master's Degree | 2,349 |
| | | | | Associate Degree | 46 |
| | | | | High School | 18 |
| | | | | Professional Degree | 16 |
| | | | | Missing Education | D |
| | | | | No Diploma | D |
| | | | | Some College | D |
| 2904 | ACCENTURE LLP | 3,917 | $69,699 | Bachelor's | 2,875 |
| | | | | Master's Degree | 1,030 |
| | | | | High School | D |
| | | | | Associate Degree | D |
| | | | | Doctorate | D |
| 4442 | MICROSOFT CORP | 3,398 | $113,162 | Bachelor's | 1,767 |
| | | | | Master's Degree | 1,433 |
| | | | | Doctorate | 187 |
| | | | | Professional Degree | D |
| | | | | Some College | D |
| | | | | Missing Education | D |
| | | | | No Diploma | D |
| 5035 | HCL AMERICA INC | 1,878 | $71,851 | Bachelor's | 1,140 |
| | | | | Master's Degree | 713 |
| | | | | High School | 19 |
| | | | | Doctorate | D |
| | | | | Professional Degree | D |
| | | | | Some College | D |
| 1430 | IBM INDIA PRIVATE LIMITED | 1,787 | $72,048 | Bachelor's | 1,101 |
| | | | | Master's Degree | 681 |
| | | | | High School | D |
| | | | | Professional Degree | D |

# Exhibit 6

# ACCENTURE - HISTORICAL AND PROJECTED H-1B APPROVALS

Provides a breakdown of Accenture's H-1B filings, approvals by category and onshore H-1Bs holders since 2012; also projects 2017 data for the same

| | Historical H1B Visa Data | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|
| New Applications | Total H1B Visas Applied For | 3,726 | 3,814 | 4,246 | 8,914 | 3,751 | 1,353 |
| | Total H-1B Visas Received | 3,747 (100%) | 3,138 (82%) | 2,171 (51%) | 2,902 (33%) | 1,323 (35%) | 520* (38%) |
| | | | | | | | |
| Annual Totals | New H1B Visas Received | 3,747 | 3,138 | 2,171 | 2,902 | 1,323 | 520 |
| | Amendments | 0 | 0 | 0 | 297 | 1,295 | 1,249 |
| | Extensions | 253 | 808 | 2,068 | 2,080 | 3,473 | 2,767 |
| | Other (Change of Employer) | 300 | 415 | 434 | 619 | 673 | 451 |
| | Total* | 4,300 | 4,361 | 4,673 | 5,898 | 6,764 | 4,987 |
| | | | | | | | |
| Published | Published Accenture H-1B Ranking | CW Published Rank 5th – 4,037 | CW Published Rank 4th – 3,346 | CW Published Rank 5th – 2,376 | IW Published Rank 4th – 5,793 | Fall 2017 | Spring 2018 |
| Onshore | Onshore Accenture Actual H-1B Visa Holders @ FYE | 1,585 | 3,493 | 4,815 | 5,740 | 6,165 | 5,917 |

* Estimate with consideration that 30 cases still in RFE response process will be approved.

# Exhibit 7

# ACCENTURE'S VISA USAGE AS A % OF THE US WORKFORCE HAS INCREASED SINCE 2012 AND IS TAPERING OFF IN 2017

Visa holders onshore – totals and % of US workforce



*Excludes Avanade workforce

# Exhibit 8


my visa jobs.com

Browse Employers   or   enter employer name   [Search]

Home > Visa Sponsor > Accenture Llp - Visa

## Accenture Llp visa:24299 rank:11

Edit or Claim

161 N Clark Street Chicago, IL 60601

Alert: 303 LCs denied or withdrawn!

Report  Contact  Visa  Salary  Occupation  Location  Review

| | LCA filing for H1B Visa Jobs | | | |
|------|-----------|---------------------|--------|-----------|
| | Certified | Certified-Withdrawn | Denied | Withdrawn |
| 2019 | 5512 | 29 | 69 | 44 |
| 2018 | 6127 | 118 | 4 | 132 |
| 2017 | 6631 | 18 | 9 | 32 |
| 2016 | 9376 | 51 | 13 | 39 |
| 2015 | 9472 | 62 | 16 | 55 |
| 2014 | 5452 | 37 | 7 | 13 |
| 2013 | 4930 | 155 | 7 | 9 |
| 2012 | 2629 | 3 | 13 | 8 |
| 2011 | 1576 | 27 | 17 | 8 |

| | LC filing for green card under PERM | | | |
|------|-----------|-------------------|--------|-----------|
| | Certified | Certified-Expired | Denied | Withdrawn |
| 2019 | 173 | 123 | 1 | 8 |
| 2018 | 191 | 94 | 0 | 2 |
| 2017 | 92 | 77 | 1 | 1 |
| 2016 | 66 | 73 | 1 | 8 |
| 2015 | 36 | 23 | 0 | 5 |
| 2014 | 14 | 6 | 0 | 0 |
| 2013 | 6 | 2 | 0 | 1 |

| 2012 | 8 | 3 | 1 | 1 |
|------|---|---|---|---|
| 2011 | 2 | 3 | 0 | 0 |

From 2017 to 2019, Accenture Llp has submitted totally 18725 Labor Condition Application(LCA) for H1B Visa, 763 Labor Certification(LC) for Green Card under Program Electronic Review Management (PERM).

|            | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 |
|------------|------|------|------|------|------|------|------|------|------|------|
| H1B Visa   | 170  | 432  | 253  | 188  | 297  | 537  | 340  | 357  | 81   | 75   |
| Green Card | 12   | 0    | 2    | 0    | 0    | 24   | 11   | 19   | 4    | 23   |



Number of Petitions(2001-2010)

The above chart and table report the number of Labor Condition Applications(LCA) and Labor Certifications(LC) filed by Accenture Llp for H1B Visa and employment based Green Card. The data only indicates the number of applications filed by Accenture Llp. It does not mean that Accenture Llp actually got the visa and hired the workers.

Labor Condition Application(LCA) is different from Labor Certification(LC). LC is for employment based green card while LCA is for H1B visa.

Our LCA data not only includes those filed by Accenture Llp for new h1b visa applications, but also those for H1B Visa tranfers and renews. Accenture Llp should also file a new Labor Condition Application(LCA) for an H1B Visa petition if the foreign worker changes work location within Accenture Llp, because the prevailing wage will change. The Immigration and Nationality Act requires that the hiring of a foreign worker will not adversely affect the wages and working conditions of U.S. workers comparably employed.

New Jobs | Green Card | H1B Visa | Student Visa | Work Visa | Immigration Attorney | About Us | Contact Us | FAQ | Visa Reports

Copyright © 2006 - 2020.

# Exhibit 9

## Reddy, Ranpal

| | |
|---|---|
| **From:** | Ashok Bhosle, Nilesh |
| **Sent:** | Wednesday, December 2, 2015 1:12 AM |
| **To:** | Ghosh, Anirudh |
| **Cc:** | Menezes, Vivian; Rai, Ashish; Reddy, Ranpal |
| **Subject:** | RE: FY 16 H1 drive data - |
| **Attachments:** | H1B 2014 Status Report - 14th October 2014.xlsx; H1B 2015 Drive Status Report as on 23 Nov 2015.xlsx |

Hi Ranpal,

On your query #2,#3 and #4. Yes your observation is right, 91% of planned H1B (FY16) are from level 10-12, however IDC leadership takes a call to decide the H1B drive level %s and team help them to drive it and fulfill the designed pyramid, so team would be able to action to revise the pyramid only when the they will receive directives from leadership, hence we will have to open up a channel to communicate NA Leadership expectations with IDC.

On query #1, let's hear it from Anirudh on below details.

Hi Anirudh,

I had a look at FY15 drive data and I compared their current status. please correct me if my understanding is wrong.

- We received total of 9619 nominations out of which, 7978 (highlighted in red +blue+green) nominations filed with USCIS.
- Amongst those 7978 filed nominations approx. 2631 (highlighted in red) cases got approved and 74 (highlighted blue) are in process.
- Total of 5273 nominations were rejected/withdrawn by USCIS due to various reasons.
- So the FY15 approved %s is not same as total nominations filed with USCIS.

| Status | No. | Comments |
|---|---|---|
| H1B Approved for incorrect DOB. Requested USCIS for correction | 6 | |
| Contacted USCIS regarding status of H-1B | 5 | |
| H1B Approved for incorrect name. Requested USCIS for correction | 10 | |
| H1B Approved, but originals not received. Attorneys have filed for duplicate approval notice with USCIS | 9 | |
| H1B Petition Approved | 2598 | |
| Received H-1B receipt notice from USCIS (Selected in Lottery) | 3 | |
| Received H-1B RFE from USCIS | 8 | Filed wit |
| Response to H-1B Request for Evidence notice filed with USCIS | 66 | |
| H1B Denied | 27 | |
| H-1B withdrawn (post-RFE) | 117 | Filed with US |
| H-1B petition returned by USCIS due to cap numerical limitation | 5129 | |
| H-1B withdrawn | 1 | |
| H-1B Withdrawn post approval due to resignation | 1 | |
| Cancelled | 155 | |
| Cancelled By The Assignee | 1 | Nev |
| Initiation Cancelled - Not Cleared by RMG | 1328 | Ca |
| Initiation Cancelled due to Employee Documents Not Provided | 34 | |
| Initiation Cancelled due to Not Eligible | 91 | |
| Initiation Cancelled due to Project Documents Not Provided | 30 | |

| Total | 9619 |

All,

I have validated FY14 drive data with GCP tracker data and got surprising results. Attached analysis file.

- Approx. 29 cases were marked as 'Not selected in lottery' but GCP tracker is showing those resources travelled on GCP in FY 15. Are those resource's visa got processed separately after FY 14 drive?
- 17 cases with status as 'Cancelled' in FY 14 drive, but those resource travelled on GCP in FY 15. Again these cases processed separately after FY14 drive?

Regards,
Nilesh, PMP
PCS Managed Shared Services
India, Mumbai Delivery Centre
Cell: +91 7738969993
Email: nilesh.ashok.bhosle@accenture.com

**From:** Reddy, Ranpal
**Sent:** Tuesday, December 01, 2015 1:19 PM
**To:** Ghosh, Anirudh <anirudh.ghosh@accenture.com>; Ashok Bhosle, Nilesh <nilesh.ashok.bhosle@accenture.com>
**Cc:** Menezes, Vivian <vivian.menezes@accenture.com>; Rai, Ashish <ashish.rai@accenture.com>
**Subject:** RE: FY 16 H1 drive data -

Anirudh – Thanks for sharing this summary data. I wish you had included the base file for us to do any custom analysis from our end. Anyways, here are few questions / comments:

1. It is unbelievable that "% Nomination Filed in FY15 Drive" and "% FY15 Approved H1Bs" is exactly the same. I wonder if it is really accurate???
2. NA Leadership team is certainly not expecting 91% of new H1Bs planned to be filed in FY16 are for career levels 10 and below. Some of them may be promoted when their H1B petition is approved and ready to travel but it is still very high % for such lower levels.
3. As explained on the call, USCIS doesn't take lottery based on career levels. So it is not necessary that the approvals would come in line with applied %s.
4. Since the H1B drive is being kicked off today at IDC, let the nominations come in from IGs but we may recommend changing the %s later during the drive and/or when they are actually filed.
5. Help us analyze FY14 approval pyramid and FY15 actual travels pyramid to arrive at some conclusions. Since FY15 approvals pyramid is still premature with only few travels in Oct and Nov, it is difficult to arrive at any conclusions. Ping me your evening time, if you have any questions.
6. Also help us with the current supply that could travel in FY16 (by levels, skills, visa type etc). This could dictate what levels to file in FY16.

I will provide further feedback post my discussion with Jeff / Sandra. Thanks.

Nilesh – Please help Anirudh collect and do the analysis for us.

Regards - Ranpal
-------------------------------------------------
North America GCP Lead | Lync #: 1-469-665-5012

**From:** Ghosh, Anirudh
**Sent:** Monday, November 30, 2015 8:49 AM

2

**To:** Reddy, Ranpal <ranpal.reddy@accenture.com>
**Cc:** Menezes, Vivian <vivian.menezes@accenture.com>; Rai, Ashish <ashish.rai@accenture.com>
**Subject:** FY 16 H1 drive data -

Hi Ranpal – As discussed in the call today I am sharing the data requested. Please let us know any feedback by tomorrow.

Regards

Anirudh

1. Offshore visa enabled

| Level | Offshore Visa enabled HC | Approval Notice received in FY15 Drive | Total Offshore Visa enabled HC |
|---|---|---|---|
| AL | 10 | 0 | 10 |
| SM | 62 | 0 | 62 |
| M | 170 | 14 | 184 |
| AM | 482 | 233 | 715 |
| TL | 656 | 559 | 1215 |
| SSE | 380 | 832 | 1212 |
| SE | 44 | 896 | 940 |
| ASE | 0 | 160 | 160 |
| Total | 1804 | 2694 | 4498 |

| Capability | Offshore Visa enabled HC | Approval Notice received in FY15 Drive | Total Offshore Visa enabled HC |
|---|---|---|---|
| Data & Analytics | 159 | 263 | 422 |
| Delivery Lifecycle | 37 | 76 | 113 |
| Hostcentric Platform | 71 | 67 | 138 |
| Industry Applications | 36 | 48 | 84 |
| Java Technology Platform | 143 | 254 | 397 |
| Microsoft Platform | 203 | 348 | 551 |
| Miscellaneous | 464 | 504 | 968 |
| Oracle | 174 | 274 | 448 |
| SAP | 273 | 457 | 730 |
| Testing | 244 | 403 | 647 |
| Total | 1804 | 2694 | 4498 |

2. % Distribution level wise FY 15

3

| FY15 - Pyramid % | | | | | |
|---|---|---|---|---|---|
| | ASE | SE | SSE | TL | A |
| % FY15 nomination Targets | 30% | 30% | 20% | 15% | 5 |
| % Nomination filed in FY15 drive | 6% | 33% | 31% | 21% | 9 |
| % Approval received as on 11th Sep 15 | 6% | 33% | 31% | 21% | 9 |
| % FY15 Approved H1Bs | 6% | 33% | 31% | 21% | 9 |

3. Pyramid FY 16

Pyramid for H1 drive

| Levels | Pyramid |
|---|---|
| Accenture Leadership | - |
| 06-Senior Manager | - |
| 07-Manager | - |
| 08-Associate Manager | 3% |
| 09-Team Lead | 6% |
| 10-Senior Software Engineer | 36% |
| 11-Software Engineer | 40% |
| 12- ASE | 15% |

4

# Exhibit 10

## Reddy, Ranpal

| | |
|---|---|
| **From:** | Reddy, Ranpal |
| **Sent:** | Tuesday, January 17, 2017 2:39 PM |
| **To:** | Ding, Peggy C.; Ellison, Janine R.; Biviji, Mustafa T. |
| **Cc:** | Patterson, William B.; Sultana, Asma |
| **Subject:** | RE: Visa Utilization Report July 19, 2016 |

Here is my observation from the data in this mail trail and few recommendations based on my experience with US immigration and GCP over the last few years:

1. Based on the stats provided by Asma, IDC currently has 729 L10 and 366 L11 H1B petition approved employees at offshore (Jan 12th mail has these #s as 726 and 153 respectively – Not sure the reason for this discrepancy). And we currently have 1499 L10 and 219 L11 on GCP (landed). Together this constitutes about 2700+ at these two levels that we are trying reduce. So in my opinion, we may not really need to enable anymore new at these levels in this year H1B drive.
2. Not sure how many of the folks are really tenured (at least 2 years) at those levels. Assuming that about 25% get promoted, we will still have 75% at the same levels even after Dec 1st, 2017.
3. Since USCIS doesn't take lottery based on our CLs, filing new H1Bs for L10 and L11 could hurt (of course, possibly help too) success rate at other levels. But not sure if we want to take the risk.
4. If the total petitions filed in this year are significantly lower compared to last year (say 85k or 100k including graduates from US universities), the success rate from the lottery could be much higher than 34%.

Having said that, let me do some analysis by their platform / capability / skills and come back to you with options and recommendation.

Regards - Ranpal
------------------------------------------------
North America GCP Lead | Phone#: 1-469-665-5012

**From:** Ding, Peggy C.
**Sent:** Tuesday, January 17, 2017 12:28 PM
**To:** Ellison, Janine R. <janine.r.ellison@accenture.com>; Sultana, Asma <asma.sultana@accenture.com>; Biviji, Mustafa T. <mustafa.t.biviji@accenture.com>
**Cc:** Patterson, William B. <william.b.patterson@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** RE: Visa Utilization Report July 19, 2016

### ***Confidential - For Company Internal Use Only***

I have just asked Pat and Ranpal to get the latest #s and pull together a picture of this as I want to look at it against some of the other plans we have. I understand we are behind but we have to relook at this holistically. If they can pull the info together today, we can look at it tomorrow. I want to look at PDC and IDC.

**From:** Ellison, Janine R.
**Sent:** Tuesday, January 17, 2017 8:58 AM
**To:** Sultana, Asma <asma.sultana@accenture.com>; Biviji, Mustafa T. <mustafa.t.biviji@accenture.com>
**Cc:** Ding, Peggy C. <peggy.c.ding@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Subject:** RE: Visa Utilization Report July 19, 2016

1

# Exhibit 11

Exhibit 12

Reddy, Ranpal

| | |
|---|---|
| **From:** | Ding, Peggy C. |
| **Sent:** | Thursday, March 7, 2019 5:33 PM |
| **To:** | Ellison, Janine R. |
| **Cc:** | VanOverbeke, Amanda M.; Patterson, William B.; Reddy, Ranpal |
| **Subject:** | Re: H1B 2019 Candidate Selection Status |

Janine—I'm very worried about this result. Is there a way to tell if people have responded and didnt attest or just didn't respond. As we need to know what's going on here. Annette is willing to send a note or something but if it's bc no demand that is one thing but if it's bc no action we can fix. I know we are pushing deadlines. Can we touch base tomorrow am to really go thru the #s and what else we could do. Thanks

Sent from my iPhone

On Mar 7, 2019, at 5:54 PM, Ellison, Janine R. <janine.r.ellison@accenture.com> wrote:

***Confidential - For Company Internal Use Only***

I can't really say why the MD are not actioning the items on the sharepoint site. There has been training, multiple emails from you and PM team and various pings. It may be that the demand is not really there – we are seeing this in other areas like requesting premium processing for the cases from last year's cap – we could have moved 200ish to premium processing and we moved 11.

Janine Ellison
Accenture
Americas People Mobility Director
Office: (312) 693-4108
Mobile: (630) 287-1614

Best People · Respect for the Individual · Integrity · Stewardship · Client Value Creation · One Global Network

**Visit Our Tools:** NEW! People Mobility Gateway – Raise a request and take the required actions, even if a visa is not required, when traveling outside your home country on behalf of the Company | Accenture Support – Submit & track inquiries online. | People Mobility Portal – Information, actions, tools & resources for international travel | People Mobility Policy Highlights – P710 & P44 employee & business overviews | People Mobility News – Subscribe to our site to stay informed of People Mobility relevant communications | PM.Avanade@accenture.com– Support for Avanade employees

Visit North America PeopleLink for immediate answers to common questions or to find resources that support your inquiries in: HR, Finance, Payroll, Facilities & Services and general People Mobility questions.

1

This message is for the designated recipient only and may contain privileged, proprietary or otherwise confidential information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

**From:** Ding, Peggy C.
**Sent:** Thursday, March 7, 2019 1:54 PM
**To:** Ellison, Janine R. <janine.r.ellison@accenture.com>; VanOverbeke, Amanda M. <amanda.m.vanoverbeke@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** RE: H1B 2019 Candidate Selection Status

That is atrocious! Is that all related to ROC?

Peggy C. Ding
Managing Director, Director of Operations
Accenture Technology North America
Mobile: +1 214 289 3181

**From:** Ellison, Janine R.
**Sent:** Thursday, March 7, 2019 10:31 AM
**To:** VanOverbeke, Amanda M. <amanda.m.vanoverbeke@accenture.com>; Ding, Peggy C. <peggy.c.ding@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** RE: H1B 2019 Candidate Selection Status

<div align="center">***Confidential - For Company Internal Use Only***</div>

Yes

Janine Ellison
Accenture
Americas People Mobility Director
Office: (312) 693-4108
Mobile: (630) 287-1614

<div align="center">Best People · Respect for the Individual · Integrity · Stewardship · Client Value Creation · One Global Network</div>

**Visit Our Tools:** NEW! People Mobility Gateway – Raise a request and take the required actions, even if a visa is not required, when traveling outside your home country on behalf of the Company | Accenture Support – Submit & track inquiries online. | People Mobility Portal – Information, actions, tools & resources for international travel | People Mobility Policy Highlights – P710 & P44 employee & business overviews | People Mobility News – Subscribe to our site to stay informed of People Mobility relevant communications | PM.Avanade@accenture.com – Support for Avanade employees

Visit North America PeopleLink for immediate answers to common questions or to find resources that support your inquiries in: HR, Finance, Payroll, Facilities & Services and general People Mobility questions.

This message is for the designated recipient only and may contain privileged, proprietary or otherwise confidential information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

**From:** VanOverbeke, Amanda M.
**Sent:** Thursday, March 7, 2019 9:08 AM
**To:** Ellison, Janine R. <janine.r.ellison@accenture.com>; Ding, Peggy C. <peggy.c.ding@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** RE: H1B 2019 Candidate Selection Status

So we'll have 800 vs. the 1800 we anticipated?

**From:** Ellison, Janine R.
**Sent:** Thursday, March 7, 2019 8:24 AM
**To:** Ding, Peggy C. <peggy.c.ding@accenture.com>; VanOverbeke, Amanda M. <amanda.m.vanoverbeke@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** FW: H1B 2019 Candidate Selection Status

***Confidential - For Company Internal Use Only***

Hello – I wanted to forward the email below on the current status for the H-1B cap for GCP. We will likely get another 100 cases thru the process based on continuing activity but I expect us to file 700ish cases for GCP. We will also be filing about 100 cases for IS.

You can see all the things that were done to influence this number. We will need to close cases that have not completed the required steps.

Thank you

Janine Ellison
Accenture
Americas People Mobility Director
Office: (312) 693-4108
Mobile: (630) 287-1614

**Best People · Respect for the Individual · Integrity · Stewardship · Client Value Creation · One Global Network**

**Visit Our Tools:** NEW! People Mobility Gateway – Raise a request and take the required actions, even if a visa is not required, when traveling outside your home country on behalf of the Company | Accenture Support – Submit & track inquiries online. | People Mobility Portal –

Information, actions, tools & resources for international travel | People Mobility Policy Highlights – P710 & P44 employee & business overviews | People Mobility News – Subscribe to our site to stay informed of People Mobility relevant communications |PM.Avanade@accenture.com– Support for Avanade employees

Visit North America PeopleLink for immediate answers to common questions or to find resources that support your inquiries in: HR, Finance, Payroll, Facilities & Services and general People Mobility questions.

This message is for the designated recipient only and may contain privileged, proprietary or otherwise confidential information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

**From:** Mohan, Pramod
**Sent:** Thursday, March 7, 2019 8:09 AM
**To:** Sultana, Asma <asma.sultana@accenture.com>
**Cc:** Ellison, Janine R. <janine.r.ellison@accenture.com>; Joseph, Johny <johny.joseph@accenture.com>; Ramachandran, Harish <harish.ramachandran@accenture.com>; Varadaraj, Krupakaran <krupakaran.varadaraj@accenture.com>
**Subject:** H1B 2019 Candidate Selection Status

Hi Asma,

This is to inform you that we have major challenges with regards to RTC (Right to Control) letter and address change.

Delay in RTC from US MDs – As of March 7th we have received RTC only for 600 nominations by pushing the MDs in all possible ways listed below.

1. Sent multiple reminder emails to MDs
2. Sent emails to offshore Project Managers to follow up with MDs
3. Janine escalated to Peggy C Ding. Subsequent to that, Peggy sent email to MDs with a final dead line of March 6th to complete the RTC task
4. We formed a team including IBP to reach out to MDs individually. Team worked on late evening IST to provide support during US hours and set up time with MD's to help them complete the RTC task.
5. We again followed up with MDs pinging through Skype. If MD's are offline, DND, meetings etc.. team scheduled calendar invite for the subsequent days to explain and help them complete the RTC task.
6. Also, we had screen sharing through skype and tried to help MDs completing the RTC task on the call.
7. If the MD's are not accepting the calendar invites, team continuously followed up for 2 to 3 days to help them.
8. Couple of leads supported during US time to address any complex queries from MDs.
9. While we contacted the MDs, some of them provided alternate MD's name for which the emails were triggered again to new MDs.

**Change in US work location details from US MDs** – We are receiving many address change request from the MDs stating that the original address provided in the Project Manager Questionnaire (Provided by offshore Project Manager) & Target List (Provided by RMG) is incorrect.

This is increasing our effort, as we have to withdraw the LCA and procure new LCA which is duplicating the work. Though we are trying our best to accommodate all these changes, we foresee there may be many cases which would not meet the April 1st USCIS filing dead line.

Considering the RTCs & Client Contact availability, we will be able to process approximately 600 (as of today) for this year H1B Candidate Selection Process. We are consolidating the report and will be sharing you the summary IG/OG wise by tomorrow. You may please circulate to the business accordingly..

**Thanks & Regards,**
**Pramod Mohan**

Accenture Solutions Private Limited
People Mobility – India

**Visit Our Tools:** NEW! People Mobility Gateway – Raise a request and take the required actions, even if a visa is not required, when traveling outside your home country on behalf of the Company | Accenture Support – Submit & track inquiries online | People Mobility Portal – Information, actions, tools & resources for international travel | People Mobility Policy Highlights – P710 & P44 employee & business overviews | People Mobility News – Subscribe to our site to stay informed of People Mobility relevant communications | PM.Avanade@accenture.com support for avanade employees..

https://in.accenture.com/peoplemobilityindia/ - For basic information on visa/immigration matters for travelers from India Helpline numbers for immigration queries 000-800-442-0110 - Calling from India (or) refer https://in.accenture.com/peoplemobility/contact-us/
Leadership Hotline for Senior Managers & Above – 080-45591111 (8AM – 5PM IST - All Business days)

5

Exhibit 13

**U.S. Citizenship and Immigration Services**
**Petition for a Nonimmigrant Worker (Form I-129)(L-1B Class Preference)**
**Approvals and Denials**
**Calendar Years 2003 - 2011**

| Calendar Year | Approvals | Denials | Approval Rate |
|---|---|---|---|
| CY 2003 | 19,161 | 1,867 | 91% |
| CY 2004 | 20,270 | 2,287 | 90% |
| CY 2005 | 23,845 | 1,652 | 94% |
| CY 2006 | 28,238 | 1,709 | 94% |
| CY 2007 | 29,801 | 2,213 | 93% |
| CY 2008 | 20,578 | 5,864 | 78% |
| CY 2009 | 15,826 | 5,705 | 74% |
| CY 2010 | 16,101 | 4,579 | 78% |
| CY 2011 | 14,246 | 5,353 | 73% |

**Form I-129 Approval Rates**

**Form I-129 Total Number of Approvals/Denials**

Class Preference Defined:

L-1B: Nonimmigrant classification enables a U.S. employer to transfer an employee with specialized knowledge relating to the organization's interests from one of its affiliated foreign offices to one of its offices in the United States

System: CIS Consolidated Operational Repository (CISCOR)

Office of Performance and Quality (OPQ), Data Analysis and Reporting Branch (DARB) DL

Parameter

Date: CY2003 through CY2011

Form Type: I-129, Class Preference L-1B

Data Type: Approvals and Denials; Approval and Denial Rates

# Exhibit 14



**U.S. Citizenship and Immigration Services**

**Approved L-1 Petitions by Employer Fiscal Year 2019**

Source: USCIS. Data as of October 29, 2019. Notes: All data are based on approved petitions during the fiscal year. Per USCIS best practices, units of less than 10 are masked so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. "H" replaces a value from which the value of D in the same column or row could be deduced. "Employer Industry" is based on the employer NAICS code, not job code. Some employer industry information is missing from our data system and thus is marked "Not Recorded". Employers with missing tax identification numbers in our system were excluded. Counts of approved petitions do not include individuals who obtained L classification through consular processing under a previously approved blanket L petition. While some company names may appear multiple times, USCIS enters data as listed on the petition and does not combine companies, even where the names are the same, because in all cases the employer tax identification numbers are different on the petition. The L-1A nonimmigrant classification refers to intracompany transfers of corporate managers and executives. The L-1B nonimmigrant classification refers to intracompany transfers of employees who possess "specialized knowledge." The L2 classification refers to "blanket" L petitions and may be used by entities involved in commercial trade or services. While the term "L-1" is used for visa issuance and admission purposes, USCIS uses the "A" and "B" distinctions internally for statistical and other purposes. A very small number of L-1 petitions are not specified as A or B in USCIS electronic system of record, thus is reported as "L-1". The L-1 petition may be filed to sponsor an alien currently in a different nonimmigrant classification, or with no classification if outside the U.S., for an initial period of L-1 employment, or to extend or change the authorized stay of an alien currently in L-1 status. An employer may file an L-1 petition to sponsor an alien who currently has L-1 nonimmigrant status working for another employer or to amend a previously approved petition. Due to the transactional nature of the report, revocations, appeals, and consular returns may cause the counts of approved petitions to change slightly over time.

| EMPLOYER TAX NUMBER (LAST 4 DIGITS) | EMPLOYER NAME | EMPLOYER INDUSTRY | TOTAL APPROVED PETITIONS | EMPLOYMENT TYPE | CLASS PREFERENCE | APPROVED PETITIONS BY CLASS PREFERENCE |
|---|---|---|---|---|---|---|
| 9806 | TATA CONSULTANCY SVCS LTD | Custom Computer Programming Services | 1,542 | INITIAL | L1A | 324 |
| | | | | INITIAL | L1B | 26 |
| | | | | CONTINUING | L1A | 1,111 |
| | | | | CONTINUING | L1B | 81 |
| 0235 | INFOSYS LTD | Custom Computer Programming Services | 517 | INITIAL | L1A | 37 |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1 | H |
| | | | | CONTINUING | L1A | 399 |
| | | | | CONTINUING | L1B | 65 |
| 4687 | AMAZON COM SVCS INC F/K/A AMAZON F | Electronic Shopping and Mail-Order Houses | 455 | INITIAL | L1A | 55 |
| | | | | INITIAL | L1B | 86 |
| | | | | CONTINUING | L1A | 130 |
| | | | | CONTINUING | L1B | 184 |
| 4155 | COGNIZANT TECH SOLNS US CORP | Computer Systems Design Services | 382 | INITIAL | L1A | 27 |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 331 |
| | | | | CONTINUING | L1B | H |
| 4513 | DELOITTE CONSULTING LLP | Management Consulting Services | 305 | INITIAL | L1A | 72 |
| | | | | INITIAL | L1B | 99 |
| | | | | CONTINUING | L1A | 60 |
| | | | | CONTINUING | L1B | 74 |
| 1985 | IMB CORPORATION | Computer Systems Design and Related Services | 280 | INITIAL | L1A | 39 |
| | | | | INITIAL | L1B | 54 |
| | | | | CONTINUING | L1A | 125 |
| | | | | CONTINUING | L1B | 62 |
| 2696 | TECH MAHINDRA AMERICAS INC | Custom Computer Programming Services | 275 | INITIAL | L1A | 58 |
| | | | | INITIAL | L1B | 37 |
| | | | | CONTINUING | L1A | 155 |
| | | | | CONTINUING | L1B | 25 |
| 2661 | SCHLUMBERGER TECHNOLOGY CORP | Support Activities for Oil and Gas Operations | 247 | INITIAL | L1A | D |
| | | | | INITIAL | L1B | 126 |
| | | | | CONTINUING | L1A | 71 |
| | | | | CONTINUING | L1B | H |
| 8826 | GENPACT LLC | Custom Computer Programming Services | 190 | INITIAL | L1A | 49 |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 128 |
| | | | | CONTINUING | L1B | D |
| 0648 | SAPIENT CORPORATION | Custom Computer Programming Services | 152 | INITIAL | L1A | H |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 82 |
| | | | | CONTINUING | L1B | 37 |
| 2883 | VIRTUSA CORPORATION | Custom Computer Programming Services | 149 | INITIAL | L1A | 14 |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 89 |
| | | | | CONTINUING | L1B | 41 |
| | | | | CONTINUING | L2 | D |
| 7119 | DXC TECHNOLOGY SERVICES LLC | Custom Computer Programming Services | 149 | INITIAL | L1A | 13 |
| | | | | INITIAL | L1B | 21 |
| | | | | CONTINUING | L1A | 20 |
| | | | | CONTINUING | L1B | 95 |
| 5035 | HCL AMERICA INC | Custom Computer Programming Services | 142 | INITIAL | L1A | D |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 77 |
| | | | | CONTINUING | L1B | 57 |
| 2904 | ACCENTURE LLP | Management, Scientific, and Technical Consulting Services | 138 | INITIAL | L1A | H |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 109 |
| 4401 | WIPRO LIMITED | Custom Computer Programming Services | 130 | INITIAL | L1A | D |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 100 |
| | | | | CONTINUING | L1B | 22 |
| | | | | CONTINUING | L2 | D |
| 3695 | FISERV SOLUTIONS LLC | Data Processing, Hosting, and Related Services | 126 | INITIAL | L1A | D |
| | | | | INITIAL | L1B | H |
| | | | | CONTINUING | L1A | 44 |
| | | | | CONTINUING | L1B | 58 |
| 5929 | CAPGEMINI AMERICA INC | Management, Scientific, and Technical Consulting Services | 125 | INITIAL | L1A | 13 |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 89 |
| | | | | CONTINUING | L1B | 20 |
| | | | | CONTINUING | L2 | D |
| 1430 | IBM INDIA PRIVATE LIMITED | Computer Systems Design and Related Services | 121 | INITIAL | L1A | H |
| | | | | INITIAL | L1B | D |
| | | | | CONTINUING | L1A | 76 |
| | | | | CONTINUING | L1B | 31 |
| 5596 | ERNST & YOUNG U S LLP | Offices of Certified Public Accountants | 107 | INITIAL | L1A | H |

**Approved L-1 Petitions by Employer - FY2018**

Source: USCIS. Data as of Dec. 31, 2018. Notes: All data are based on approved petitions during the fiscal year. Per USCIS best practices, units of less than 10 are aggregated so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. "Employer Industry" is based on the employer NAICS code, not job code. Some employer industry information is missing from our data system and thus is marked "Not Recorded". Employers with missing tax identification numbers in our system were excluded. Counts of approved petitions do not include individuals who obtained L classification through consular processing under a previously approved blanket L petition. While some company names may appear multiple times, USCIS enters data as listed on the petition and does not combine companies, even where the names are the same, because in all cases the employer tax identification numbers are different on the petition. This report includes only petitions that have L-1A, L-1B, and LZ nonimmigrant classifications. A very small number (34) L-1 petitions without specific classification for L-1A or L-1B are excluded in this report. The L-1A nonimmigrant classification refers to intracompany transfers of corporate managers and executives. The L-1B nonimmigrant classification refers to intracompany transfers of employees who possess "specialized knowledge." The LZ classification refers to "blanket" L petitions and may be used by entities involved in commercial trade or services. While the term "L-1" is used for visa issuance and admission purposes, USCIS uses the "A" and "B" distinctions internally for statistical and other purposes.

| EMPLOYER TAX ID (last 4 digits) | EMPLOYER NAME | EMPLOYER INDUSTRY | TOTAL APPROVED PETITIONS | EMPLOYMENT TYPE | CLASS PREFERENCE | APPROVED PETITIONS BY CLASS PREFERENCE |
|---|---|---|---|---|---|---|
| 9806 | TATA CONSULTANCY SVCS LTD | Custom Computer Programming Services | 1641 | Initial | L-1A | 381 |
| | | | | Initial | L-1B | 19 |
| | | | | Continuing | L-1A | 1172 |
| | | | | Continuing | L-1B | 69 |
| 4155 | COGNIZANT TECH SOLUTIONS US CORP | Computer Systems Design Services | 560 | Initial | L-1A | 104 |
| | | | | Initial | L-1B | 14 |
| | | | | Continuing | L-1A | 412 |
| | | | | Continuing | L-1B | 30 |
| 4513 | DELOITTE CONSULTING LLP | Management Consulting Services | 493 | Initial | L-1A | 79 |
| | | | | Initial | L-1B | 281 |
| | | | | Continuing | L-1A | 73 |
| | | | | Continuing | L-1B | 60 |
| 4687 | AMAZON FULFILLMENT SVCS INC | Not Recorded | 345 | Initial | L-1A | 31 |
| | | | | Initial | L-1B | 70 |
| | | | | Continuing | L-1A | 104 |
| | | | | Continuing | L-1B | 140 |
| 0235 | INFOSYS LTD | Custom Computer Programming Services | 309 | Initial | L-1A | 17 |
| | | | | Initial | L-1B | 13 |
| | | | | Continuing | L-1A | 240 |
| | | | | Continuing | L-1B | 38 |
| | | | | Continuing | LZ | D |
| 1985 | IBM CORPORATION | Computer Systems Design and Related Services | 259 | Initial | L-1A | 24 |
| | | | | Initial | L-1B | 27 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Continuing | L-1A | 132 |
| | | | | Continuing | L-1B | 76 |
| 2696 | TECH MAHINDRA AMERICAS INC | Custom Computer Programming Services | 240 | Initial | L-1A | 57 |
| | | | | Initial | L-1B | 24 |
| | | | | Continuing | L-1A | 130 |
| | | | | Continuing | L-1B | 29 |
| 8826 | GENPACT LLC | Custom Computer Programming Services | 160 | Initial | L-1A | 45 |
| | | | | Initial | L-1B | D |
| | | | | Continuing | L-1A | 101 |
| | | | | Continuing | L-1B | D |
| | | | | Continuing | LZ | D |
| 4401 | WIPRO LIMITED | Custom Computer Programming Services | 151 | Initial | L-1A | D |
| | | | | Continuing | L-1A | 116 |
| | | | | Continuing | L-1B | 27 |
| | | | | Continuing | LZ | D |
| 5596 | ERNST & YOUNG US LLP | Offices of Certified Public Accountants | 134 | Initial | L-1A | 25 |
| | | | | Initial | L-1B | 40 |
| | | | | Continuing | L-1A | 58 |
| | | | | Continuing | L-1B | 10 |
| | | | | Continuing | LZ | D |
| 2661 | SCHLUMBERGER TECHNOLOGY CORP | Support Activities for Oil and Gas Operations | 116 | Initial | L-1A | D |
| | | | | Initial | L-1B | 30 |
| | | | | Continuing | L-1A | 50 |
| | | | | Continuing | L-1B | 33 |
| 0648 | SAPIENT CORPORATION | Custom Computer Programming Services | 115 | Initial | L-1A | 15 |
| | | | | Initial | L-1B | D |
| | | | | Continuing | L-1A | 66 |
| | | | | Continuing | L-1B | 30 |
| 1430 | IBM INDIA PRIVATE LTD | Computer Systems Design and Related Services | 114 | Initial | L-1A | 18 |
| | | | | Initial | L-1B | D |
| | | | | Continuing | L-1A | 69 |
| | | | | Continuing | L-1B | 21 |
| 4110 | APPLE INC | Electronic Computer Manufacturing | 114 | Initial | L-1A | 13 |
| | | | | Initial | L-1B | 12 |
| | | | | Continuing | L-1A | 45 |
| | | | | Continuing | L-1B | 43 |
| | | | | Continuing | LZ | D |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2904 | ACCENTURE LLP | Management, Scientific, and Technical Consulting Ser | 107 | Initial | L-1A | 28 |
| | | | | Initial | L-1B | D |
| | | | | Continuing | L-1A | 77 |
| | | | | Continuing | L-1B | D |
| 5929 | CAPGEMINI AMERICA INC | Management, Scientific, and Technical Consulting Ser | 102 | Initial | L-1A | 11 |
| | | | | Initial | L-1B | D |
| | | | | Initial | LZ | D |
| | | | | Continuing | L-1A | 58 |
| | | | | Continuing | L-1B | 29 |
| 5772 | DELOITTE TAX LLP | Accounting, Tax Preparation, Bookkeeping, and Payro | 100 | Initial | L-1A | 19 |
| | | | | Initial | L-1B | 59 |
| | | | | Continuing | L-1A | 20 |
| | | | | Continuing | L-1B | D |
| 2883 | VIRTUSA CORPORATION | Custom Computer Programming Services | 98 | Initial | L-1A | 14 |
| | | | | Initial | L-1B | D |
| | | | | Continuing | L-1A | 63 |
| | | | | Continuing | L-1B | 18 |
| 9005 | EXXON MOBIL CORPORATION | Not Recorded | 97 | Initial | L-1A | D |
| | | | | Initial | L-1B | 16 |
| | | | | Continuing | L-1A | 52 |
| | | | | Continuing | L-1B | 24 |
| 5035 | HCL AMERICA INC | Custom Computer Programming Services | 96 | Initial | L-1A | D |
| | | | | Initial | L-1B | 11 |
| | | | | Continuing | L-1A | 39 |
| | | | | Continuing | L-1B | 43 |
| 3126 | COMPUTER SCIENCES CORPORATION | Other Computer Related Services | 95 | Initial | L-1A | D |
| | | | | Initial | L-1B | 22 |
| | | | | Continuing | L-1A | 43 |
| | | | | Continuing | L-1B | 25 |
| 1517 | DELOITTE & TOUCHE LLP | Not Recorded | 94 | Initial | L-1A | 28 |
| | | | | Initial | L-1B | 32 |
| | | | | Continuing | L-1A | 27 |
| | | | | Continuing | L-1B | D |
| 8221 | ENTERPRISE SERVICES LLC | Custom Computer Programming Services | 89 | Initial | L-1A | D |
| | | | | Initial | L-1B | 11 |
| | | | | Continuing | L-1A | 21 |
| | | | | Continuing | L-1B | 56 |



**U.S. Citizenship and Immigration Services**

**Approved L1 Petitions**
by Employer
Fiscal Year 2017

Source: USCIS, data as of October 22, 2017. Notes: All data are based on approved petitions during the fiscal year. Petitions approved in a fiscal year may be filed in previous fiscal years. Per USCIS best practices, units of less than 10 beneficiaries are masked so as to limit the possibility of the de-anonymization of data. "D" represents data withheld to protect privacy. The letter H replaces the value in the total column where one could deduce the value of D. While some company names may appear multiple times, USCIS does not combine companies even where the names are the same because in all cases the employer tax identification numbers are different on the petition. The L-1A nonimmigrant classification refers to intracompany transfers of corporate managers and executives. The L-1B nonimmigrant classification refers to intracompany transfers of employees who possess "specialized knowledge." The L2 classification refers to "blanket" L petitions and may be used by entities involved in commercial trade or services. While the term "L-1" is used for visa issuance and admission purposes, USCIS uses the "A" and "B" distinctions internally for statistical and other purposes.

| Employer Tax ID (Last 4 Digits) | Employer name | Employer Industry | Total Approved Petitions | Employment Type | Class Preference | Approved Petitions by Class Preference |
|---|---|---|---|---|---|---|
| 9806 | TATA CONSULTANCY SVCS LTD | Custom Computer Programming Services | 1802 | Continuing | L1A | 1328 |
| | | | | Continuing | L1B | 50 |
| | | | | Initial | L1A | H |
| | | | | Initial | L1B | D |
| 4155 | COGNIZANT TECH SOLNS US CORP | Computer Systems Design Services | 1416 | Continuing | L1A | 581 |
| | | | | Continuing | L1B | H |
| | | | | Continuing | LZ | D |
| | | | | Initial | L1A | 720 |
| | | | | Initial | L1B | 33 |
| 0235 | INFOSYS LTD | Custom Computer Programming Services | 288 | Continuing | L1A | 217 |
| | | | | Continuing | L1B | H |
| | | | | Continuing | LZ | D |
| | | | | Initial | L1A | 10 |
| | | | | Initial | L1B | 12 |
| 2661 | SCHLUMBERGER TECHNOLOGY CORP | Support Activities for Oil and Gas Operations | 282 | Continuing | L1A | 108 |
| | | | | Continuing | L1B | H |
| | | | | Initial | L1A | D |
| | | | | Initial | L1B | 71 |
| 2696 | TECH MAHINDRA AMERICAS INC | Custom Computer Programming Services | 270 | Continuing | L1A | 169 |
| | | | | Continuing | L1B | 25 |
| | | | | Initial | L1A | 63 |
| | | | | Initial | L1B | 13 |
| 1985 | IBM CORPORATION | Computer Systems Design and Related Services | 214 | Continuing | L1A | 100 |
| | | | | Continuing | L1B | 62 |
| | | | | Initial | L1A | 21 |
| | | | | Initial | L1B | 31 |
| 8221 | HP ENTERPRISE SVCS LLC A HEWLETT | Custom Computer Programming Services | 205 | Continuing | L1A | 54 |
| | | | | Continuing | L1B | 115 |
| | | | | Initial | L1A | 12 |
| | | | | Initial | L1B | H |
| | | | | Initial | LZ | D |
| 4513 | DELOITTE CONSULTING LLP | | 194 | Continuing | L1A | 83 |
| | | | | Continuing | L1B | 42 |
| | | | | Initial | L1A | 18 |
| | | | | Initial | L1B | 51 |
| 4401 | WIPRO LIMITED | Custom Computer Programming Services | 185 | Continuing | L1A | 161 |
| | | | | Continuing | L1B | 17 |
| | | | | Continuing | LZ | D |
| | | | | Initial | L1A | D |
| | | | | Initial | L1B | D |
| 2904 | ACCENTURE LLP | Management, Scientific, and Technical Consulting | 183 | Continuing | L1A | 95 |
| | | | | Continuing | L1B | D |
| | | | | Continuing | LZ | D |
| | | | | Initial | L1A | H |
| | | | | Initial | L1B | D |
| 1430 | IBM INDIA PRIVATE LIMITED | Computer Systems Design and Related Services | 170 | Continuing | L1A | 110 |
| | | | | Continuing | L1B | 15 |
| | | | | Initial | L1A | 16 |
| | | | | Initial | L1B | 29 |
| 6545 | AMAZON CORPORATE LLC | | 159 | Continuing | L1A | 44 |

# Exhibit 15

| Job Title | WL 1 | WL 2 | WL 3 | WL 4 | Total |
|---|---|---|---|---|---|
| Analyst | | 5 | | | 5 |
| Analyst Programmer 2 | | 5 | | | 5 |
| Business Analyst | | 24 | 4 | | 28 |
| Business Analyst - Finance | | 1 | | | 1 |
| Business Analyst Insurance | | 1 | | | 1 |
| Computer and Information Systems Manager 2 | | 11 | | | 11 |
| Computer and Information Systems Manager 3 | | | 1 | | 1 |
| Computer Programmer/Configurer 1 | 67 | 2 | | | 69 |
| Computer Programmer/Configurer 2 | | 1275 | 1 | | 1276 |
| Computer Programmer/Configurer 3 | | 1 | 132 | | 133 |
| Computer Programmer/Configurer 4 | | | | 15 | 15 |
| Computer Specialist / System Support and Development Administrator 2 | | 4 | | | 4 |
| Computer Specialist/System Support & Development Administrator 4 | | | | 1 | 1 |
| Computer Specialist/System Support and Development Administrator 1 | 16 | | | | 16 |
| Computer Specialist/System Support and Development Administrator 2 | | 332 | | | 332 |
| Computer Specialist/System Support and Development Administrator 3 | | 1 | 53 | | 54 |
| Computer Specialist/System Support and Development Administrator 4 | | | | 18 | 18 |
| Computer Specialist/Testing and Quality Analyst 1 | 30 | | | | 30 |
| Computer Specialist/Testing and Quality Analyst 2 | | 651 | | | 651 |
| Computer Specialist/Testing and Quality Analyst 3 | | | 58 | | 58 |
| Computer Specialist/Testing and Quality Analyst 4 | | | | 9 | 9 |
| Computer Systems Analyst 2 | 1 | 377 | | | 378 |
| Computer Systems Analyst 3 | | | 150 | | 150 |
| Computer Systems Analyst 4 | | | 1 | 26 | 27 |
| Consultant | 2 | 9 | 9 | | 20 |
| Consultant 3 | | | 1 | | 1 |
| Consulting Manager | | | 1 | 1 | 2 |
| Consulting Sr. Manager | | | | 1 | 1 |
| Consulting-Manager | | 1 | | | 1 |
| Executive Business Analyst | | | | 2 | 2 |
| Executive Functional Consultant | | | | 2 | 2 |
| for SAP PP Functional Consultant | | | 1 | | 1 |
| Functional Consultant | | 7 | 1 | | 8 |
| Information Technology Project Manager | | 1 | 1 | 1 | 3 |
| Information Technology Project Manager 2 | | 1 | | | 1 |
| Information Technology Project Manager 3 | | | 10 | | 10 |
| Information Technology Project Manager 4 | | | | 11 | 11 |
| ITPM 4 | | | | 1 | 1 |
| SAP BI Functional Consultant | | | 6 | | 6 |
| SAP CRM Functional Consultant | | | 2 | | 2 |
| SAP FICO Functional Consultant | | 1 | 14 | | 15 |
| SAP HCM Functional Consulatnt | | | 1 | | 1 |
| SAP HCM Functional Consultant | | | 2 | | 2 |
| SAP HR Functional Consultant | | | 1 | | 1 |
| SAP IS Functional Consultant | | | 1 | | 1 |
| SAP MM Functional Consultant | | | 10 | | 10 |
| SAP MM Functional Consultant 3 | | | 1 | | 1 |
| SAP PLM Functional Consultant | | | 1 | | 1 |
| SAP PM Functional Consultant | | 1 | | | 1 |
| SAP PP functional consultant | | | 1 | | 1 |
| SAP SD Functional Consultant | | | 10 | | 10 |
| SAP SD Functional Consultant 3 | | | 2 | | 2 |
| SAP SD Functional Consultnt | | | 1 | | 1 |
| SAP SRM Functional Consultant | | | 1 | | 1 |
| Senior Business Analyst | | | 3 | | 3 |
| Senior Functional Consultant | | | 7 | | 7 |
| Service Delivery Director | | 3 | | | 3 |
| **Grand Total** | 116 | 2714 | 488 | 88 | 3406 |
| **% of Total** | 3% | 80% | 14% | 3% | 100% |

# Exhibit 16

# Reddy, Ranpal

| | |
|---|---|
| **From:** | Reddy, Ranpal |
| **Sent:** | Thursday, October 23, 2014 4:20 PM |
| **To:** | Pazak, Sandra J. |
| **Subject:** | FW: ASE Nominations - FY15 H1B drive |

Please see the bottom of this trail for 25% H1B nominations each for ASE and SE levels (Level 12 and 11 respectively). And another 25% for SSE (Level 10). So total 75% new H1B visas for Level 10 and below which I think is pretty scary from the delivery, attrition and operations POV.

Regards - Ranpal
-------------------------------------------------------------------------------------------------------
GCP Lead - Delivery Centers in North America || Ph(OC)#: 469-665-5012 || OC: Ranpal.Reddy

**From:** Yedo, Julia L.
**Sent:** Monday, October 06, 2014 12:48 PM
**To:** Reddy, Ranpal
**Subject:** FW: ASE Nominations - FY15 H1B drive

## ***Confidential - For Company Internal Use Only***

Hi – looks like he is questioning whether business degrees and other types of engineering degrees are sufficient for IT jobs, without work experience. I've asked Becca to take a fresh look at that.

Regards

Julia Yedo
**North America Director**
**People Mobility Employee Tax & Immigration**
**Global Tax Group**
email: julia.l.yedo@accenture.com

Please direct your general question to our service channels:
- **Customer Service Team** – You can reach our customer service team by phone during support hours. Click here for the contact list and hours.
- **MyRequests** – You can submit and check the status of inquiries online at any time by visiting MyRequests.
- **My Initiation** - To initiate People Mobility services or for manager approval for cross-border work visit My Initiation. Please note that employees should visit the Passport and Visa Information page of the Accenture Portal (to determine if People Mobility services are required for their travel *before* submitting an initiation.
- **Self-service** – You can find answers to many of your cross-border assignment questions on the Global Mobility and Relocation Navigator website. which contains FAQs, policy information and a variety of online resources.

Please note, all inquiries must be submitted in English.

1

# Exhibit 17

# CHANGE IN SALARIES 2014-2018

- Highlighted – Most populous Geo Indexes and Levels for GCP and Local WF
  - Tech GCP – Geo Index B, C Levels 8 and 9. 3,403 of 7,050 = 48% of population.
  - Local WF – Geo Index B Levels 6-9 and Geo Index C Levels 7, 8. 4,099 of 8,531 = 48% of population.

- Salary changes for the most populous Geo's and Levels, 2014-2018:
  - GCP Salaries, when supported by Prevailing Wage **increased** approximately 1.1 - 1.5%
  - Local WF salaries **increased** approximately 4.6 – 4.9%
  - GCP Salaries assigned by AWT approach, before Prevailing Wage **decreased** approximately 1.0 - 0.1%

Salary change by Geo Index by Level 2014 (pre AWT) to 2018

| GCP Salary Difference 2014-2018 | | | | | | Local WF CD&O Salary Difference 2014-2018 | | | | | | GCP Pre-Assignment Salary Difference 2014-18 (w/o PW) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Level | AAA | AA | A | B | C | Level | AAA | AA | A | B | C | Level | AAA | AA | A | B | C |
| 6 - Sr Mgr | 6.3% | 3.4% | 7.9% | 4.6% | 3.5% | 6 - Sr Mgr | 17.3% | 9.1% | -0.2% | 3.7% | 2.6% | 6 - Sr Mgr | 6.0% | 5.2% | 2.9% | 4.7% | 0.7% |
| 7 - Manager | 1.7% | 0.9% | 3.5% | 4.6% | 2.8% | 7 - Manager | 9.0% | 5.4% | 0.9% | 5.4% | 4.9% | 7 - Manager | 0.5% | 1.6% | 3.0% | 3.6% | 1.7% |
| 8 - Consultant | 5.9% | 1.3% | 5.2% | 2.3% | 2.8% | 8 - Consultant | 8.6% | 7.1% | -2.7% | 4.6% | 2.8% | 8 - Consultant | 4.5% | -0.8% | 2.7% | 1.0% | 1.4% |
| 9 - Consultant | 3.4% | -0.7% | 2.0% | -0.1% | 0.9% | 9 - Consultant | 4.1% | 5.5% | 1.3% | 6.1% | 1.1% | 9 - Consultant | -0.8% | -1.6% | 0.9% | -2.0% | -0.9% |
| 10 - Analyst | 8.3% | 3.8% | 2.5% | 2.4% | 0.8% | 10 - Analyst | 3.5% | 5.1% | 2.4% | 2.3% | -1.7% | 10 - Analyst | 4.8% | -2.3% | -4.5% | -3.5% | -3.9% |
| 11 - Analyst | 0.4% | -9.8% | -15.3% | -9.0% | -8.2% | 11 - Analyst | 20.2% | 12.9% | 1.8% | 11.7% | -1.3% | 11 - Analyst | 17.2% | -16.0% | -9.7% | -9.1% | -7.8% |
| *Avg of most populous Geos and Levels (approx) ->* | | | | | 1.1-1.5% | | | | | | 4.6-4.9% | | | | | -1.0 to -0.1% | |

Copyright © 2017 Accenture. All rights reserved.

33

# Exhibit 18

**Reddy, Ranpal**

| | |
|---|---|
| **From:** | Balakrishna, Bhavna |
| **Sent:** | Wednesday, October 19, 2016 11:43 AM |
| **To:** | Reddy, Ranpal; Evans, Erin |
| **Cc:** | Patterson, William B. |
| **Subject:** | RE: Request PoV\| Counter Offer OCA |

Hi Ranpal,

Thank you for your input. The OCA call did not take place today but Vianka and Elyse had joined and were not supportive of anything in excess of 8-10%.

I will go back to the project and convey this- but like you said I am not sure if that is something that will get the employee to stay.

**From:** Reddy, Ranpal
**Sent:** Wednesday, October 19, 2016 9:05 AM
**To:** Balakrishna, Bhavna <bhavna.balakrishna@accenture.com>; Evans, Erin <erin.evans@accenture.com>
**Cc:** Patterson, William B. <william.b.patterson@accenture.com>
**Subject:** RE: Request PoV\| Counter Offer OCA

I went through the offer letter and the project lead's answers for all your questions.

First of all, it seems to be a very genuine offer.
But 27% raise over his current salary is very difficult to justify. And we should be extremely careful with precedent. So from that perspective, I wouldn't support this OCA.

However, if we don't come at least close to his expectations, he wouldn't stay. Based on the business case from project lead, if we lose this candidate....
   a) We don't seem to have backfill option immediately or even in the near future
   b) Backfill could potentially be about 35% to 50% higher than his current LCR
   c) ALIP is somewhat niche skill

Since it is a strong business case, I would at least inform Peggy and Michele about this case. If it were me, I would still try to retain him because of business / revenue impact.

Regards - Ranpal
------------------------------------------------
North America GCP Lead | Lync #: 1-469-665-5012

**From:** Balakrishna, Bhavna
**Sent:** Tuesday, October 18, 2016 2:46 PM
**To:** Reddy, Ranpal <ranpal.reddy@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>
**Subject:** Request PoV\| Counter Offer OCA

Hi Ranpal/Pat,

1

Wanted to seek your PoV on this GCP resignation case we have from FS Insurance ALIP:

- Employee is a CL9 FS Insurance ALIP resource
- He has an offer from HCL for $105,000 with $5K signing bonus and $7K relocation (to Texas)
- Current salary including catch up is $79,000
- He is currently at a base salary of $74,300 and with 3% stay at level increase, his salary will come to $76,500
- He is only eligible for IPB and 4.39% is his max allowed and he has been given 4%
- He was # 3 on the promotion list but they had only 2 slots so he was not promoted
- He will quit unless we are able to match $100,000 as per his leads

**Summary:** If we were to bring him upto $100,000; this would mean it is a large raise 27%+ and bring him to the middle of zone 2. Given that promotes themselves are seeing a 9% raise, this does seem like a big jump. We had a similar ALIP case a month ago and we ended up giving the employee a 19% raise- I hope that we are not setting precedence to allow such multiple requests. I did chat with Vianka on this briefly yesterday on some other call and she did not think that a 27% raise was even something to consider. *I wanted to seek your opinion on what you think is reasonable to table? We have the OCA review with Michelle/Peggy tomorrow and I will take it ahead basis your recommendation.*

<u>Salary Analysis:</u> based on Geo Indez AA, salary and new ranges, falls in Zone 1 for Application Development Specialist

| General | Min | | | | Mid | | | Max |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 9 | 75,500 | 91,999 | 92,000 | 108,499 | **108,500** | 124,999 | 125,000 | 141,500 |

Here are some additional inputs from the business:

1. What is the role Srinath plays within ALIP and how critical is it?

   Integration Lead – yes it is critical and our fastest growing area. We have limited skills even with Srinath and losing him will be a big impact tot the team as well as his current client.

   ALIP is a complex software asset which typically has a long learning path before someone is productive. Integration is very crucial for any ALIP implementation and it covers a very significant cost of the implementation. ALIP Integration Lead requires a unique skillset of deep ALIP functional / technical expertise and enterprise integration along with onshore and offshore delivery experience. This role is typically played by a Level 7 or high end level 8 as role interacts with client IT directors and enterprise architects. If we lose Srinath then we will be hiring an expensive LCR ($90 or above) resource at Level 7 or 8 and we will have to backfill him immediately which is not possible and it will impact client delivery.

   Srinath is responsible for the design, development, and delivery of all ALIP real time integration work for the AIG project. In that role, he leads a team of 5 offshore resources, as well as coordinating the activity of 2 AIG developers. He works directly with AIG development resources, BAs, and director level leaders to coordinate work activities and ensure ALIP integration with external systems and vendors is working as needed. In addition to being a team lead, he is our strongest integration developer. When complex issues arise that require deep system skills, Srinath can debug, solution options, and actually perform the coding if needed. ALIP has a very rich sales pipeline and integration team is already running at full capacity and extending the team of Integration leads is a lengthy process and requires shadowing with an existing lead.

   Srinath has played the role very well and he frequently coordinates with client IT directors and enterprise architects to plan and design the solution with minimal supervision from ALIP Architects.

2. And what is his roll off date from the project? He has been on AIG for 18+ months and is expected to continue through all of 2017. And, we discussed how to leverage him in some of our newly sold work – NY Life and Prudential since we are lacking in skills in this area.

3. Any other information to strengthen his case for OCA (off cycle adjustment) – We have limited skills in this area and he has 6 years of ALIP experience. We are currently short-staffed in integration space and it takes a long time for someone to operate at this level. Srinath worked for almost 5 years before he was assigned this role.

4. Will the recommended Increase be Recoverable with No Dilution to CI (Y/N)? Yes. We had expected that he would be promoted this year and we would increase his rate accordingly. Regardless, I plan to increase his bill rate in 2017.

5. Project Impact if employee leaves (if you can quantify in terms of how many people replacing him or time taken or $$ loss etc. ) – We have no backfill with this experience. It would take at least a year if not more to get even close to his productivity. From our client status report this week "Integration lead may be leaving Accenture; to be confirmed on 10/19. Lack of integration lead would put current releases and management of issues at extreme risk." And, the average LCR for an integration lead onshore is $30 higher than Srinath will be even with this raise (OCA).

6. Have you checked with TFS on availability of resources to backfill – if yes, how many are available   - there are no backfills with any ALIP experience.

7. Has GC been initiated for him? No, but we are willing to discuss and Srinath has indicated he only plans to be onshore for about 3 years.

8. Will he be willing to continue in NJ? He is open to NJ but must take into account higher cost of living in NJ v. Texas

9. What is the final salary offer that can get him to stay? $100K. Will he be willing to wait until December for it to take effect? We are confirming with him.

Exhibit 19

# H1B Mapping Matrix - Current

**Current Mapping Matrix**

| LCA Job title ➡ LCA level ➡ | Computer Programmer / Configurer | Computer Systems Analyst | Computer Specialist / Sys. Support & Dev. Admin | Computer Specialist/Testing & Quality Analyst | IT Project Manager | Functional Consultant (FC) | Business Analyst (BA) | Service Delivery Director (SDD) |
|---|---|---|---|---|---|---|---|---|
| Level 1 | | Not Applicable | | | Not Applicable | | | Not Applicable |
| Level 2 | > 3 years Exp. | > 3 years Exp. | > 3 years Exp. | > 3 years Exp. | > 3 years Exp. | > 3 years Exp. | > 3 years Exp. | Primarily executive role |
| Level 3 | Supervisory Resp | Supervisory Resp | Supervisory Resp | Supervisory Resp | Supervisory Resp | Supervisory Resp | Supervisory Resp | |
| Level 4 | Managerial Resp | Managerial Resp | Managerial Resp | Managerial Resp | | Managerial Resp | Managerial Resp | |

## Current Mapping Matrix – Highlights

- Number of years experience is being considered to decide level 1 vs 2 for CL 11

- Supervisory responsibilities are being considered to decide level 2 vs 3 for CL 9 & 10

- Managerial responsibilities are being considered to decide level 3 vs 4 for CL 8

| Accenture internal levels in colour coding |
|---|
| ASE |
| SE/ Career level 11/12 |
| SSE/TL/ Career level 10/ 9 |
| AM/ Career level 8 |
| M/Career level 7 |
| SM/Career level 6 |
| Sr. Ex/Career level 1-4 |

# H1B Mapping Matrix - Proposed

**Proposed Mapping Matrix**

| LCA Job title → LCA level → | Computer Programmer / Configurer | Computer Systems Analyst | Computer Specialist / Sys. Support & Dev. Admin | Computer Specialist/Testing & Quality Analyst | IT Project Manager | Functional Consultant (FC) | Business Analyst (BA) | Service Delivery Director (SDD) |
|---|---|---|---|---|---|---|---|---|
| Level 1 | | | | | Not Applicable | | Not Applicable | Not Applicable |
| Level 2 | | | | | | | | |
| Level 3 | | | | | | | | |
| Level 4 | | | | | | | | |

## Proposed Mapping Matrix – Highlights

- Simplified: Subjectivity is removed
- Each wage level applies for 2 career levels
- ITPM and BA roles are not applicable for CL 12 & 11
- CL6 is proposed for non-PM roles also
- SDD role is applicable for CL 7+ only



Accenture internal levels in colour coding
ASE/SE/ Career level 12/11
SSE/TL/ Career level 10/ 9
AM/ Career level 8
M/Career level 7
SM/Career level 6
Sr. Ex/Career level 1-4

# Proposed vs Current Mapping – Estimated Savings

Potential Business Impact

- Initial estimate of potential annual savings is $700k - $3.5 mil (Impacting between 60-300 employees based on current onshore population
- Represents potential savings of .2% - 1% of total annual US GCP H visa payroll of ~$340mil
- Average annual salary savings for impacted employees of ~$12k or ~$6.60/hour
- Low-end of range assumes 80% of potentially impacted employees must be paid a higher "actual wage"
  - The low end is a more realistic and likely result

| Career Level | Level 1 | Level 2 | Level 3 | Level 4 | Grand Total |
|---|---|---|---|---|---|
| 6 | | 2 | 1 | 2 | 5 |
| 7 | 2 | 26 | 47 | 26 | 101 |
| 8 | 3 | 310 | 423 | 25 | 761 |
| 9 | 7 | 1640 | 115 | | 1762 |
| 10 | 188 | 1227 | 18 | | 1433 |
| 11 | 142 | 113 | 1 | | 256 |
| #N/A | | 4 | | | 4 |
| **Grand Total** | **342** | **3322** | **605** | **53** | **4322** |
| Distribution by Wage Level | 8% | 77% | 14% | 1% | 100% |

*Note: Number of employees highlighted above could be potentially impacted profiles under the proposed mapping*

Exhibit 20

# DISTANCE FROM PREVAILING WAGE

| 2018 data Level | Count of cases PA < PW | Total GCP HC | Percentage with Pre Assignment Salary below PW |
|---|---|---|---|
| 5 - Senior Manager | | 20 | 0% |
| 6 - Senior Manager | 2 | 276 | 1% |
| 7 - Manager | 96 | 951 | 10% |
| 8 - Consultant | 529 | 2274 | 23% |
| 9 - Consultant | 744 | 2491 | 30% |
| 10 - Analyst | 591 | 980 | 60% |
| 11 - Analyst | 39 | 78 | 50% |
| Grand Total | 2001 | 7070 | 28% |

| 2018 data Level | Average of GAP (diff between PA vs PW) |
|---|---|
| 6 - Senior Manager | $ (10,350) |
| 7 - Manager | $ (9,183) |
| 8 - Consultant | $ (9,350) |
| 9 - Consultant | $ (6,846) |
| 10 - Analyst | $ (10,348) |
| 11 - Analyst | $ (8,044) |
| Grand Total | $ (8,681) |

- An employees Pre Assigned Salary is the salary computed by our compensation methodology.
- Employees who have a Pre Assigned salary that is less than the Prevailing Wage, see lesser or no increases on 12/1 when Promotions or Comp Increases occur
- The percentage of people in this category increased from 2017 to 2018
- The gap to prevailing wage is also getting larger, increasing the time it may take someone to see an adjustment in pay

| 2014 data Level | Count of cases PA < PW | Total GCP HC | Percentage with Pre Assignment Salary below PW |
|---|---|---|---|
| 6 - Senior Manager | | 155 | |
| 7 - Manager | 31 | 495 | 6% |
| 8 - Consultant | 189 | 1614 | 12% |
| 9 - Consultant | 245 | 2395 | 10% |
| 10 - Analyst | 667 | 1774 | 38% |
| 11 - Analyst | 222 | 369 | 60% |
| 12 - Associate | | 1 | 0% |
| Grand Total | 1354 | 6803 | 20% |

| 2014 data Level | Average of GAP (dif between PAvsPW) |
|---|---|
| 7 - Manager | $ (8,931) |
| 8 - Consultant | $ (8,107) |
| 9 - Consultant | $ (7,828) |
| 10 - Analyst | $ (6,427) |
| 11 - Analyst | $ (8,683) |
| Grand Total | $ (7,342) |

Copyright © 2017 Accenture. All rights reserved.

32

# Exhibit 21

# IMPACT OF AWT ON AVG SALARIES AND PW GAP
# ILLUSTRATIVE OF AWT IMPACT OVER TIME



Copyright © 2017 Accenture. All rights reserved.

31

Exhibit 22

**Reddy, Ranpal**

| | |
|---|---|
| **From:** | Breshears, Amy V. |
| **Sent:** | Wednesday, September 20, 2017 10:08 AM |
| **To:** | Reddy, Ranpal; Evans, Erin; Hendricks, Steven; Patterson, William B. |
| **Cc:** | Koul, Esha; Wadhwa, Kanupriya; Garzia, Gabriel N.; Mueller, Warren; Gopal, Krishna |
| **Subject:** | RE: Salary protection request - Repeat GCP assignment at same index city |

Hello all,

Below are the employees in the same role and city location when the AW was set.

The employee highlighted in yellow was the one with the lowest salary, but as it was Below Min of Zone 1, we used the Zone 1 Min to set the AW.

| EnterpriseID | Annual FTE Salary |
|---|---|
| vinodh.sundar | $93,900 |
| sanjay.b.sharma | $104,000 |
| kavita.maniar | $96,900 |
| ankit.tanwar | $81,000 |
| kristin.hammer | $81,000 |
| r.travis.hatt | $99,500 |
| andrea.m.romain | $82,100 |
| shankara.kanukurti | $96,900 |
| ajay.a.venkatesh | $83,200 |
| william.b.tolbert | $117,700 |
| ankit.vasavada | $93,100 |
| jessica.e.mercon | $133,900 |
| hyuk.yi | $116,900 |
| philip.liang | $113,500 |
| edith.t.milazi | $87,200 |
| cordia.r.simon | $71,300 |
| rajagopal.kolli | $102,900 |
| pamela.gifford | $101,700 |
| m.feltus-white | $107,700 |
| leighton.salmon | $99,500 |
| shailesh.tak | $111,500 |
| isaac.k.quarshie | $108,200 |
| elizabeth.rhule | $82,900 |
| mohan.kumar.yaddala | $91,400 |
| chuong.pham | $120,000 |

| | |
|---|---|
| kimberly.laughlin | $102,500 |
| chirag.lal | $92,800 |
| ritesh.yadav | $100,500 |
| yogesh.r.mankar | $96,900 |
| lawrence.j.growney | $106,100 |
| jyotika.bhandarkar | $108,800 |
| george.jaramillo | $102,100 |
| jeffrey.w.paulson | $121,700 |
| dennis.hancock | $97,500 |
| jane.chiang | $102,200 |
| muthamizh.selvan | $89,600 |
| ali.maleki | $111,500 |
| derrick.d.moss | $88,300 |
| heather.chipka | $101,000 |
| bikram.dua | $89,900 |
| atulkumar.singh | $85,000 |
| samir.masic | $83,100 |
| s.yedla | $95,000 |
| isabella.maina | $101,300 |
| aminat.oni-sanusi | $106,100 |
| lenesia.cooper | $102,700 |
| charles.kumbu-smart | $111,100 |
| esther.mburu | $106,200 |
| sayali.avalakki | $89,300 |
| k.a.humphrey | $99,100 |
| marissa.l.tuck | $88,600 |

Thanks,

Amy

Amy Breshears | Total Rewards S&??????? | 201 S. College St., Ste. 1900, Charlotte, NC 28223 | ?????? 704.370.5398  Mobile: 704.905.2613 | ✉ amy.v.breshears@accenture.com

*Our core values:  Stewardship  -  Best People  -  Client Value Creation  - One Global Network  -  Respect for the Individual  – Integrity*

---

**From:** Reddy, Ranpal
**Sent:** Wednesday, September 20, 2017 9:08 AM
**To:** Evans, Erin <erin.evans@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Koul, Esha <esha.koul@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Subject:** RE: Salary protection request - Repeat GCP assignment at same index city

Is this issue closed? I haven't seen any further emails on this thread.

...gards - Ranpal
--------------------------------------------------

NA GCP Business Operations Lead | Phone#: 1-469-665-5012

**From:** Reddy, Ranpal
**Sent:** Thursday, September 14, 2017 2:54 PM
**To:** Evans, Erin <erin.evans@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>
**Cc:** Koul, Esha <esha.koul@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Subject:** RE: Salary protection request - Repeat GCP assignment at same index city

Steve and Amy – I don't think we got the EID's of the folks who set the AW (what Pat asked for).
Erin – Let us talk and close it once we get the EID's. Thanks.

Regards - Ranpal
--------------------------------------------------

NA GCP Business Operations Lead | Phone#: 1-469-665-5012

**From:** Patterson, William B.
**Sent:** Wednesday, September 13, 2017 6:39 AM
**To:** Reddy, Ranpal <ranpal.reddy@accenture.com>; Evans, Erin <erin.evans@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>
**Cc:** Koul, Esha <esha.koul@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Subject:** RE: Salary protection request - Repeat GCP assignment at same index city

Hi Ranpal, Erin,

Since I am out this week - Once the EID's come in, can you look at the resumes of the traveler and the peers and make a call? I am supportive of doing something individualized. I think if the person that set the AWT is NOT A PEER then I am supportive of doing something personalized, like setting the salary among the two peers highlighted. If the person that set the AWT value is SOMEWHAT A PEER then I am supportive of doing something in the middle, between the AWT value and the two Atlanta-based peers.

Attached is just a little tool I use to generate Resume Links from EID's.

Pat.
------------------------------
William (Pat) Patterson – **Upcoming PTO 9/11-9/18**
NA Immigration Talent Lead & NA GCP HR Business Partner
Cell 302-593-0213

From: Patterson, William B.
Sent: Wednesday, September 13, 2017 7:34 AM
To: Hendricks, Steven <steven.hendricks@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
Cc: Evans, Erin <erin.evans@accenture.com>; Koul, Esha <esha.koul@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
Subject: RE: Salary protection request - Repeat GCP assignment at same index city

Hi Amy, Steve,

What are the enterprise ID's of the peer-set that set the AWT value? Adding Ranpal.

Thanks, Pat.

------------------------------
William (Pat) Patterson – Upcoming PTO 9/11-9/18
NA Immigration Talent Lead & NA GCP HR Business Partner
Cell 302-593-0213

From: Hendricks, Steven
Sent: Tuesday, September 12, 2017 3:17 PM
To: Gopal, Krishna <krishna.gopal@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
Cc: Evans, Erin <erin.evans@accenture.com>; Koul, Esha <esha.koul@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>
Subject: RE: Salary protection request - Repeat GCP assignment at same index city

Krishna, I think the final decision is really up to Pat and Erin. From a compensation perspective, I would be interested to know if there have been others in the same situation. And, if so, what was done for them? There is a need to be consistent with our approach for this population, and we need to make sure we are paying at least at the Actual Wage value.

As I am transitioning from this area, I will defer to Amy and Warren who are welcome to provide their guidance.

Regards,

Steve

------------------------------
Steven (Steve) Hendricks, CCP | Accenture – North America Compensation Team | 1345 Ave of the Americas, New York, NY 10105 | Office: 917.452.0547 Home Office: 860.354.9293 |
steven.hendricks@accenture.com |

From: Gopal, Krishna
Sent: Tuesday, September 12, 2017 6:13 AM
To: Patterson, William B. <william.b.patterson@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>

Evans, Erin <erin.evans@accenture.com>; Koul, Esha <esha.koul@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Wadhwa, Kanupriya <kanupriya.wadhwa@accenture.com>; Garzia, Gabriel N. <gabriel.n.garzia@accenture.com>
**Subject:** Salary protection request - Repeat GCP assignment at same index city

Hi Pat / Steve,

Please advise on the salary protection request for the below employee. In the last NA call, I recalled you both discussing salary protection at same geo index scenarios to be reviewed case by case (okay to protect by default, only at city / MSA level).

Hence, reaching out.

| Enterprise ID | Level | Skill Type | Role | Role Family | Role Family Type |
|---|---|---|---|---|---|
| vaibhav.gautam | 8 | Vanila | Business&Integration Arch Assoc Manager | Business & Integration Architecture | Niche |

**Employee background & grievance summary:**

- Employee earlier worked at two geo index C locations (last drawn salary prior to repatriation in Jan 2017 – USD 96,900). He repatriated to IDC in January 2017 and is now travelling back to the US. Hence, treated as a fresh traveller.
- AW for new location is USD 81,000 which is 20% less than his last drawn in the same geo index in January 2017.

  He has raised a grievance on salary drop despite returning to the same geo index, within 9 months of his last US stint.

**IDC recommendation** – Protect last drawn in the same geo index (USD 96,900); rationale below.

- Returning to same geo index city in less than a year. If he were restaffed instead, we would have retained the same base pay.

- This higher last drawn salary is still within Zone 1 (Zone 2 starts at USD 98k).
  Hence, employee remains within the nominal comp range/zone.

- Among 12 GCP peers with 'Niche' Tech Careers role families in the same city, his salary is among the top 30%.
  We're okay with this given his return to US within the same year, and not exceeding current GCP employees in this city.

**Employee's US salary & location history:**

| S. No. | Location | Last Drawn Base salary | Last Month, Year based in the location |
|---|---|---|---|
| 1 | St. Louis, MO | 83,300 | April 2014 |
| 2 | Norfolk, VA | 96,900 | January 2017 |

**Peers with same role in the same city:**

| S. No | Name (Enterprise ID) | Host Personnel # | Host State | Host City | Level | Role | Onsite employee primary skills |
|---|---|---|---|---|---|---|---|
| 1 | ajay.a.venkatesh | 11191917 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | SAP HANA Studios |
| 2 | nasir.loladia | 10747418 | Georgia | Atlanta | 8 | Digital Data Engineering Assoc Manager | Oracle Database Administration |
| 3 | muthamizh.selvan | 10430379 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | Avaya/Nortel Contact Center |
| 4 | ritesh.yadav | 11062966 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | Salesforce |
| 5 | pradeep.sadashivappa | 10536383 | Georgia | Atlanta | 8 | Technology Delivery Lead Assoc Manager | IBM Customer Information Control System (CIC! |
| 6 | s.yedla | 11332013 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | SAP SD Sales Order Management |
| 7 | sourav.b.mukherjee | 11015607 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | Oracle Financials |
| 8 | senthil.thangavelu | 10804869 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | SAP ECC LE Warehouse Management |
| 9 | yogesh.r.mankar | 10821812 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | SAP ECC PP Production Planning & Control for D |
| 10 | kavita.maniar | 11207439 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | Salesforce |
| 11 | venkatesh.ajjugal | 10583972 | Georgia | Atlanta | 8 | Digital Data Engineering Assoc Manager | Teradata BI |
| 12 | pallavi.patil | 10656948 | Georgia | Atlanta | 8 | Business&Integration Arch Assoc Manager | Electronic Medical Record (EMR) - Inpatient |

Regards,
Krishna Gopal

**From:** Koul, Esha
**Sent:** 12 September 2017 10:16
**To:** Gopal, Krishna <krishna.gopal@accenture.com>
**Subject:** URGENT:Gautam, Vaibhav

Hi KG,

Can you look into the below issue. Employee is claiming that he was earning more salary in same tie city when he was earlier on GCP

vaibhav.gautam

| Sr. o. | Salary Amount ($) - BasNe Pay | Location | Skill | Designation | Date From | Date To | Program GCP | VISA Type | Years c IT |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 82500 | St.louis, MO | Health - Business System Analyst | Associate Manager | Sep-13 | Apr-14 | GCP 750 | H1B | |
| 2 | 95000 | Virginia Beach, VA | Health - Business System Analyst | Associate Manager | Jan-16 | Nov-16 | GCP 750 | L2 | |
| 3 | 96900 | Virginia Beach, VA | Health - Business System Analyst | Associate Manager | Dec-16 | Jan-17 | GCP 750 | L2 | |

| | | | | Associate | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 100000 | Mason, Ohio | Health - Business System Analyst | Manager | Feb-17 | Feb-17 | GCP 750 | L1A | |
| 5 | 83300 | Atlanta, GA | Health - Business System Analyst | Associate Manager | Sep-17 | Till date | GCP 750 | L2 | |

Thanks & Regards,
**Esha K Pandita**
Global Careers Program - Human Resources
Delivery Center for Technology | Noida, India
Mob: +919958992564
**Skype-esha.koul**

*Top 5 Strengths- Relator | Responsibility | Arranger | Futuristic | Learner*

*HR Helpline - 2222 (from Accenture Landline) / 08040772222 (from any External phone)*

*Self-service – You can find answers to many of your international assignment questions on the Peoplelink / IDC Home page or Help and Support on GCP Tracker tool website, which contains FAQs and policy information*

Exhibit 23

Reddy, Ranpal

| | |
|---|---|
| **From:** | Hendricks, Steven |
| **Sent:** | Monday, September 11, 2017 8:34 AM |
| **To:** | Vilieri, D.; Patterson, William B. |
| **Cc:** | Mueller, Warren; Breshears, Amy V. |
| **Subject:** | RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269 |

Thanks, Dolo.

Regards,

Steve

---

Steven (Steve) Hendricks, CCP | Accenture – North America Compensation Team | 1345 Ave of the Americas New York, NY 10105 | ☎. Office: 212 492 0547 Home Office: 800 354.9293 |
✉ steven.hendricks@accenture.com |

**From:** Vilieri, D.
**Sent:** Monday, September 11, 2017 8:34 AM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>
**Subject:** FW: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

<p align="center">***Confidential - For Company Internal Use Only***</p>

Hi Pat,
The below 2 employees are the ones that set the AW for the peer group below:
- 11231003 r.g.mitchell. Local employee. And his salary was $103,000.
- 11230135 michael.stoner. Local employee. And his salary was $106,800.

Regards,
Dolo

1



Dolores Vilieri
**North America Field HR – Compensation Team**
Time Zone: BA – Argentina (GMT -3:00)
Defensa 390, C1065AAF, Buenos Aires Bangalore • Buenos Aires •
Chennai• Chicago • Dalian • Dublin • Manila • Mumbai • Prague • Pune
**Ideation/Maximizer/Relator/Empathy/Arranger**

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. If you have received this e-mail in error, please notify the sender immediately and delete the original. Communications with Accenture or any of its group companies ("Accenture"), including telephone calls and e-mails, may be monitored by our systems for quality control and/or evidential purposes. Accenture does not accept service by e-mail of court proceedings, other processes or formal notices of any kind. Registered in Ireland, Number 285 869.

Before printing, Please think in your responsibility regarding the environment.

**From:** Hendricks, Steven
**Sent:** Friday, September 08, 2017 6:47 PM
**To:** Vilieri, D. <d.vilieri@accenture.com>
**Cc:** Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** FW: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Dolo, can you investgate the Actual Wage table working file to see who established this actual wage from the 12/1/16 table.

When you get that, please provide the employee ID(s), so Pat can continue to do some investigation into this. Thanks.

Regards,

Steve

Steven (Steve) Hendricks, CCP | Accenture – North America Compensation Team | 1345 Ave of the Americas, New York, NY 10105 | # Office: 917.452.0547 Home Office 800.354.9293 | ☎ steven.hendricks@accenture.com |

**From:** Patterson, William B.
**Sent:** Friday, September 8, 2017 4:28 PM
**To:** Hendricks, Steven <steven.hendricks@accenture.com>
**Cc:** Gopal, Krishna <krishna.gopal@accenture.com>; Evans, Erin <erin.evans@accenture.com>; O'Brien, Amy M. <amy.m.obrien@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

HI Steve, Pretty sure this is it.

| Career track | Org 1 | Role | Career Level | |
|---|---|---|---|---|
| Client Delivery & Operations | Accenture Technology | Tech Architecture Delivery Team Lead/Specialist/Consultant | 9 - Consultant | |

---

William (Pat) Patterson – **Upcoming PTO 9/11-9/18**
NA Immigration Talent Lead & NA GCP HR Business Partner
Cell 302-593-0213

**From:** Hendricks, Steven
**Sent:** Friday, September 8, 2017 4:19 PM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Gopal, Krishna <krishna.gopal@accenture.com>; Evans, Erin <erin.evans@accenture.com>; O'Brien, Amy M. <amy.m.obrien@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Pat, Erin: Can you provide the role/DTE/MSA location so we can look into this? Thanks.

Regards,

Steve

---

Steven (Steve) Hendricks, CCP | Accenture – North America Compensation Team | 1345 Ave of the Americas, New York, NY 10105 | ☎ Office: 917.452.0547  Home Office: 860.354.9293 |
✉ steven.hendricks@accenture.com |

**From:** Patterson, William B.
**Sent:** Friday, September 8, 2017 3:11 PM
**To:** Hendricks, Steven <steven.hendricks@accenture.com>
**Cc:** Gopal, Krishna <krishna.gopal@accenture.com>; Evans, Erin <erin.evans@accenture.com>; O'Brien, Amy M. <amy.m.obrien@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Hi Steve,

Could you please let us know what peer group established the $103k AWT value? If it was one or two people can you provide the enterprise ID's? I need to look at resumes and see if they are the same as Ravi.

Thanks, Pat.

---

3

William (Pat) Patterson – Upcoming PTO 9/11-9/18
NA Immigration Talent Lead & NA GCP HR Business Partner
Cell 302-593-0213

**From:** Reddy, Ranpal
**Sent:** Friday, September 8, 2017 2:29 PM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Gopal, Krishna <krishna.gopal@accenture.com>; Evans, Erin <erin.evans@accenture.com>; O'Brien, Amy M. <amy.m.obrien@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Pat – I am not sure if this case needed any further investigation. Steve probably looked at AW table and confirmed that AW number.

But when the employee was being paid $79,600 (probably based on AW, as PW seems to have been $69k) in Chicago and moving him to Columbus, OH at $103k (based on AW) even though PW is only $71k doesn't seem to make sense. Have you looked into it?

If we approve such random increases even though the employee is going to lower GI (Chicago to Columbus), it just doesn't seem right. Think about the scenario where we have to move this guy back to Chicago in the near future. Are we going to reduce his salary from $103k to $79,600? If we do, then there will be all kinds of escalations and leads question our logic of reducing the salary when the employee is moving to higher GI.

Thoughts???

Regards - Ranpal
--------------------------------------------------

NA GCP Business Operations Lead │Phone#: 1-469-665-5012

**From:** Ellison, Janine R.
**Sent:** Friday, September 8, 2017 8:47 AM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Gopal, Krishna <krishna.gopal@accenture.com>; Evans, Erin <erin.evans@accenture.com>; O'Brien, Amy M. <amy.m.obrien@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** Re: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Looks like Steve approved so it's closed now.

Thanks

Sent from my iPhone

On Sep 8, 2017, at 8:44 AM, Patterson, William B. <william.b.patterson@accenture.com> wrote:

Hi Janine, No this one is not ringing a bell.

4

**Reddy, Ranpal**

---

**Subject:**                       FW: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

**From:** O'Brien, Amy M. <amy.m.obrien@accenture.com>
**Sent:** Tuesday, September 19, 2017 8:23 AM
**To:** Ellison, Janine R. <janine.r.ellison@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Vilieri, D. <d.vilieri@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>; Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Thank you.  Look forward to that.

Amy M. O'Brien
NA GCP Operations Team

**From:** Ellison, Janine R.
**Sent:** Tuesday, September 19, 2017 9:16 AM
**To:** O'Brien, Amy M. <amy.m.obrien@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Vilieri, D. <d.vilieri@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>; Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

<div align="center">***Confidential - For Company Internal Use Only***</div>

We are good to go with the salary provided by Pat.  I am working with Pat on documenting this excpetion process for our teams.

Thank you

Janine Ellison
Accenture
North America People Mobility Director
Office: (312) 693-4108
Mobile: (630) 287-1614

**From:** O'Brien, Amy M.
**Sent:** Tuesday, September 19, 2017 7:00 AM
**To:** Ellison, Janine R. <janine.r.ellison@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Vilieri, D.

<d.vilieri@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>; Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269
**Importance:** High

**Janine/Pat,** I'm back from PTO and not seeing further response on this after Janine's note below.
Are we waiting on further agreement from HR or are we good to go with the figure that Pat provided?

Amy M. O'Brien
NA GCP Operations Team

**From:** Ellison, Janine R.
**Sent:** Tuesday, September 12, 2017 5:56 PM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** O'Brien, Amy M. <amy.m.obrien@accenture.com>; Evans, Erin <erin.evans@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Vilieri, D. <d.vilieri@accenture.com>; Hendricks, Steven <steven.hendricks@accenture.com>; Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Mueller, Warren <warren.mueller@accenture.com>; Breshears, Amy V. <amy.v.breshears@accenture.com>
**Subject:** Re: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Do we need legal to agree to a salary that is not on AW table?

Thanks

Sent from my iPhone

On Sep 12, 2017, at 4:19 PM, Patterson, William B. <william.b.patterson@accenture.com> wrote:

> Hi Amy, based on the attached I looked at resumes of the two people who comrprised the peer group.
>
> Both of those are Service Now Cloud Certified. Ravi is not, and he does not work in salesforce or cloud according to his resume.
> He is 8 MAL
> I do not see any reason to differentiate above our standard of Zone 2 (minimum)
>
> Please set his salary at $88,000.
>
> Thanks, Pat.

| CV FOR r.g.mitchell |
|---|
| CV FOR michael.stoner |
| CV FOR ravi.a.pratap.singh |

In an effort to speed these up in the future, I am happy to entertain recommendations on an appropriate salary from the comp team. We should talk about how that is possible.

------------------------------
William (Pat) Patterson – **Upcoming PTO 9/11-9/18**
NA Immigration Talent Lead & NA GCP HR Business Partner
Cell 302-593-0213

**From:** O'Brien, Amy M.
**Sent:** Tuesday, September 12, 2017 9:38 AM
**To:** Evans, Erin <erin.evans@accenture.com>
**Cc:** Reddy, Ranpal <ranpal.reddy@accenture.com>; Patterson, William B. <william.b.patterson@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269
**Importance:** High

Hi Erin, in Pat's absence, can you determine if we can move forward with this restaffing?
See details in email below and let me know if there are further questions.
I'm in today only and out on PTO for remainder of the week – hoping we can resolve this quickly.

Thanks!

Amy M. O'Brien

NA GCP Operations Team

**From:** O'Brien, Amy M.
**Sent:** Tuesday, September 12, 2017 8:53 AM
**To:** Patterson, William B. <william.b.patterson@accenture.com>
**Cc:** Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** FW: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Hi Pat, just wondering if there's an update to this case? I'm still HOLDING the LCA Case which is for a restaffing.
Our normal review SLA is 2 days and we're well past a week at this point. If we can't move forward today I think,
at a minimum I owe an update to the employee and receiving project about the delay.
Please let me know where we stand?
Thanks
Amy M. O'Brien

NA GCP Operations Team

**From:** O'Brien, Amy M.
**Sent:** Friday, September 8, 2017 3:13 PM
**To:** Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Just an update on this case.
Still holding based on subsequent instruction from Pat Patterson.

More soon.

*Amy M. O'Brien*
NA GCP Operations Team

**From:** O'Brien, Amy M.
**Sent:** Friday, September 8, 2017 8:27 AM
**To:** Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Thanks you for checking.
Will release the case momentarily.

*Amy M. O'Brien*
NA GCP Operations Team

**From:** Varghese, Mathew A.
**Sent:** Friday, September 8, 2017 12:19 AM
**To:** O'Brien, Amy M. <amy.m.obrien@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Hi Amy,

As per Steve confirmation, AWM is correct.

*Thanks & Regards,*
**MATHEW VARGHESE**
Accenture Solutions Private Limited
People Mobility Service Delivery
India

**From:** O'Brien, Amy M.
**Sent:** Friday, September 08, 2017 5:10 AM
**To:** Varghese, Mathew A. <mathew.a.varghese@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Hi Mathew – this case is still pending.
Any word yet on confirmation if AWMin is correct or what the correct figure is?

*Amy M. O'Brien*
NA GCP Operations Team

4

**From:** Varghese, Mathew A.
**Sent:** Friday, September 1, 2017 8:53 PM
**To:** O'Brien, Amy M. <amy.m.obrien@accenture.com>; Gopal, Krishna <krishna.gopal@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>; Ellison, Janine R. <janine.r.ellison@accenture.com>
**Subject:** RE: Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

Hi Amy

I am following up with Steve on this as per attached email and will confirm when I hear from him.


*Thanks & Regards,*
MATHEW VARGHESE
Accenture Solutions Private Limited
People Mobility Service Delivery
India

**From:** O'Brien, Amy M.
**Sent:** Saturday, September 02, 2017 4:38 AM
**To:** Gopal, Krishna <krishna.gopal@accenture.com>; Varghese, Mathew A. <mathew.a.varghese@accenture.com>
**Cc:** Evans, Erin <erin.evans@accenture.com>; Reddy, Ranpal <ranpal.reddy@accenture.com>
**Subject:** Potential Error with AWMin/Max Presented for Pratap Singh, Ravi A. 10638269

**Krishna/Mathew**, when I initially reviewed case# 48047 something didn't seem right about the AWM of 103000 and AWM of 126000 for CL9. As per the HR details for Ravi below, it appears there is a problem and SAP indicates these LCA Rep case numbers are too high.

Before I approve this to move forward to obtain the LCA I wanted you to review this and confirm what is correct. We don't want a repeat of the recent situation discovered where we grossly overpaid an individual based on incorrect information.

Please advise on what you find and what I should do so that the case can move forward accurately.

*Amy M. O'Brien*
NA GCP Operations Team

**From:** Skolaris, Carola
**Sent:** Friday, September 1, 2017 9:30 AM
**To:** O'Brien, Amy M. <amy.m.obrien@accenture.com>
**Cc:** Baudi, Analía <analia.baudi@accenture.com>
**Subject:** RE: Need Comp Info Today :) Pratap Singh, Ravi A. 10638269

***Confidential - For Company Internal Use Only***

Hi Amy,

Please find below the information requested for **ravi.a.pratap.singh (10961522):**

| Personnel Number | 10961522 |
|---|---|
| Full Name | Ravi Pratap Singh |
| Career Track | Client Delivery & Operations |
| Talent Segment | Technology Architecture |
| Career Level | 9 - Consultant |
| Location | Chicago Corp 161 Clark St |
| Geo Index | B |
| Org Unit | Architecture |
| Role | Tech Architecture Delivery Specialist |
| **Annual Salary** | **$79,600** |
| Rating 1 (Most Recent) | 7 - No Rating |
| Rating 2 | 2 - Significantly Above |
| Months-at-Level | 8 |
| Last promotion Date | 12/1/2016 |
| Employee Subgroup | Emp - OT Paid/No Bnk |
| Career Counselor | atul.prabhu |
| Talent Fulfillment Specialist | marcos.moczulski |
| Original Hire Date | 9/22/2010 |
| FTE | 100% |
| Employment Status | Active |

| 210 | US Range 210 Index B (108% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 9 | 72,500 | 87,999 | 88,000 | 103,499 | *103,500* | 119,749 | 119,750 | 136,000 |

| | |
|---|---|
| **Base Salary/annual Salary:** | $79,600 – Zone 1 |
| **Pre-Assignment Salary** | $79,600 (12/01/2016) |
| **Prevailing Wage Salary** | $69,000 (12/01/2016) |

Please let me know if any additional information is needed.

Regards,

6

&lt;image001.jpg&gt;

**Carola Skolaris**
**DTE Field HR NA**
Accenture Enterprise Enablement
Defensa 390, C1065AAF, Buenos Aires
Bangalore • Buenos Aires • Chennai• Chicago • Dalian • Dublin • Manila • Mumbai • Prague • Pune

*My strengths:* Restorative | Positivity | Adaptability | Input | Empathy

**From:** O'Brien, Amy M.
**Sent:** Friday, September 1, 2017 9:40 AM
**To:** Baudi, Analía <analia.baudi@accenture.com>
**Cc:** Mas, Analia <analia.mas@accenture.com>; Evans, Erin <erin.evans@accenture.com>
**Subject:** RE: Need Comp Info Today :) Pratap Singh, Ravi A. 10638269
**Importance:** High

Hi **Analia B**!
Erin confirmed that you or Analia M are still my current contacts for US business day salary info needs.
Analia M is out of office so I'm hoping that you can provide this info this morning?
Please let me know if there's someone else I should be talking with.
Thanks!
Amy M. O'Brien
NA GCP Operations Team

**From:** O'Brien, Amy M.
**Sent:** Thursday, August 31, 2017 10:10 AM
**To:** Mas, Analia <analia.mas@accenture.com>; Baudi, Analía <analia.baudi@accenture.com>
**Subject:** Need Comp Info Today :) Pratap Singh, Ravi A. 10638269

Hello to you both!
It's been awhile since I've had to ask for this type info – thankfully – trust you are both well.

However, now I'm unsure which of you is currently on point to do this for me these days?

1. Please advise which of you is the right contact.
2. Then I need to know current comp for  Pratap Singh, Ravi A.  10638269
   Also need to know what Actual Wage Min/Max is for this employee.

Amy M. O'Brien
NA GCP Operations Team

7

# Exhibit 24

# VISA DEPENDENT COMPANY EXEMPT SALARY INCREASE ANALYSIS

The current prevailing wage is $60k for visa dependent companies. There is the potential for the minimum exempt wage to increase to $90k or $100k.

## Impact of Talent Rotation on percentage of H1b population below $100k.

| USA ALL DTE's | Jan 2017 Data | | | | | Jan 2018 Data | | | | | Chagne in Pctg of H1b's |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Count of H1B Visa Holders | Pctg of H1b Holders at Level | Count of H1B Visa Holders with SAP Salary under $100 K | Percentage under $100 K | Average of SAP Salary | Count of H1B Visa Holders | Pctg of H1b Holders at Level | Count of H1B Visa Holders with SAP Salary under $100 K | Percentage under $100 K | Average of SAP Salary | |
| CL 7 | 272 | 5% | 22 | 8% | $ 124,329 | 385 | 8% | 56 | 15% | $ 111,408 | 3% |
| CL 8 | 1503 | 25% | 1009 | 67% | $ 96,574 | 1592 | 31% | 1176 | 74% | $ 95,311 | 6% |
| CL 9 | 2394 | 40% | 2279 | 95% | $ 81,887 | 2167 | 42% | 2108 | 97% | $ 80,301 | 2% |
| CL10 | 1515 | 25% | 1504 | 99% | $ 72,727 | 895 | 17% | 882 | 99% | $ 72,240 | -8% |
| CL 11 | 229 | 4% | 229 | 100% | $ 62,417 | 56 | 1% | 56 | 100% | $ 60,670 | -3% |
| Total | 5958 | 100% | 5043 | 85% | $ 85,180 | 5126 | 100% | 4278 | 83% | $ 86,025 | |

Exhibit 25

Reddy, Ranpal

| | |
|---|---|
| **From:** | Stapp Holland, Andrea |
| **Sent:** | Friday, May 25, 2018 1:29 PM |
| **To:** | Reddy, Ranpal; Patterson, William B. |
| **Cc:** | Bansal, Shruti B.; Evans, Erin; Stapp Holland, Andrea |
| **Subject:** | GCP OCA Cases for Review - 5/24 Call |
| | |
| **Sensitivity:** | Confidential |

Hello,

We have six new OCA cases to review on today's call, as well as three previously reviewed cases to revisit. Here is a link to the tracking spreadsheet that has all of the details we will need to review and discuss these cases:

OCA Tracker for GCP - FY18

1. Harikishan Pulluri – United Technologies Corp (CMT) (new)
2. Brijesh Bohidar – Hewlett Packard – CMT (revisit)
3. Digvijay Rai (Boeing) – CMT (revisit)
4. Gaurav Khanna (Astellas) – PRD (revisit)
5. Azharuddin Mohammed (Educational Testing Service) – CMT (new)
6. Gurupdesh Singh (JP Morgan Chase) – FS (new)
7. Chandan Kumar Patel (JP Morgan Chase) – FS (new)
8. Pradeep Padmakumar (JP Morgan Chase) – FS (new)
9. Amit Agarwal (JP Morgan Chase) – FS (new)

Current OCA budget utilization for Q3: $163,300 (108.87%). Remaining funds: $-13,300.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Harikrishnan Pulluri**
- Counter offer case.
- Application Development Manager, 29 MAL, SAP S4 HANA skill set, H1B visa, no GC sponsorship.
- Works on United Technologies Corp in Dallas (B). Roll off date is 4/2/2019. Recently asked to relocate to Miami/West Palm Beach (C).
- Base salary is $102,500 (Zone 1), prevailing wage is $116,900 (Zone 2). AWT: $92,000 (Dallas); $98,400 (Miami), Green Band: $115,800-129,600 (Dallas).
- FY17 Talent Outcome: Continue to Grow and Learn. Total Rewards for 12/1: 0.49% ($500) base pay increase and 3.42% ($3,486) variable pay award – $2,324 GAB, $1,162 IPB.
- Project is requesting an adjustment to his salary to retain him.

- A Senior Manager on the account resigned last Friday, so the client is escalating about urgently backfilling this role. They cannot risk another attrition in the space.
- Peer analysis below:

*DALLAS*

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: B \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 7 - Manager \| Talent Segment: Software Engineering \| Role: Application Development Manager \| Accenture Technology \| Technology Centers \| India Delivery Center \| GCP – USA \| Digital Technologies \| Location: Dallas Corp 5221 O'Connor Las Colinas | 5 | $103,800 | $110,140 | $114,400 | $116,900 |

*MAL Filter: up to 29 months*

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: B \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level:7 - Manager \| Talent Segment: Software Engineering \| Role: Application Development Manager \| Accenture Technology \| Location: Dallas Corp 5221 O'Connor Las Colinas | 13 | $92,000 | $118,331 | $118,700 | $136,500 |

*MIAMI*

| Peer Group – GCP + Domestic Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 7 - Manager \| Talent | 6 | $98,400 | $112,450 | $107,750 | $131,100 |

Application Development Manager |
Accenture Technology | Location:
Miami Corp Blue Lagoon

| 211 | US Range 211 Index B (108% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 7 | 92,000 | 110,999 | 111,000 | 129,999 | 130,000 | 148,749 | 148,750 | 167,500 |

| 211 | US Range 211 Index C (Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 7 | 85,000 | 102,749 | 102,750 | 120,499 | 120,500 | 137,749 | 137,750 | 155,000 |

**************************************************************************************************************************************
**********************************

**Brijesh Bohidar**
- Retention case, previously reviewed on 5/18.
- Tech Architecture Delivery Sr Manager, 29 MAL, App cloud skill set, L1A visa, currently in GC process.
  - Petition filed on 3/14/18. Expect EAD in 4-6 months and I-140 approval in 12 months. *I have shared with the project that due to his green card processing it would not be in his best interest to leave Accenture right now.
- Works on Hewlett Packard in San Francisco (AAA). Roll off date is 10/31/2018, account plans on retaining him as core member of IT leadership.
- Base salary is $144,900 (Zone 1). AWT: $137,500, Green Band: $165,200-$184,700.
- FY17 Talent Outcome: Continue to Grow and Learn + Talent Priority. Total Rewards for 12/1: 1.47% ($2,100) base pay increase and 10.29% ($14,693) variable pay award – $10,495 GAB, $4,198 IPB.
- Original project request: increasing salary to $188,370, a 30.0% increase that would put him in **Zone 2**.
  - We recommended between $165,000-$170,000, close to Green Band. Took this recommendation to project.
- Updated project request: increasing salary to $173,900, a 20.0% increase that would put him in **Zone 2**.
- Based on his work and output, concern that his compensation is significantly below where it should be.
- Builds critical relationships with the client. Leads a team of architects across a very complex stack of technologies and drives alignment that drove ~$6M in technology delivery. Critical in vetting and staffing all niche technical USA and Riga roles.
- Led solution design and implementation of the most complex capability on the program. Critical team member supporting a $4M extension, personally responsible for positioning $700k of technical architecture support.
- Project can afford increase as they have built-in sufficient contingency for promotion or pay increase.
- If he leaves, would need 2 full time resources to replace him, overall program scope would be reduced by the client, about $500k of overall deal. No plans to develop skills in local workforce; he has expertise and hands-on ability in Big Data, AI, Skuid UI application, and Salesforce.com.
- Peer analysis below:

*All CL6 in San Francisco, regardless of role or talent segment in blue

| Peer Group - GCP Analysis | Count | Annual Salary | Annual Salary | Annual Salary | Annual Salary |
|---|---|---|---|---|---|
| Geo Index: AAA \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level:6 - Senior Manager \| Talent Segment: Technology Architecture \| Role: Tech Architecture Delivery Sr Manager \| Accenture Technology \| Technology Centers \| GCP – USA \| Location:(All) | 3 12 | $144,900 $142,300 | $165,633 $155,992 | $174,200 $151,500 | $177,800 $177,800 |

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: AAA \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level:6 - Senior Manager \| Talent Segment: Technology Architecture \| Role: Tech Architecture Delivery Sr Manager \| Accenture Technology \| Location: San Fran Corp 1 Market, Spear St | 10 | $137,500 | $173,340 | $168,650 | $205,000 |

| 210 | US Range 210 Index AAA (125% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 6 | 137,500 | 167,499 | 167,500 | 196,999 | 197,000 | 225,499 | 225,500 | 254,000 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Digvijay Rai

- Retention case, previously reviewed on 5/10.
- Application Development Specialist, 79 MAL, SAP HANA skill set, H1B visa, no GC sponsorship.
- Works on Boeing in Seattle (A). Roll off date is 8/31/2018, but plan on extending him through 2019. Have a sold role right now through 12/31/2018.
- Base salary is $80,500 (Zone 1), PW is $99,200 (Zone 2), catch up of $18,700. AWT: $73,600, Green Band: $87,700-$96,900.
- FY17 Talent Outcome: Continue to Grow and Learn + Distinctive Achievement. Total Rewards for 12/1: 1.90% ($1,500) base pay increase and 6.33% ($5,000) variable pay award.
  - Was brought as a 6/1 promotion candidate but was not eligible (marked future promo-ready in 12 months).
- Original project request: increase salary to $99,200 (prevailing wage), a 18.9% increase that would put him in Zone 2 (no net cost to OCA or payroll budgets). Also requested $7,000 retention bonus to come from OCA budget.

4

- smaller catch up allowance. Also no retention bonus unless the account could fund it.
- Updated project request: increase salary above prevailing wage so he sees a difference in his paychecks.
- Does not have an offer in hand but strongly believe he has been discussing an opportunity with another IPP, possibly Tech Mahindra. Account lost another employee to them in early 2017 due to surge of IPP activity in the Seattle market.
- He is the SAP development lead for the project. The face of the development team for the client and the only technical person onsite. Was able to stabilize the team after 2 previous development leads left the space.
- There is a $1.4M business case in sold/unsold work at Boeing that he is directly associated with. Of that work, 15% is development work that he is the only employee responsible for handling.
- To replace him it would take someone with strong technical skills, but they would not have the understanding of Boeing's business. They have tried to process visas for 2 offshore team members but those requests have been rejected. Changing to a new person who is not conversant in the client language would have an adverse effect to the unsold development team effort. Currently have other vendors pitching for the same work and support, so important to maintain a steady presence and team.
- NewIT sessions are in progress in the firm to develop the skill set, but the trainings do not give the right skills to lead teams. Potentially could have experienced resources shadowing on A&D projects like this one to gain the experience in other employees.
- He is currently billed at CL8 so they would be able to recover the increase without dilution to CI.
- Peer analysis below:

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: A | Career Track: Client Delivery & Operations | Depl Country: USA | Career Level: 9 - Consultant | Talent Segment: Software Engineering | Role: Application Development Specialist | Accenture Leadership Career Level:(All) | Accenture Technology | Technology Centers | India Delivery Center | GCP – USA | SAP | SAP Tech Arch | Location: Seattle Corp 818 Stewart | 11 | $83,400 | $95,791 | $99,200 | $105,500 |

*handwritten note:* GCP Emps ave. in Seattle
is higher due to DOL hi
Min. Wage Requirement for
H1-B

MAL filter: up to 79 months

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|

| Geo Index: A...eer Track: Client Delivery & Operations \| Depl Country: USA \| Career Level:9 - Consultant \| Talent Segment: Software Engineering \| Role: Application Development Specialist \| Accenture Technology \| Location:(All) | 19 | $72,400 | $92,916 | $95,100 | $121,300 |

| 211 | US Range 211 Index A (115% premium to Baseline for all levels) | | | | | | |
|-----|--------|--------|--------|--------|--------|--------|--------|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 9 | 72,500 | 88,249 | 88,250 | 103,999 | 104,000 | 119,749 | 119,750 | 135,500 |

*******************************************************************************************************************************
***********************************

### Gaurav Khanna

- Retention case, previously reviewed on 5/4.
- Technology Delivery Lead Senior Manager, 40 MAL, SAP S4 HANA Finance skill set, H1B visa, currently in GC process (I-140 issued).
- Works on Astellas in Chicago (B). Roll off date is 3/31/2019.
- Base salary is $150,000 (Zone 2). AWT: $119,000, Green band: $147,800-$168,600.
- FY17 Talent Outcome: Continue to Grow and Learn. Total Rewards for 12/1: 0% base pay increase and 0.7% ($1,000) variable pay award.
- Project is requesting increasing his salary by at least $10,000. New salary would be $160,000, a 6.7% increase that would put him in Zone 2.
- Relocated from Akron, OH (C) to Northbrook, IL (B). AWT value in OH is $150,000, and AWT value in IL is $119,000. Per our AWT+ methodology for relocations, his new salary for IL was set at the AWT value of $119,000. The employee escalated to IDC, who reviewed with Erin and agreement was to retain his salary at $150,000 (peer average at the time was around $155,000).
- Employee has reached out to me because he is concerned that over the last few years, his compensation has gone down even after being promoted. He feels as if his career has stopped moving forward since he had to leave the US workforce. He joined Accenture in 2011 and was a US employee in Client & Market. In 2015 due to a visa issue he had to relocate to India on 7/1/15. When he left the US his salary was $166,200 in Pittsburg, PA. He came back to the US on a GCP assignment on 7/3/17. This is where he landed in Akron, OH and his salary was $150,000.
- Project wants to retain him. Astellas is a diamond client and we are delivering a major global S4 HANA implementation project with integration of Azure Cloud platform, Ariba and Concur. 5 year roadmap and coming up on first go-live in April 2019. Accenture was at risk last October, and we collectively had to put in a major effort to regain client confidence.
- Filled the SAP S4 HANA Finance lead role, was open from October 2017. Had a $200/hr. contractor filling the role for 4+ months as we couldn't find a good CL6 internal fit. Escalated to MW PRD and NA SAP leadership teams and were able to secure Gaurav to replace contractor.
- Client is very happy with him, he has deep S4 HANA experience and also brings expertise in SAP Central Finance. Losing him would put Finance delivery as well as client relationship at a huge risk.
- Peer analysis below:

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---------------------------|-------|-----------------------|-----------------------|----------------------|-----------------------|

| index: B   reer Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 6 – Senior Manager \| Talent Segment: Business & Technology Integration \| Role: Technology Delivery Lead Senior Manager\| Accenture Technology \| Technology Centers \| India Delivery Center \| GCP – USA \| Location: Chicago Corp 161 Clark St | 4 | $133,300 | $144,025 | $146,400 | $150,000 |

*\* Diff between Min & Max is < $17K.*

*\* Diff here is > $65 K*

MAL filter: up to 43 months

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: B \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 6 – Senior Manager \| Talent Segment: Business & Technology Integration \| Role: Technology Delivery Lead Senior Manager\| Accenture Technology \| Location: Chicago Corp 161 Clark St | 31 | $119,000 | $151,113 | $150,600 | $184,900 |

*\* US Emp. var. variance is high because they are treated per their individual skills, knowledge, experience & whereas GEP Emps. range is very narrow because almost everyone is treated almost same.*

| 210 | US Range 210 Index B (108% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 6 | 119,000 | 144,499 | 144,500 | 169,999 | 170,000 | 194,499 | 194,500 | 219,000 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Azhur Mohammad

- Retention case.
- Application Development Specialist, 41 MAL, JAVA skill set, H1B visa, currently in GC process.
- Works on Educational Testing Service (ETS) in New Jersey (Florham Park, AA). Roll off date is 12/31/2018.
- Base salary is $79,700 (Zone 1), PW is $80,900 (Zone 2), catch up of $1,200. AWT: $75,500, Green Band: $88,200-102,700.
- FY17 Talent Outcome: Continue to Grow and Learn + Distinctive Achievement + Future Promo-Ready Now. Total Rewards for 12/1: 1.92% ($1,500) base pay increase and 6.21% ($4,854) variable pay award.
- Project is requesting to increase salary to $90,000, a 11.2% increase that would put him in Zone 1.
- Does not have an offer in hand but project understands that he is currently looking.

He is the onshore development lead responsible for application development and end-to-end development of all integration services (building interface specification, architecture, design and development of 50+ interfaces). Leading a team of 5 (1 onshore/4 offshore). Leading this release in Agile methodology and also acting as Scrum master.

- Key technical resource who provides technical oversight and guidance to his team, and also occasionally to production support staff. Works with product owners, ETS Director, enterprise architects, and product managers on a daily basis.
- If he leaves, no one on the offshore team has a valid visa to join onshore and take his role. Onshore resource doesn't have technical skills to fill the role. Client would not backfill the role due to financial pressures, and we would likely lose the whole team. Risking $768k of annual revenue and the opportunity to expand our footprint on O&M for the application.
- Account can recover the increase without dilution to CI.
- Peer analysis below:

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: AA \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 9 - Consultant \| Talent Segment: Software Engineering \| Role: Application Development Specialist \| Accenture Technology \| Technology Centers \| India Delivery Center \| GCP – USA \| Advanced Technology and Architecture \| Advanced Technology \| Custom-Distributed \| Java \| Location: Florham Park Corp 500 Campus \| Req Func/Tech Capability: Java Technology Platform \| Req Func/Tech Specialty: Java Enterprise - Back End | 10 | $75,800 | $80,860 | $80,650 | $86,700 |

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: AA \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level:9 - Consultant \| Talent Segment: Software Engineering \| Role: Application Development Specialist \| Accenture Technology \| Location: Florham Park Corp 500 | 5 | $75,400 | $95,940 | $103,300 | $108,600 |

...pus | Re... nc/Tech Capability:
Java Technology Platform

| 211 | US Range 211 Index AA (120% premium to Baseline for all levels) | | | | | | |
|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 |
| 9 | 75,500 | 91,999 | 92,000 | 108,499 | 108,500 | 124,999 | 125,000 | 141,500 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### JP Morgan Chase cases
- Retention cases.
- Concern on the account that these salaries are not in line with peers in the location (these employees are the lowest-paid).

### Gurupdesh Singh
- Test Engineering Senior Analyst, 51 MAL, Testing skill set, H1B visa, No GC sponsorship.
- Works in Columbus (C). Roll off date is 4/29/2019.
- Base salary is $57,100 (Zone 1). AWT: $57,100.
- FY17 Talent Outcome: Promote (in IDC). No info on his 12/1/17 Total Rewards outcomes (came onshore March 2018).
- Project is requesting to increase salary to $61,000, a 6.8% increase that would put him in Zone 2.
- Peer analysis below:

Only aligned to Testing in blue

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Test Engineering Senior Analyst \| Accenture Technology \| Technology Centers \| India Delivery Center \| GCP – USA \| Location: Columbus Corp 400 W. Nationwide Blvd | 6<br>8 | $57,100<br>$57,100 | $68,317<br>$69,238 | $69,950<br>$70,950 | $71,900<br>$72,000 |

9

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Test Engineering Senior Analyst \| Accenture Technology \| Location: Columbus Corp 400 W. Nationwide Blvd | 5 | $57,100 | $68,020 | $70,000 | $75,000 |

| 212 | US Range 212 Index C (Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 10 | 46,000 | 57,249 | 57,250 | 68,499 | 68,500 | 77,249 | 77,250 | 86,000 |

===============================================================================================================================

### Chandan Kumar Patel

- Application Development Senior Analyst, 11 MAL, JAVA skill set, H1B visa, no GC sponsorship.
- Works in Columbus (C). Roll off date is 12/31/2018.
- Base salary is $58,000 (Zone 1). AWT: $57,100.
- FY17 Talent Outcome: Continue to Grow and Learn + Talent Priority. Total Rewards for 12/1: 5.07% ($2,800) base pay increase and 4.26% ($2,352) variable pay award.
- Project is requesting to increase salary to $61,000, a 5.2% increase that would put him in Zone 1.
- Peer analysis below:

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Application Development Senior Analyst \| Accenture Technology \| Technology Centers \| All Delivery Center \| GCP – USA \| Location: Columbus Corp 400 W. Nationwide Blvd | 22 | $58,000 | $66,773 | $66,800 | $75,500 |

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Application Development Senior Analyst \| Accenture Technology \| Location: Columbus Corp 400 W. Nationwide Blvd | 9 | $66,600 | $82,852 | $82,000 | $128,900 |

| 211 | US Range 211 Index C (Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 10 | 51,000 | 61,999 | 62,000 | 72,999 | 73,000 | 84,749 | 84,750 | 96,500 |

--------------------------------------------------------------------------------------------------------------------------------

### Pradeep Padmakumar

- Application Development Senior Analyst, 5 MAL, JAVA skill set, H1B visa, no GC sponsorship.
- Works in Chicago (B). Roll off date is 12/31/2018.
- Base salary is $56,100 (Zone 1), prevailing wage is $59,800 (Zone 1), catch up allowance of $3,700. AWT: $55,000.
- FY17 Talent Outcome: Promote. Total Rewards for 12/1: 10.00% ($5,100) base pay increase and 1.28% ($651) variable pay award.
- Project is requesting to **increase salary to $61,000**, a **2.0% increase** that would put him in **Zone 1.**
- Peer analysis below:

*Only aligned to Java in* blue

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: B \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Application Development Senior Analyst \| Accenture Technology \| Technology Centers \| India Delivery Center \| GCP – USA \| Location: Chicago Corp 161 Clark St | 37<br>8 | $55,000<br>$55,000 | $65,559<br>$63,825 | $65,000<br>$62,900 | $79,000<br>$79,000 |

11

*filter: up* months

| Peer Group - Tech Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: B \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 10 - Analyst \| Talent Segment: Software Engineering \| Role: Application Development Senior Analyst \| Accenture Technology \| Location: Chicago Corp 161 Clark St | 27 | $55,000 | $77,151 | $78,000 | $99,840 |

| 211 | US Range 211 Index B (108% premium to Baseline for all levels) | | | | | | |
|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 |
| 10 | 55,000 | 66,999 | 67,000 | 78,999 | 79,000 | 91,499 | 91,500 | 104,000 |

==============================================================================================

**Amit Agarwal**
- Application Development Specialist, 5 MAL, Testing skill set, H1B visa, no GC sponsorship.
- Worked in New York (AA) but recently transferred to Columbus (C). Roll off date is 12/31/2018.
- Base salary in New York was $83,400 (Zone 1), AWT: $78,000. Offered salary for Columbus is $72,200 (Zone 1), AWT: 65,300. This is a 13.4% decrease.
- FY17 Talent Outcome: Promote. Total Rewards for 12/1: 10.03% ($7,600) base pay increase and 1.96% ($1,482) variable pay award.
- Project is requesting to set his Columbus salary at $76,000, a 8.9% decrease that would put him in Zone 1.
- Peer analysis below:

| Peer Group - GCP Analysis | Count | Minimum Annual Salary | Average Annual Salary | Median Annual Salary | Maximum Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 9 - Consultant \| Talent Segment: Software Engineering \| Role: Application Development Specialist \| Accenture Technology \| Technology Centers \| All Delivery Center \| GCP – USA \| Testing \| Location: Columbus Corp 400 W. Nationwide Blvd | 14 | $69,500 | $72,414 | $71,500 | $81,300 |

12

| Peer Group - Tech Analysis | Count | Annual Salary | Annual Salary | Annual Salary | Annual Salary |
|---|---|---|---|---|---|
| Geo Index: C \| Career Track: Client Delivery & Operations \| Depl Country: USA \| Career Level: 9 – Consultant \| Talent Segment: Software Engineering \| Role: Application Development Specialist Analyst \| Accenture Technology \| Location: Columbus Corp 400 W. Nationwide Blvd | 15 | $70,100 | $86,440 | $88,000 | $99,000 |

| 211 | US Range 211 Index AA (120% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 9 | 75,500 | 91,999 | 92,000 | 108,499 | 108,500 | 124,999 | 125,000 | 141,500 |

| 211 | US Range 211 Index C (Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 9 | 63,000 | 76,749 | 76,750 | 90,499 | 90,500 | 104,249 | 104,250 | 118,000 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Thank you,

Andrea Stapp Holland
PHR, SHRM-CP
Accenture | Sacramento, CA
DTE Field HR Specialist – NA Technology GCP
Office: 916-557-2327
Email: andrea.stapp.holland@accenture.com

*For urgent requests if I am not available, please send a message to GCP.TECH.NA.FieldHR and one of my colleagues will respond as soon as possible.*

For answers to your general HR questions, or to update your personal information: Go to North America PeopleLink, call Peopleline at 1-800-432-2729 or raise a request in the myRequests tool.

*My Gallup StrengthsFinder Top 5 Strengths • Deliberative • Strategic • Relator • Achiever • Learner*

Exhibit 26

Reddy, Ranpal

From:.             Stapp Holland, Andrea
Sent:              Thursday, October 25, 2018 11:53 AM
To:                Patterson, William B.
Cc:                Reddy, Ranpal
Subject:           RE: Celgene : Ask from client for clarifications on immigration update

***Confidential - For Company Internal Use Only***

Hi Pat,

Here's the analysis for Application Development (both CL8 and CL7) in AA Geos. Let me know if you're still comfortable setting his CL8 salary at $115,000, which would place his CL7 salary at $125,400 (9% increase since his CL8 salary is in Zone 1 of the CL7 range, per our standard promo matrix). As a comparison, if he was in range 211, he'd receive a 12% increase with promo, which would set his salary at $128,800.

Should we also consider updating his role to Application Development, instead of Application Support so he's aligned appropriately to the work he's actually performing?

Peer analysis (CL8):

| Data Set: Application Development Assoc. Manager, all Geo AA locations | | |
|---|---|---|
| GCP peers: 125 | Min: | $84,800 |
| | Average: | $102,310 |
| | Median: | $100,300 |
| | Max: | $125,200 |
| Domestic peers: 51 | Min: | $94,100 |
| | Average: | $113,691 |
| | Median: | $111,900 |
| | Max: | $142,300 |
| Combined: 176 | Min: | $84,800 |
| | Average: | $105,686 |
| | Median: | $104,100 |
| | Max: | $142,300 |

| 211 | US Range 211 Index AA (120% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 8 | 92,400 | 110,399 | 110,400 | 135,599 | 135,600 | 166,999 | 167,000 | 191,500 |

Peer analysis (CL7):

| Data Set: Application Development Manager, all Geo AA locations | | |
|---|---|---|
| GCP peers: 38 | Min: | $103,700 |
| | Average: | $119,309 |
| | Median: | $118,550 |

1

|  | Max: | $157,300 |
|---|---|---|
| Domestic peers: 22 | Min: | $104,200 |
|  | Average: | $129,875 |
|  | Median: | $125,350 |
|  | Max: | $195,500 |
| Combined: 60 | Min: | $103,700 |
|  | Average: | $123,184 |
|  | Median: | $119,950 |
|  | Max: | $193,500 |

| 211 | US Range 211 Index AA (120% premium to Baseline for all levels) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Level | Zone 1 | | Zone 2 | | Zone 3 | | Zone 4 | |
| 7 | 102,000 | 121,199 | 121,200 | 148,799 | 148,800 | 183,499 | 183,500 | 212,000 |

Thank you,

Andrea
Field HR Assoc. Manager – NA Technology GCP

NA Tech GCP Field HR Team Support: Erin Evans – H&PS; Bhavna Balakrishna – FS; Andrea Stapp Holland – CMT; Shruti B. Bansal – Canada, RES, Special Groups; Bea Lander Risso – PRD

For answers to your general HR questions, or to update your personal information: Go to North America PeopleLink, call Peopleline at 1-800-432-2729 or raise a request in the myRequests tool.

From: Stapp Holland, Andrea
Sent: Wednesday, October 24, 2018 9:40 AM
To: Patterson, William B. <william.b.patterson@accenture.com>
Subject: RE: Celgene : Ask from client for clarifications on immigration update

Hi Pat,

We said that if he was doing App Support, we would set his pre-promotion salary at $112,500. If he was doing App Dev, we would set his salary at $115,000.

I can run an analysis for App Dev in his location just to double check that $115,000 is appropriate.

Thank you,

Andrea
Field HR Assoc. Manager – NA Technology GCP

NA Tech GCP Field HR Team Support: Erin Evans - H&PS; Bhavna Balakrishna – FS; Andrea Stapp Holland – CMT, PRD; Shruti B. Bansal – Canada, RES, Special Groups

For answers to your general HR questions, or to update your personal information: Go to North America PeopleLink, call Peopleline at 1-800-432-2729 or raise a request in the myRequests tool.

From: Patterson, William B.
Sent: Wednesday, October 24, 2018 5:23 AM

2

Exhibit 27

## USCIS NON-PRECEDENT DECISIONS

| Denial of Visa Petitions for Fake Positions or Speculative Work | | |
|---|---|---|
| **Date** | **Pertinent Language** | **Link to Decision** |
| 4/8/09 | "A visa petition may not be approved based on speculation of future eligibility or after the petitioner or beneficiary becomes eligible under a new set of facts. . . . In the instant matter, the petitioner has not reached the point that it can employ the beneficiary in a predominantly managerial or executive position [for an L-1 visa]. For this reason, the appeal will be dismissed." PP. 8, 10. | https://tinyurl.com/y5qg7voo |
| 7/31/09 | "[T]he record does not include sufficient evidence to determine whether the petitioner compensated each beneficiary as shown on the LCA. That being said, the AAO agrees that the number of petitions filed by this petitioner under its previous name raises concerns regarding the legitimacy of the H-1B petitions. Although the record in this matter is insufficient to determine that the petitioner failed to comply with the terms and conditions of employment of other beneficiaries in other petitions, the AAO observes that the director's findings are justified; thus, the AAO will not disturb the director's decision with regard to this issue." P. 4. | **https://tinyurl.com/y63c6dtw** |
| 1/5/12 | "The record of proceeding lacks sufficient documentation evidencing what exactly the beneficiary would do for the period of time requested or where exactly and for whom the beneficiary would be providing services. . . . The petitioner in this matter not only failed to establish that it had sufficient H-IB caliber work for the beneficiary for the duration of the H-IB employment period, it failed to provide an LCA identifying the beneficiary's actual work location." PP. 9, 10 | https://tinyurl.com/y6jdmrsz |
| 1/2012 | "The record lacks sufficient evidence establishing that the petitioner has sufficient H-I B caliber work at the location identified on the LCA for the duration of the beneficiary's requested H-1B classification. In light of the fact that the record of proceeding is insufficient to establish the beneficiary's work location for the duration of the classification, USCIS cannot conclude that this LCA actually supports and fully corresponds to the H-IB petition." P. 8. | https://tinyurl.com/y46dt9pf |
| 10/18/12 | "The record of proceeding lacks sufficient documentation evidencing what exactly the beneficiary would do for the | https://tinyurl.com/y3yryuat |

|          |                                                                                                                                                                                                                                                                                                                                                                                                                                                                  |                              |
|----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------|
|          | period of time requested or where exactly and for whom the beneficiary would be providing services. Therefore, the appeal must be dismissed and the petition must be denied for this reason." P. 5.                                                                                                                                                                                                                                                                |                              |
| 12/9/15  | "Here, the Petitioner does not establish that the petition was filed for non-speculative work for the Beneficiary that existed as of the time of the petition's filing. There is insufficient documentary evidence in the record corroborating the availability of work for the Beneficiary for the requested period of employment and, consequently, what the Beneficiary would do and how this would impact the circumstances of her relationship with the Petitioner. . . . There is a lack of documentation regarding the claimed project and the Beneficiary's specific role in the project." P. 5. | https://tinyurl.com/y5w4mhps |
| 2/16/16  | "We also find that the Petitioner has not established that it has specialty occupation work available for the Beneficiary. That is, the Petitioner has not established that it has definite, non-speculative work for the Beneficiary for the entire validity period requested. As previously discussed, the Petitioner has not established exactly what the Beneficiary will be doing and where he will be working (e.g., if he will be assigned to an end-client(s) and what work he will perform for the end-client(s), and/or if he will work at the Petitioner's premises). The agency made clear long ago that speculative employment is not permitted in the H-1B program." P. 8. | https://tinyurl.com/yxfl4pfl |
| 5/4/16   | "Moreover, the MSA and SOW were executed on May 6, 2015, after the Director's RFE. Thus, they do not establish that the Petitioner had secured this work assignment as of the time of filing the petition. The Petitioner must establish eligibility at the time of filing the nonimmigrant visa petition. 8 C.F.R. § 103.2(b)(1 ). A visa petition may not be approved at a future date after the Petitioner or the Beneficiary becomes eligible under a new set of facts." P. 5. | https://tinyurl.com/y4cr8aw8 |
| 9/21/17  | "As detailed above, the record of proceedings lacks sufficient documentation evidencing what exactly the Beneficiary would do or where exactly and for whom the Beneficiary would be providing services for the period of time requested. . . . A petition must be filed for non-speculative work for the Beneficiary, for the period requested, that existed as of the time of the petition's filing. . . . A visa petition may not be approved based on speculation of future eligibility. . . Therefore, the appeal is dismissed for this additional reason." PP. 11-12. | https://tinyurl.com/y66qesxl |
| 10/20/17 | "Second, the Petitioner has not established that a bona fide position existed for the Beneficiary at the time of filing. For example, the Petitioner repeatedly claims that the Beneficiary will support its 'software developers and IT | https://tinyurl.com/y392zzc7 |

| | | |
|---|---|---|
| | staff." However, the Petitioner stated on the Form I-129 that it has four employees, and the organizational chart submitted on appeal does not indicate that the Petitioner employed any software developers or IT staff at the time of filing. While the record also contains a proposed organizational chart for 2017, which includes a software developer and a content builder, the Petitioner did not provide any information as to when these employees will be hired. . . . Thus, a petition cannot be approved to meet potential business expansions or the expectation of new customers or contracts." P. 5. | |
| 10/27/17 | "In sum, the Petitioner has not adequately explained and documented what the Beneficiary will do for the entire validity period requested. We therefore find that the Petitioner has not demonstrated the availability of work for the Beneficiary, or the substantive nature of the work that he will perform." P. 5. | https://tinyurl.com/yypps3b8 |
| 6/27/18 | "Simply stated, the Beneficiary will not be employed in the same, original capacity specified on the H-1B petition and LCA: to work for Client S in CO, for the entire validity period requested. As the Petitioner admits, due to budget cutbacks, Client S no longer required the services effective June 2017, four months prior to the requested start-date of the Beneficiary's H-1 B employment in the petition. The viability of the instant H-1B petition ended with the termination of the Beneficiary's assignment with Clients. . . . A visa petition may not be approved at a future date after the Petitioner or Beneficiary becomes eligible under a new set of facts." PP. 3, 4. | https://tinyurl.com/y5cl34ea |
| 8/9/18 | "Preliminarily, we conclude that the Petitioner has not established definitive, non-speculative employment for the Beneficiary. The Petitioner claims that the Beneficiary would work for the end- client in California for the entire period of H-1 B period, a period of 35 months. However, the record contains no contractual agreements executed between the Petitioner and the end-client supporting this claim. In other words, the record of proceedings is currently insufficient to establish that the position described in this petition actually exists. If we cannot determine whether the proffered position exists, then we cannot ascertain its substantive nature." P. 3. | https://tinyurl.com/yy3rgq7l |
| 9/26/18 | "On appeal, the Petitioner cannot offer a new position to the Beneficiary, or materially change a position's title, its level of authority within the organizational hierarchy, the associated job responsibilities, or the requirements of the position. The Petitioner must establish that the position offered to the Beneficiary when the petition was filed merits classification for the benefit sought." Pg. 5. | https://tinyurl.com/y53n69vo |

| 11/30/18 | "The record is devoid of any legal documents that purport to create an obligation to provide work for the Beneficiary to perform. In other words, the record lacks evidence of an obligation on the part of the end-client to provide the position proffered by the Petitioner. If we cannot determine whether the proffered position will actually exist, we cannot ascertain its substantive nature so as to determine whether it is a specialty occupation." P. 4. | https://tinyurl.com/yxnp45xc |
|---|---|---|
| 2/15/19 | "In sum, the record is insufficient to demonstrate that a bona fide internal project actually exists and what exactly the Beneficiary will be doing for the Petitioner in the proffered position." P. 5. | https://tinyurl.com/yxgj9ctg |
| 3/7/19 | "Upon review, we find that the record lacks documentation regarding the work that the Beneficiary would perform to sufficiently substantiate that it has H-1B caliber work for the requested period. For H-1B approval, the Petitioner must demonstrate a legitimate need for an employee exists and substantiate that it has H-1B caliber work for the Beneficiary for the period of employment requested in the petition." P. 4. | https://tinyurl.com/yympake9 |
| 5/30/19 | "We conclude first that the Petitioner has not established definitive, non-speculative employment for the Beneficiary. The current record is not sufficient to establish that the proffered position actually exists, let alone that it is a specialty occupation. . . .In other words, there is no evidence of any obligation on the part of end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non-speculative employment." P. 3. | https://tinyurl.com/y5dbjkwy |
| 5/31/19 | "We conclude first that the Petitioner has not established definitive, non-speculative employment for the Beneficiary. The current record is not sufficient to establish that the proffered position actually exists, let alone that it is a specialty occupation. . . , There is little indication that this petition was filed for non- speculative employment. If we cannot determine whether the position as described by the petitioner actually exists, then we cannot ascertain its substantive nature, let alone determine whether it is a specialty occupation." PP. 3-4. | https://tinyurl.com/y5f7tas7 |
| 6/26/19 | "Furthermore, inaccurate information anywhere on the Form I-129 or in the evidence submitted in connection with the petition potentially supports its denial. . . . [T]he Petitioner mistakenly and repeatedly uses masculine gender pronouns when referencing the Beneficiary. The record provides no explanation for this inconsistency. Thus, we must question the accuracy of the documents and whether the information provided is correctly attributed to this particular Beneficiary and the proffered position. . . . [W]e conclude that the record does not demonstrate definitive, non-speculative employment for the Beneficiary [and that] | https://tinyurl.com/y6a7ubar |

| | | |
|---|---|---|
| | the material on record is insufficient to establish the Petitioner secured the Beneficiary's assignment on any particular project. . . . A visa petition may not be approved at a future date after a petitioner or beneficiary becomes eligible under a new set of facts." PP. 3, 4, 11. | |
| 6/27/19 | "Although the end-client letters briefly touched upon these elements, the inconsistencies between its duties and requirements when compared to those stated by the Petitioner and the vendor in their letters and SOWs suggest that the Petitioner has not secured definite, non-speculative work for the Beneficiary for the entire validity period requested, and had not secured definite, non-speculative work for the Beneficiary at the time of filing. A petition must be filed for non-speculative work for the Beneficiary, for the entire period requested, that existed as of the time of the petition's filing. The Petitioner has not demonstrated the substantive nature of the duties the Beneficiary would perform." P. 5. | https://tinyurl.com/y5r62alu |
| 6/27/19 | "This would appear to be speculative employment, which has not historically been permitted in the H-1 B program." P. 5. | https://tinyurl.com/y47drrmy |
| 6/28/19 | "In addition, the Petitioner has not submitted supporting documentation to substantiate that the Beneficiary would actually be engaged in specialty occupation work during the period requested In the H-1B petition, the Petitioner requested a period of employment from March 2016 through March 2019. The record contains a letter from the end-client … [which] states the project the Beneficiary will be working on is expected to last until December 2017. However, the record also contains emails from the end-client stating that the project was cancelled in June 2016." P. 5. | https://tinyurl.com/yxfcuvol |
| 6/29/19 | "We conclude first that the Petitioner has not established definitive, non-speculative employment for the Beneficiary. The current record is not sufficient to establish that the proffered position actually exists, let alone that it is a specialty occupation. . . .In other words, there is no evidence of any obligation on the part of end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non- speculative employment." P. 3. | https://tinyurl.com/yytd3kgj |
| 7/18/19 | "Although the Petitioner submitted documents regarding the ERP project, the Petitioner has not specifically explained the duties and role of the proffered position in the context of this project. The ERP project documents do not mention the Beneficiary's name, job title, or duties. In fact, the documentation raises serious questions as to whether the Beneficiary will be assigned to the ERP project at all. We note that in the Director's decision, the Director states that | https://tinyurl.com/y55eyc3t |

| | | |
|---|---|---|
| | the project documentation does not show that the ERP project is a bona fide project." P. 4. | |
| 7/25/19 | "We conclude first that the Petitioner has not established the existence of definitive, non-speculative employment for the Beneficiary. In other words, the current record is not even sufficient to establish that the proffered position actually exists, let alone that it is a specialty occupation. . . . These documents - the SA and work statement - are the only legal documents that purport to create any obligation to provide work for the Beneficiary to perform. They create no obligation on the part of the end-client. They do not establish the existence of a specialty occupation position at the end-client's worksite. In other words, there is no evidence of any obligation on the part of end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non-speculative employment. If we cannot determine whether the position as described by the Petitioner actually exists, then we cannot ascertain its substantive nature, let alone determine whether it is a specialty occupation" PP. 2, 3. | https://tinyurl.com/yxnnya75 |
| 7/29/19 | "The Petitioner … indicated that the Beneficiary would work at the end-client's location in Texas, through a series of contracts with a mid-vendor, located in California, and a prime vendor, located in Missouri. However, the record does not contain documentary evidence of a contract, such as a master service agreement (MSA) and corresponding statement of work (SOW) or work order (WO) between the end-client and any other entity. Moreover, the documentary evidence of the contracts among the parties in the record do not establish the substantive nature of the work for which they contracted, or that they contracted for the Beneficiary to perform that work." P. 2. | https://tinyurl.com/y4wkduyy |
| 8/6/19 | "First, we find that the Petitioner has not adequately established that it has secured definite, non-speculative work for the Beneficiary. Specifically, the Petitioner has not submitted sufficient documentation to substantiate that it has work available for the Beneficiary to perform. . . . [T]he contracts submitted run, at most, through January 14, 2018, which is two years and eight months prior to the end of the requested employment period. Further, all of the contracts include language specifying that '[t]here is no obligation on the Corporation to offer further assignments.' In other words, there is little evidence of an obligation on the part of the Petitioner's clients, or any third-party end-clients, to provide any work for the Petitioner's company, or specifically, the Beneficiary." PP. 2, 3. | https://tinyurl.com/y3jmfrxf |
| 8/6/19 | "These basic uncertainties also raise questions as to whether this petition was filed for speculative employment. If there is in fact an end-client as has been claimed at several points | https://tinyurl.com/y5u8gy72 |

6

| | | |
|---|---|---|
| | during this petition's pendency, then we question why the record does not contain copies of any contracts or similar documentation executed between the Petitioner and this end-client. As presently constituted, the record does not establish that the petition was filed for non-speculative work for the Beneficiary that existed as of the time of the petition's filing" P. 4. | |
| 8/7/19 | "Eligibility for the benefit sought must be assessed and weighed based on the facts as they existed at the time the instant petition was filed and not based on what were merely speculative facts not then in existence. We thus conclude that the Petitioner has not established that the petition was filed for non-speculative work for the Beneficiary." P. 2. | https://tinyurl.com/yxerrch4 |
| 8/8/19 | "While the Petitioner may be able to eventually locate some type of work for the Beneficiary, it has not established that the petition was filed for non-speculative work for the Beneficiary that existed as of the time of the petition's filing. The Petitioner did not submit sufficient evidence such as contracts or corroborating evidence that it has secured in-house project for the Petitioner or other client projects that will continue until September 2021, and will require the services of the Beneficiary as a software developer for that entire period. A petition must be filed for non-speculative work for the Beneficiary, for the entire period requested, that existed as of the time of the petition's filing. Our regulations affirmatively require a petitioner to establish eligibility for the benefit it is seeking at the time the petition is filed." P. 4. | https://tinyurl.com/yyzfggy2 |
| 8/8/19 | "The SA is the only legal document that purports to create any obligation to provide work for the Beneficiary to perform. It creates no obligation on the part of the end-client; the end-client is not a party to any of the referenced agreements. It does not establish the existence of a specialty occupation position at the end-client's worksite. In other words, there is no evidence of any obligation on the part of end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non-speculative employment. If we cannot determine whether the position as described by the Petitioner actually exists, then we cannot ascertain its substantive nature, let alone determine whether it is a specialty occupation." P. 3. | https://tinyurl.com/y29roabz |
| 8/8/19 | "As the record does not contain sufficient and consistent information regarding the actual work that the Beneficiary would perform and the intended period of employment, the Petitioner has not established the substantive nature of the work to be performed by the Beneficiary. This precludes a conclusion that the proffered position satisfies any criterion at 8 C.F.R. § 214.2(h)(4)(iii)(A)." P. 6. | https://tinyurl.com/y5t52rdk |

| | | |
|---|---|---|
| 8/20/19 | "These documents are the only legal documents that purport to create any obligation to provide work for the Beneficiary to perform. They create no obligation on the part of the end-client; the end-client is not a party to any of the referenced agreements. They do not establish the existence of a specialty occupation position at the end-client's worksite. In other words, there is no evidence of any obligation on the part of end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non-speculative employment. If we cannot determine whether the position as described by the petitioner actually exists, then we cannot ascertain its substantive nature, let alone determine whether it is a specialty occupation." P. 4. | https://tinyurl.com/y5p8apyr |
| 8/20/19 | "As discussed above, the Petitioner did not submit the contractual agreements between all of the parties. While the record contains an email and a letter from the end-client, they are not legal documents that purport to create any obligation to provide work for the Beneficiary to perform. They do not establish the existence of a specialty occupation position at the end-client's worksite. In other words, there is no evidence of any obligation on the part of the end-client to provide the position the Petitioner describes in this petition for the Beneficiary. There is little indication that this petition was filed for non-speculative employment. If we cannot determine whether the position as described by the Petitioner actually exists, then we cannot ascertain its substantive nature, let alone determine whether it is a specialty occupation." P. 5. | https://tinyurl.com/y3u5nfdc |
| 8/29/19 | "We conclude first that the Petitioner has not established definitive, non-speculative employment for the Beneficiary. In other words, the current record is not even sufficient to establish that the proffered position actually exists, let alone that it is a specialty occupation. Though the record makes mention of a 'subcontract agreement' executed between the Petitioner and the mid-vendor, the Petitioner did not submit that document. . . . The absence of this type of evidence is important because, in this case, the existence of the proffered position appears dependent entirely upon the willingness of the end-client to provide it. Absent additional evidence, the record lacks evidence of any obligation on the part of the end-client to provide the position described by the Petitioner in this petition. If we cannot determine whether the proffered position as described will actually exist, then we cannot ascertain its substantive nature so as to determine whether it is a specialty occupation." PP. 4, 5. | https://tinyurl.com/y499gtp9 |
| 9/19/19 | "The Petitioner must establish that all eligibility requirements for the immigration benefit have been satisfied at the time of filing. 8 C.P.R.§ 103.2(b)(l). A visa petition may not be approved based on speculation of future | https://tinyurl.com/yy4yelry |

| | eligibility or after the Petitioner or Beneficiary becomes eligible under a new set of facts." PP. 5-6. | |

| Denial of Visa Petitions for Failure to Pay Proper Wage Rate | | |
|---|---|---|
| **Date** | **Pertinent Language** | **Link to Decision** |
| 8/3/10 | "In the instant case, the LCA states that the petitioner intends to employ the beneficiary from July 15, 2007 to July 15, 2010 and that it intends to pay the beneficiary, as her salary, $45,695.29, which is above the required minimum prevailing wage of $38,060 per year. The Form 1-129 visa petition submitted in this case, however, states that the petitioner would employ the beneficiary from November 1 1, 2008 through May 3 1, 2012 for $32,000 per year, a wage below that required by section 212(n)(l)(A) of the Act, 8 U.S.C. 5 1 182(n)(l)(A). The terms of the LCA submitted to support the visa petition do not correspond with the terms of the visa petition and cannot, therefore, be used to support it. The petition must therefore be denied on this additional basis." P. 7. | https://tinyurl.com/y4wx2fgw |
| 8/18/12 | "The petitioner's offered wage to the beneficiary of $28.84 per hour (as stated on the LCA) is below the prevailing wage for the occupational classification of 'Financial Managers' in the area of intended employment. . . . As such, the petitioner has failed to establish that it would pay the beneficiary an adequate salary for her work, as required under the Act, if the petition were granted. Thus, even if it were determined that the petitioner overcame the director's ground for denying the petition (which it has not), the petition could still not be approved due to the petitioner's failure to submit a certified LCA for the proper occupational and wage classification for the proffered position. Thus, for this independent reason, the H-IB cannot be approved." P. 11-12. | https://tinyurl.com/yyyskruq |
| 2/22/13 | "The statements regarding the claimed level of complexity, independent judgment and understanding required for the proffered position are materially inconsistent with the certification of the LCA for a Level I entry-level position. This conflict undermines the overall credibility of the petition. The AAO finds that, fully considered in the context of the entire record of proceedings, the petitioner failed to establish the nature of the proffered position and in what capacity the beneficiary will actually be employed. For the foregoing reasons, a review of the enclosed LCA indicates that the information provided does not correspond to the level of work and requirements that the petitioner ascribed to the proffered position and to the wage-level corresponding to such a level of work and requirements in accordance with the pertinent LCA regulations. As a result, | https://tinyurl.com/y5m86tkb |

| | | |
|---|---|---|
| | "… the petition could not be approved for this independent reason." P. 11. | |
| 2/22/13 | "In the instant case, the petitioner and counsel repeatedly claim that the nature of the proffered position involves complex, unique and/or specialized tasks. . . . Moreover, based upon a review of the organizational chart, it appears that the proffered position is one of the most senior positions in the petitioner's company. . . . [However, t]he AAO notes that the prevailing wage of \$28.84 per hour on the LCA corresponds to a Level I position for the occupational category of 'Public Relations and Fundraising Managers' for Harris ·County (Houston, TX). . . . The petitioner was required to provide, at the time of filing the H-IB petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. . . . Therefore, the petitioner has failed to establish that it would pay the beneficiary an adequate salary for his work, as required under the Act, if the petition were granted." PP. 11-12. | https://tinyurl.com/y33bfumh |
| 2/25/13 | "The petitioner was required to provide, at the time of filing the H-IB petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. As such, the petitioner has failed to establish that it would pay the beneficiary an adequate salary for her work, as required under the Act, if the petition were granted. Thus, … for this reason also the H-1B petition cannot be approved. It is considered an independent and alternative basis for denial." P. 12. | https://tinyurl.com/y6erv977 |
| 4/29/13 | "[T]he AAO must question the level of complexity, independent judgment and understanding actually required for the proffered position as the LCA is certified for a Level I entry-level position. This characterization of the position and the claimed duties and responsibilities as described by the petitioner conflict with the wage-rate element of the LCA selected by the petitioner, which, as reflected in the discussion above, is indicative of a comparatively low, entry-level position relative to others within the occupation. . . . The petitioner was required to provide, at the time of filing the H-1B petition, an LCA certified for the correct wage level in order for it to be found to | https://tinyurl.com/y4vf8227 |

| | | |
|---|---|---|
| | correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. Therefore, the petitioner has failed to establish that it would pay an adequate salary for the beneficiary's work, as required under the Act, if the petition were granted. Thus, for this reason, even if it were determined that the petitioner overcame the director's basis for denial of the petition (which it has not), the petition could not be approved." P. 13. | |
| 5/1/13 | "The petitioner was required to provide, at the time of filing the H-1B petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(1)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. Therefore, the petitioner has failed to establish that it would pay an adequate salary for the beneficiary's work, as required under the Act, if the petition were granted." P. 9. | https://tinyurl.com/y5474wzv |
| 5/2/13 | "The AAO notes that the prevailing wage of $20.18 per hour on the LCA corresponds to a Level I position for the occupational category of 'Paralegals and Legal Assistants' for NY. Notably, if the proffered position had been designated at a higher level, the prevailing wage at that time would have been $24.64 per hour for a Level II position, $29.11 per hour for a Level III position, and $35.57 per hour for a Level IV position. The petitioner was required to provide, at the time of filing the H-1B petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. Therefore, the petitioner has failed to establish that it would pay an adequate salary for the beneficiary's work, as required under the Act, if the petition were granted." PP. 11-12. | https://tinyurl.com/y2u6vp34 |
| 5/31/13 | "[T]he petition must also be denied due to the petitioner's failure to provide a certified Labor Condition Application (LCA) that corresponds to the petition. Specifically, the job title on the LCA submitted with the petition reads 'Staff Development Manager,' and it was certified for SOC (O*NET/OES) Code 11-3042 or 'Training and Development Managers' for a Level I, entry-level position with a prevailing wage at that time of $48,443 per year. As determined supra, however, the job as titled and as | https://tinyurl.com/y2qlahaf |

| | | |
|---|---|---|
| | described by the petitioner is best classified as a registered nurse, i.e., SOC (O*NET/OES) Code 29-1111, for which the minimum prevailing wage at that time in Cook County, Illinois was $50,003 per year." P. 19. | |
| 6/21/13 | "The petitioner was required to provide, at the time of filing the H-1B petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(1)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. Therefore, the petitioner has failed to establish that it would pay the beneficiary an adequate salary for her work, as required under the Act, if the petition were granted. . . . As such, a review of the enclosed LCA indicates that the information provided therein does not correspond to the level of work and requirements that the petitioner ascribed to the proffered position and to the wage-level corresponding to such higher level work and responsibilities, which if accepted as accurate would result in the beneficiary being offered a salary below that required by law." PP. 13-14. | https://tinyurl.com/y395jqcr |
| 6/25/13 | "[T]he petition must also be denied due to the petitioner's failure to provide a certified Labor Condition Application (LCA) that corresponds to the petition. Specifically, although the job title on the LCA submitted with the petition reads 'Multimedia Production Artist,' it was certified for SOC (O*NET/OES) Code 27-1024 or 'Graphic Designers.' For the reasons discussed, supra, the job as described by the petitioner, however, is best classified under SOC (O*NET/OES) Code 15-1099.04 or 'Web Developers.' . . . In this matter, this would result in an LCA certified for a Level I prevailing wage of $38,272 per year for a graphic designer when a certified LCA should have been submitted for a web developer position with a minimum, Level I prevailing wage at that time of $45,469 per year (or $21.86 per hour). As such, the attested wage rate of $21.00 per hour on the Form I-129 would fall below that required by law at that time for the proffered position of web developer for the petitioner." PP. 13-14. | https://tinyurl.com/y6ydj6bd |

| 8/2/13 | "The petitioner was required to provide, at the time of filing the H-1B petition, an LCA certified for the correct occupational category and wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different occupation at a lower prevailing wage than the one that it claims it is offering to the beneficiary. As such, the petitioner has failed to establish that it submitted a certified LCA that properly corresponds to the claimed occupation and duties of the proffered position and that it would pay the beneficiary an adequate salary for her work, as required under the Act, if the petition were granted. Thus, for this reason also, the H-1B petition cannot be approved." P. 24. | https://tinyurl.com/y2net6z9 |
| 8/30/13 | "To allow the petitioner to simply submit an LCA for a different occupation and at a lower prevailing wage than the position set out in the petition results in the petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, 8 U.S.C. § 1182(n)(l)(A). In this matter a review of the petitioner's description of the claimed duties of the proffered position reveals that several of the duties involve planning delivery of, as well as, establishing standards, and implementing, managing, evaluating, and revising health care services and programs. Such duties correspond to one of the primary duties of a medical and health services manager, the duty of working to improve the efficiency and quality of delivering healthcare. Thus, at the very least, the petitioner should have recognized and submitted an LCA that lists the occupational classification of a medical health and services manager, SOC (O*NET/OES) Code 11-9111.4 Upon review of the totality of the record, the petitioner has failed to submit a valid LCA that has been certified for the proper occupational classification and wage level and thereby properly corresponds to and supports the petition. Accordingly, the petition must be denied for this additional reason." P. 13. | https://tinyurl.com/y5gyzqgj |
| 8/26/14 | "Here, the petitioner's offered wage of $62,600 to the beneficiary is below the prevailing wage level for the occupational category in the area of intended employment and for the time period of employment, which is $65,000. . . . Thus, at the time of filing the petition, the petitioner did not attest that it would pay the beneficiary an adequate wage for his work if the petition were approved. For this additional reason, the petition is not approvable." P. 3 n.2. | https://tinyurl.com/y3p4mlyp |

| 3/3/15 | "In this matter, the LCA was certified for a Level I prevailing wage of $46,592 per year for an accountant or auditor while the wage for a financial analyst position with a minimum, Level I prevailing wage at that time in the same metropolitan division was $58,656 per year (or $28.20 per hour). . . . As such, the proposed annual wage of $46,620 per year listed by the petitioner on the Form I-129 is $12,036 below that required by law at that time for the proffered position of financial analyst. . . .The regulation at 20 C.F.R. § 655 .705(b) requires that USCIS ensure that an LCA actually supports the H-1B petition filed on behalf of the beneficiary. Here, the petitioner has failed to demonstrate that it has submitted a valid LCA that has been certified for the proper occupational classification, and the petition must be denied for this additional reason." PP. 17-18. | https://tinyurl.com/y6rjr8jr |
|---|---|---|
| 3/26/15 | "[T]he claimed level of education, knowledge and special skills required to perform the duties of the proffered position as stated by the petitioner is at odds with the wage rate selected by the petitioner on the LCA, which is indicative of a comparatively low, entry-level position relative to others within the same occupation. . . . The petitioner was required to provide, at the time of filing the H -1 B petition, an LCA certified for the correct wage level in order for it to be found to correspond to the petition. To permit otherwise would result in a petitioner paying a wage lower than that required by section 212(n)(1)(A) of the Act, by allowing that petitioner to simply submit an LCA for a different wage level at a lower prevailing wage than the one that it claims it is offering to the beneficiary. Therefore, if the proffered position were found to qualify as a specialty occupation on the basis that it was a higher level and more complex position, as claimed elsewhere in the petition, the petition could still not be approved as the petitioner has not established that it would pay the wage required for that level of work as required under the Act." PP. 13-14. | https://tinyurl.com/y38ls7s6 |
| 5/25/15 | "[T]he petitioner's proffered wage of $43,742 does not comply with the prevailing wage in the County, CA MSA for a position that encompasses the duties of a 'Management Analyst' position. If the petitioner is claiming that the position proffered here actually corresponds most closely to that of a management analyst, …[t]he attested offered salary of $43,742 per year on the Form I-129 would fall well below that required by law for a position that includes the duties of a management analyst. . . . The fact that the LCA so clearly lists the wrong occupational code and the wrong prevailing wage undermines the credibility of the petition." P. 8. | https://tinyurl.com/y2rctpx6 |

| 5/26/15 | "However. the petitioner's proffered wage of $47,000 does not comply with the prevailing wage in the OH MSA for a position that encompasses the duties of a 'Software Developer, Applications' position. . . . The attested salary of $47,000 per year on the Form I-129 falls well below that required by law for the position of 'Software Developer, applications.' . . . [T]he petitioner provided the wrong occupational code and prevailing wage on the LCA and was able to obtain an LCA certified for a different occupation at a much lower rate of pay[.] . . . Here, the petitioner has not submitted a valid LCA that has been certified for the proper occupational classification, and the petition must be denied for this reason." P. 11. | https://tinyurl.com/y479m8ro |
| 7/1/15 | "If the petitioner believes the proffered position encompasses a combination of occupations, it should have chosen the relevant occupational code for the highest paying occupation, in this case 'Computer Systems Analyst.' However, the petitioner chose the occupational category 'Computer Network Support Specialists' for the proffered position. Thus, the petitioner was able to obtain an LCA certified for an occupation at a much lower rate of pay, then turn to users and claim that the position is for any number of occupations that require a much higher prevailing wage in an attempt to qualify the proffered position as a specialty occupation. To permit this would result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, 8 U.S.C. § 1182(n)(l)(A), by allowing the petitioner to simply submit an LCA for a different occupation and at a lower prevailing wage than the one being petitioned for." P. 17. | https://tinyurl.com/y4c6gggv |
| 5/9/16 | "The Petitioner's assertion that the proffered position requires a significant level of responsibility and expertise, as well as the completion of a J.D. degree, do not appear to be reflected in the wage level chosen by it on the LCA. The statements regarding the claimed level of complexity. independent judgment and understanding required for the proffered position. as well as the requirements. appear to be materially inconsistent with the certification of the LCA tor a Level II position. This conflict challenges the overall credibility of the petition in establishing the nature of the proffered position and in what capacity the Beneficiary will be employed. Therefore. we are precluded from finding that the proffered position is a specialty occupation." P. 4. | https://tinyurl.com/y5j7k2jt |
| 5/31/16 | "We find that the Petitioner has not submitted an LCA which corresponds to the petition. The LCA provided at the time of filing was certified for (1) a financial reporting specialist, (2) pursuant to SOC code 43-3031 for 'Bookkeeping, Accounting, and Auditing Clerks,; (3) within the metropolitan statistical area (MSA) in Ohio, and (4) at a Level II prevailing wage of $35,651 per year. However, if the proffered position is in fact a financial | https://tinyurl.com/y3sg69at |

| | | |
|---|---|---|
| | analyst position, the prevailing wage for SOC code 13-2051, 'Financial Analysts,' within the MSA, at a Level II is $63,918 per year. Although the LCA was certified for the proper MSA, it does not appear correspond to the Petitioner's claimed proffered position of a financial analyst." P. 6. | |
| 5/30/17 | "For purposes of the LCA, when a position involves duties of more than one occupational classification, the employer should choose the occupational classification of the most relevant, i.e., highest-paying, occupation. In this case, the higher paying occupation is for 'software developers, applications,' for which the minimum prevailing wage is approximately $10,000 more per year than that of 'computer programmers' and the wage offered to the Beneficiary. Based upon the Petitioner's repeated assertions regarding the software development duties of the Beneficiary, we are unable to determine whether the Petitioner selected the most relevant occupational code, and therefore, the correct prevailing wage." PP. 4-5. | https://tinyurl.com/y4743hnb |
| 6/1/18 | "The prevailing wage for all three occupational categories at a Level I wage are significantly higher than the prevailing wage for the "Market Research Analysts and Marketing Specialists' category selected by the Petitioner. Thus, according to DOL guidance, if the Petitioner believed its position was appropriately described as one of these other occupational categories, or was a combination of them. it should have chosen the relevant occupational code for the highest-paying occupation. However, the Petitioner chose the occupational category for the lower paying occupation for the proffered position on the LCA. . . . The regulation at 20 C.F.R. § 655.705(b) requires that USCIS ensure that an LCA actually supports the H-1 B petition filed on behalf of the Beneficiary. Here, the Petitioner has not submitted a certified LC A that corresponds to the claimed duties of the proffered position. Therefore. the petition cannot be approved for this additional reason." P. 8. | https://tinyurl.com/yx8fzzes |
| 10/22/18 | "Additionally, we note that the LCA provided in support of the instant petition is certified for a computer programmer in Conshohocken, Pennsylvania at a Level I prevailing wage level. . . . Upon review, it appears that most, if not all, of the stated duties correspond to those of a software developer. The prevailing wage for the occupational category of 'Software Developers, Applications,' at a Level I wage in Conshohocken, Pennsylvania, is significantly higher than the prevailing wage for the 'Computer Programmer' category selected by the Petitioner. Thus, according to DOL guidance, if the Petitioner believed its position was appropriately described as a software developer, or was a combination of both a computer programmer and software developer, it should have chosen | https://tinyurl.com/y4u7k233 |

16

| | | |
|---|---|---|
| | the relevant occupational code for the highest-paying occupation. However, the Petitioner chose the occupational category for the lower paying occupation for the proffered position on the LCA." PP. 8-9. | |
| 10/31/18 | "When a position is actually a combination of occupations, a petitioner, at a minimum, must use the SOC code for the occupation that has the higher wage. The following are the Level II prevailing wage rates for the relevant timeframe and location for each occupation - we are providing the Level II wage rates because when skill sets cross disciplines, the result is a combination of occupations and one point is added on the worksheet raising the wage level by one level. ... Each of these occupations pays a higher wage than the one designated on the LCA. Consequently, it does not appear that the Petitioner selected the correct occupational classification on the LCA, which does not comply with the DOL guidance." P. 4. | https://tinyurl.com/y6zcpen3 |
| 10/31/18 | "[T]he petition also cannot be approved because the Petitioner has not provided a certified LCA that corresponds to the petition. . . . [T]he Petitioner was required to provide at the time of filing an LCA certified for the correct prevailing wage in order for it to be found to correspond to the petition. To permit otherwise may result in a petitioner paying a wage lower than that required by section 212(n)(l)(A) of the Act, 8 U.S.C. § 1 182(n)(l)(A), by allowing that petitioner to submit an LCA for a lower prevailing wage than mandated by the position being petitioned for." PP. 12-13. | https://tinyurl.com/yxsqjysv |
| 4/30/19 | "Here, the prevailing wage for marketing managers is $77,501 per year, which is $17,501 more than the $60,000 wage rate provided on the LCA. In addition, even if the Petitioner were to establish that it selected the correct SOC code, the inclusion of so many duties that fall outside of the tasks usually associated with a sales manager, including marketing and operations management tasks, would necessitate at least a one-step increase at step 4 of the five step process detailed by the DOL guidance. . . . In light of the above, the Petitioner has not established that the LCA corresponds with the petition." P. 4. | https://tinyurl.com/yy6eptbf |
| 5/2/19 | "[A]ccording to U.S. Department of Labor (DOL) guidance, if the Petitioner believed its position was appropriately described as a software developer, or was a combination of both a computer programmer and software developer, it should have chosen the relevant occupational code for the highest-paying occupation. However, the Petitioner chose the occupational category for the lower paying occupation for the proffered position on the LCA. . | https://tinyurl.com/y36eh3ce |

| | | |
|---|---|---|
| | . The regulation at 20 C.F.R. § 655.705(b) requires that USCIS ensure that an LCA actually supports the H-1B petition filed on behalf of the Beneficiary. Here, the Petitioner has not submitted a certified LCA that corresponds to the claimed duties of the proffered position. Therefore, the petition cannot be approved for this additional reason." P. 6. | |
| 6/26/19 | "[T]he Petitioner's prerequisites appear to warrant an increase in the prevailing wage level at a higher rate than the Level I rate the Petitioner designated on the LCA . . . . Of additional concern, the annual salary the Petitioner listed on the petition was less than the minimum prevailing wage for a Level I rate." PP. 4-5. | https://tinyurl.com/y6a7ubar |

18

# Exhibit 28

## Reddy, Ranpal

| | |
|---|---|
| From: | Reddy, Ranpal |
| Sent: | Monday, October 6, 2014 10:52 AM |
| To: | Yedo, Julia L.; Joseph, Johny |
| Subject: | RE: ASE Nominations - FY15 H1B drive |

Julia – This is really news to me that IDC is planning to file about 25% (2250) of new H1B petitions for ASEs (Level 12). Even from the supporting documentation (SOW, MSA, ROC etc) perspective, I am not sure how we are going to support / justify over 10k new petitions this year.

Though I understand and agree with you on the related educational / degree concerns, I think most of those candidates will likely have IT degrees. Let me run it by Sandra and/or Steve to see how to take it up with the leadership team.

Johny – Was there any education, alert and/or concern shared with IDC leadership team from IDC PMSD other than Julia's note to Mohan in this trail?

Regards - Ranpal
-------------------------------------------------------------------------------------------------------------
GCP Lead - Delivery Centers in North America || Ph(OC)#: 469-665-5012 || OC: Ranpal.Reddy

**From:** Yedo, Julia L.
**Sent:** Monday, October 06, 2014 9:57 AM
**To:** Reddy, Ranpal
**Cc:** Joseph, Johny
**Subject:** FW: ASE Nominations - FY15 H1B drive

### ***Confidential - For Company Internal Use Only***

Hi Ranpal – looks like Mohan is pushing ASEs which is good for the pyramid. However, it isn't entirely clear the candidates will qualify for H-1B. If you could help reinforce this, it would be much appreciated.

Please see email chain below.

Regards

Julia Yedo
**North America Director**
**People Mobility Employee Tax & Immigration**
**Global Tax Group**
email: julia.l.yedo@accenture.com

1

**Reasoning**

- As per the market study done by external organization Accenture India GCP pyramid is heavier by 20% at Sr. levels ( SSE, TL , AM )

**Action taken :**

- **25% ASE nominations have been added to FY15 H1B  drive**
  - In all likely hood the nominated ASE's potentially would be SE's when their VISA would be ready for travel
- Solutions created will be geared towards more flatter pyramid to remain competitive
- IG specific cuts will be sent out in the coming days.

**Comparison of FY14 and FY15 H1B drive pyramid:**

| Level | FY14% | Nominations to be filed | Expected throughput | FY15% |
|---|---|---|---|---|
| 06-Senior Manager | 0% | 0 | 0 | 0% |
| 07-Manager | 2% | 0 | 0 | 0% |
| 08-Associate Manager | 11% | 450 | 157 | 5% |
| 09-Team Lead | 27% | 1800 | 630 | 20% |
| 10-Senior Software Engineer | 35% | 2250 | 787 | 25% |
| 11-Software Engineer | 25% | 2250 | 788 | 25% |
| 12-Associate Software Engineer | 0% | 2250 | 788 | 25% |
|  | 100% | 9000 | 3150 | 100% |

**PFB criteria for processing ASE nominations for H1 drive-**

- If Performance rating is available, nominations will be processed as per rating guidelines (CCPG and above)
- If incase ASE is not rated, we would check the invalid refusal logging and then qualify the candidate accordingly.
- ASEs should have a proper IT degree which covers 16 years of education (B.E. in Information Technology/ Computer Science/ Computer Engineering/ Information Science and Engineering/ Electronics and Communication/ Electronics and Telecommunications/ Electrical and Electronics/ MCA/ MSc in Computer Science).
- Any other **non IT degree will NOT be possible for ASEs** (B.Com/ B.A./ B.Sc/ Diploma/ MBA/ B.E in Civil/ Mechanical/ Industrial Production/ Industrial Electronics/ Architecture/ Chemical/ Biomedical/ Biotechnology/ Metallurgical/ Instrumentation Technology)

Please let me know if you have questions .

Regards,
Lakshmi

----------------------------------------------

SreeLakshmi Garikipati,
IDC GCP lead
Phone-+91-998-0311339

SreeLakshmi Garikipati, Accenture India Delivery Center Bangalore. +91 9980311339 (Mobile). s.garikipati@accenture.com (Email).

# Exhibit 29

## Reddy, Ranpal

| | |
|---|---|
| **From:** | Reddy, Ranpal |
| **Sent:** | Thursday, February 6, 2020 4:57 PM |
| **To:** | Hickson, Helen |
| **Subject:** | Global Mobility Roles |

Hi Helen,

Trust all is well. I wanted to reach out to you and see if there are any roles in Global Mobility that you are looking to fill or can potentially create to utilize my knowledge and experience.

Not sure how much you remember our conversation during your search to fill multiple roles in your organization but I was very optimistic and hoping to work with you and the GM team. I thought I had all the right skills, knowledge and experience to one of those roles. But I was bit disappointed to hear that I wasn't selected for any of the roles. Hence reaching out to you again as I am now exploring other roles in Accenture.

I think there is a huge opportunity to correct and/or improve several areas, especially around temporary visa holders in the US. Having led North America Global Careers Program (GCP) for over 12 years, I understand the pain points, improvement areas, US immigration policies and compliance requirements better than any business leader in the US, India and Philippines.

I see several red flags in the way we deal with H1B visas, L1 visas, Green Card sponsorship, Compensation / Benefits for temporary visa holders etc. If we don't fix some of those areas, Accenture could be at a risk for potential law suits from current or former temporary visa holders. We need a right leader who can closely work with HR, ER, Legal and immigration attorneys to make corrections / improvements in those areas.

Hence I would like to be part of Global Mobility team to help Accenture fully compliant with US immigration laws and rules. I am open to any other roles also. Please let me know.

Regards – Ranpal
Work: 469-665-5012 || Cell: 214-620-6040

**From:** Reddy, Ranpal
**Sent:** Wednesday, September 12, 2018 3:37 PM
**To:** Hickson, Helen <helen.hickson@accenture.com>
**Subject:** RE: Your Application is Being Reviewed -Global Mobility Business Partner Director (US/UK/Ireland/India/Argentina)-00618253

Hi Helen,
Thanks for the org chart.

The decision to file petitions under standard or premium sits with both People Mobility and GCP.
GCP provided PMSD certain guidelines/parameters to decide standard or premium while submitting the initial application and also told them to move standard applications to premium if anyone is still pending for more than 180 days.
There were instances in the past where PMSD didn't move some long pending petitions into premium resulting in employees being put on LOA.
However, PMSD is now paying better attention to pending cases and escalating to us if and when they need approvals for any cases.
I have also replaced the manager from my team who was working with PMSD with another manager who is better analytical person. So things are improving.

1

# Exhibit 30

## Reddy, Ranpal

| | |
|---|---|
| **From:** | Reddy, Ranpal |
| **Sent:** | Monday, April 27, 2020 8:04 PM |
| **To:** | Agarwal, Sangita |
| **Subject:** | Opportunities in CIO |
| **Attachments:** | Ranpal Reddy-Profile.pptx |

Hi Sangita,

Not sure if we had an opportunity to connect even virtually in the past.

As a way of introduction, I led North America Global Careers Program (GCP) for over 12 years before moving into Dallas Cloud Innovation Center lead role. I am currently looking for a role and want to explore opportunities in CIO. I mentioned the same to one of the Sr. Mgrs in CIO (Anoop Nair) who may also bring it up with you later.

One of the reasons why I am interested in CIO roles is that I have experienced and exposed to tons of challenges faced by GCP employees during their GCP stint. Even the sales, delivery and solution architects face several challenges before, during and after the GCP employees' staffing. Unfortunately, our internal teams such as HR, TFS, Ops, Global/People Mobility, Finance etc handle several functions of GCP manually, inefficiently and/or incorrectly due to lack of intelligent tools, processes and continuous improvement efforts. There is not enough support, sponsorship and interest to solve these issues. So being fully knowledgeable and experienced with GCP processes, employees' issues and tools limitations, I would like to make a difference to employees as well as Accenture by being part of CIO. Let me give you few examples of the problems:

**HR / Compensation:** Due to lack of connection between Global/People Mobility and HR tools some employees' compensation was lower or higher than what it should be. And in the case of H1B employees, such compensation issues could lead to immigration compliance issues due to which there is a huge risk if any employee files a case against Accenture.

**Global Mobility:** Due to lack of sanity in our employees' immigration data, some employees end up staying / working illegally on their visa. If anybody ends up staying illegally for more than 6 and 12 months they will be barred from entering the US for 3 and 10 years respectively. Again, there is a huge risk to Accenture business and brand value if any such employee blames Accenture tools, processes or policies for lack of proper oversight on their immigration data.

**Onboarding:** In several instances I noticed that GCP employees' onboarding, relocation and/or repatriation travel is impacted due to lack of connected processes and tools, and we end up loosing revenue unnecessarily.

**Green Card Sponsorship:** Currently entire green card sponsorship in the US is being done through excel sheets and manual processes. Another huge area for improvement. Significant risk from factors like minimum wages, roles / job titles, labor market test / recruitment, managed terminations, head count transfers etc.

**Supply / Demand:** Due to lack of visibility into offshore visa enabled supply and processes around their staffing we end up bringing only about 10% to 20% of approved H1B visa holders to the US even after their H1B approval. And we may be staffing less than 50% of them to the same account and location that's mentioned in H1B/LCA application. And despite of bringing such low %, we are still submitting significant number of H1B applications every year which is another huge red flag from the immigration compliance perspective. So we got to have tools and processes to alert the business Leads and PMSD Leads with the right data collection, analysis and summarization.

I can go on and on but wanted to just give you a glimpse of the issues due to lack of intelligent tools to handle such important function (GCP).

Here, I attached my one pager for your quick reference. Prior to joining Accenture, I was a hands-on developer, technical lead and project manager with four different companies and have significant leadership experience in Accenture now to bring valuable changes to not only GCP related tools and processes but also entire Accenture